**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Bruce E. Huffman,

        Plaintiff,

v.

JP Morgan Chase Bank, NA, *et al.*,

        Defendants.

No. CV-22-00903-PHX-JJT

**ORDER**

At issue is Defendant Goodman Holmgren Law Group, LLP's ("Goodman Law") Motion to Dismiss (Doc. 16, GLMTD), to which Plaintiff Bruce E. Huffman filed a Response (Doc. 24), and Goodman Law filed a Reply (Doc. 28). Also at issue is Defendant JPMorgan Chase Bank, N.A.'s ("Chase Bank") Motion to Dismiss (Doc. 15, CBMTD), to which Plaintiff filed a Response (Doc. 27),[1] and Chase Bank filed a Reply (Doc. 36). Finally, the Court considers Defendant Magic Ranch Estates Homeowners' Association's ("Magic Ranch") Motion for Summary Judgment (Doc. 29, MSJ), supported by a Statement of Facts (Doc. 30, DSOF), to which Plaintiff filed a Response (Doc. 42), supported by a Response in Opposition to Magic Ranch's Statement of Facts (Doc. 43, PRSOF) and a Responsive Statement of Facts (Doc. 43, PSSOF), and Magic Ranch filed a Reply (Doc. 44.) The Court finds these matters suitable for resolution without oral argument. *See* LRCiv 7.2(f).

---

[1] To the extent it was unclear, the Court's Order (Doc. 34) discharging its Order to Show Cause accepted Plaintiff's late Response.

## I.       BACKGROUND

Plaintiff resides in Arizona in Magic Ranch Estates, which has a Homeowners' Association that can collect fines from residents. (Doc. 1, Compl. ¶ 16; PSSOF ¶¶ 1–2.) Magic Ranch hired Goodman Law to collect $1,200.00 in fines from Plaintiff. (Compl. ¶ 17; PSSOF ¶¶ 3–4.) On May 26, 2021, Goodman Law served a writ of garnishment on Chase Bank for $60,597.25 for the fines and over $57,000.00 in attorneys' fees.  (Compl. ¶ 18; PSSOF ¶ 5.)

On July 12, 2021, the Superior Court of Pinal County held a hearing, and the parties stipulated that all funds deposited in the bank account were Social Security benefits, but Goodman Law insisted that the funds were not exempt from garnishment. (Compl. ¶¶ 22-24; PSSOF ¶¶ 6–7.) The Superior Court then granted a writ of garnishment for $60,597.25. (Compl. ¶ 25; PSSOF ¶ 8.) Plaintiff alleges that after the hearing, he asked Goodman Law multiple times to release the funds, but Goodman Law declined to do so. (Compl. ¶¶ 26–27.)

Plaintiff then obtained counsel, who filed a Motion for Reconsideration, which the Superior Court granted on January 11, 2022. (Compl. ¶¶ 28–29; PSOF ¶¶ 9–10.) The Superior Court found that the account was not subject to garnishment because it contained exclusively Social Security benefits. (Compl. ¶ 29; PSSOF ¶ 10.)

Plaintiff alleges that on that same day, the Superior Court sent copies of the ruling to Chase Bank. (Compl. ¶ 30.) Plaintiff further alleges that on January 20, 2022, he visited a branch and was told that Chase Bank had no record of the ruling. (Compl. ¶ 31.) Plaintiff alleges that he then emailed a copy of the ruling directly to a branch employee that day. (Compl. ¶ 32.) After receipt of the ruling, Chase Bank told Plaintiff his funds would be released in five business days, but the funds were not released until March 21, 2022. (Compl. ¶¶ 33, 35; PSSOF ¶ 17.) Plaintiff alleges that while Chase Bank refused to release the funds, he followed up with them five times. (Compl. ¶ 34.)

1
2

## II.    LEGAL STANDARDS

### A.    Motion to Dismiss

Rule 12(b)(6) is designed to "test[] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either: (1) the lack of a cognizable legal theory; or (2) the absence of sufficient factual allegations to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When analyzing a complaint for failure to state a claim, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up and citations omitted). Legal conclusions couched as factual allegations are not entitled to the assumption of truth and therefore are insufficient to defeat a motion to dismiss for failure to state a claim. *Iqbal*, 556 U.S. at 679–80. However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that 'recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

- 3 -

**B.     Motion for Summary Judgment**

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "A fact is 'material' only if it might affect the outcome of the case, and a dispute is 'genuine' only if a reasonable trier of fact could resolve the issue in the non-movant's favor." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 232. When the moving party does not bear the ultimate burden of proof, it "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party carries this initial burden of production, the nonmoving party must produce evidence to support its claim or defense. *Id.* at 1103. Summary judgment is appropriate against a party that "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In considering a motion for summary judgment, the court must regard as true the non-moving party's evidence, as long as it is supported by affidavits or other evidentiary material. *Anderson*, 477 U.S. at 255. However, the non-moving party may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact. *Id.* at 256–57

1   (holding that the plaintiff must present affirmative evidence in order to defeat a properly

2   supported motion for summary judgment); *see also Taylor v. List*, 880 F.2d 1040, 1045

3   (9th Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely on

4   conclusory allegations unsupported by factual data." (citation omitted)).

5   **III.   ANALYSIS**

6       **A.   Goodman Law's Motion to Dismiss**

7          Goodman Law moves to dismiss Plaintiff's claims against it for conversion and

8   intentional infliction of emotional distress ("IIED"), arguing that they are barred under

9   Arizona's common law litigation privilege. However, Plaintiff contends that his claims are

10  based on Goodman Law's improper litigation-related conduct, which is not covered by the

11  litigation privilege.

12         Arizona's litigation privilege protects the speech of "judges, parties, lawyers,

13  witnesses and jurors." *Green Acres Tr. v. London*, 688 P.2d 617, 621 (Ariz. 1984).

14  Communications related to judicial proceedings are protected to promote "the fearless

15  prosecution and defense of claims which leads to complete exposure of pertinent

16  information for a tribunal's disposition." *Id.* (citing Prosser, *Law of Torts* (4th ed. 1971)

17  § 114 p. 777–81). Though traditionally the litigation privilege has been used to shield those

18  involved in judicial proceedings from defamation actions, Arizona has extended the

19  privilege to other claims. *See*, *e.g.*, *Linder v. Brown & Herrick*, 943 P.2d 758, 766 (Ariz.

20  Ct. App. 1997) (fraud and IIED claims). The existence of the privilege is a question of law

21  for courts to decide. *Green Acres*, 688 P.2d at 621 (citing Restatement (Second) of Torts,

22  § 619).

23      **1.   Conduct or Communication**

24         While some jurisdictions have expressly extended litigation privilege to conduct,

25  *see*, *e.g.*, *Mantia v. Hanson*, 79 P.3d 404, 411 (Or. Ct. App. 2003), Arizona has not done

26  so. Consequently, under current Arizona law, if a party's claim is supported by factual

27  allegations that qualify as conduct—not communication—then Arizona's litigation

28  privilege does not apply.

First, Plaintiff alleges that Goodman Law served a writ of garnishment upon Chase Bank. (Compl. ¶ 18.) This is communication; the content of a document and the method of delivery are treated the same for purposes of the privilege. *See Goldman v. Sahl*, 462 P.3d 1017, 1033 (Ariz. Ct. App. 2020) ("The superior court concluded that there was no relevant distinction in Arizona law between the content of a bar charge and the act of filing a bar charge.").

Plaintiff next alleges that at the hearing, Goodman Law argued that Plaintiff's funds were not exempt from garnishment despite acknowledging the account held Social Security benefits. (Compl. ¶ 23–24.) The litigation privilege clearly covers statements made in court.

Additionally, Plaintiff alleges that after the hearing but before the Superior Court ultimately granted his Motion for Reconsideration and quashed the writ, he informed Goodman Law that the bank account only contained Social Security benefits, and Goodman Law refused to release the funds. (Compl. ¶¶ 26–27.) Failure to communicate is covered under the litigation privilege. *See Lewis v. Swenson*, 617 P.2d 69, 73 (Ariz. Ct. App. 1980) (finding the privilege applies in an action against an attorney who failed to prevent a witness from discussing malpractice insurance); *Linder*, 943 P.2d at 765–66 (finding that plaintiffs cannot bring a fraud claim premised on opposing counsels' failure to produce documents); *cf. Janus v. Am. Fed'n of State, Cnty., and Mun. Emps., Council 31*, 138 S. Ct. 2448, 2463 (2018) (noting that under First Amendment law, speaking is treated the same as refusing to speak). Plaintiff's allegation essentially amounts to refusing to communicate with Chase Bank and/or the Court. Accordingly, the Court finds that this allegation is covered by the litigation privilege as well.

Finally, to the extent Plaintiff further alleges that Goodman Law opposed his Motion for Reconsideration, again, arguments made in court, whether though filings or during a court hearing, are covered by the litigation privilege.

### 2. Improper Litigation Conduct

However, even if Arizona's litigation privilege would typically protect communications, it "does not preclude an action for improper litigation conduct." *Goldman*, 462 P.3d at 1033.

Citing to *Goldman*, Plaintiff argues that his claims can proceed because Goodman Law's actions were improper. However, in *Goldman*, the court clarified that this exception is for specific causes of action. *Id.* at 1029 n.5 (clarifying that the court uses the term "improper litigation conduct" to refer to claims for "wrongful use of a civil proceeding, malicious prosecution, and abuse of process"); *id.* at 1033–34 (discussing cases permitting these specific claims). Thus, Arizona courts dismiss claims that do not fall within this exception. *See Linder*, 943 P.2d at 766 (finding that plaintiffs' fraud and IIED claims "against opposing counsel fail to comprise recognized causes of action").

Plaintiff also likens his situation to that in *Tucson Airport Auth. v. Certain Underwriters at Lloyd's, London*, 918 P.2d 1063 (App. 1996). In *Tucson Airport Authority*, the plaintiff brought bad faith claims against insurers after the insurers threatened that they would not defend the plaintiff in litigation if the plaintiff contested the insurers' filings in another case. *Id.* at 1065. The plaintiff followed the insurers' instructions, the insurers obtained judgment in their favor, and then the insurers used the judgment and plaintiff's failure to contest the filings to argue that the insurers did not have to pay insurance claims. *Id.*

The court determined that the litigation privilege did not apply to the bad faith claim, finding that the basis for the "bad faith claim is not a communication, but a course of 'wrongful and tortious' conduct evidenced by the insurers' actions and communications during the coverage actions." *Id.* at 1066. The court reasoned that an insurer's duty to its insured "would be rendered meaningless if . . . the litigation privilege could be employed to excuse a breach of the duties." *Id.*

The circumstances in this case are distinguishable. The exception in *Tucson Airport Authority* is limited. *Lory v. Fed. Ins. Co.*, 122 Fed. Appx. 314, 319 (9th Cir. 2005) (stating

that *Tucson Airport Authority*'s exception is restricted to bad faith claims and refusing to apply the exception to an IIED claim against an insurer); *see also Linder*, 943 P.2d at 768 (permitting sanctions after finding that the plaintiff's reliance on *Tucson Airport Authority* was "wholly misplaced" because unlike insurers and their insured, no fiduciary duties exist between a party and opposing counsel). Here, Plaintiff does not bring a bad faith claim, Goodman Law is not an insurer, and there is no alleged fiduciary relationship between Plaintiff and Goodman Law.

Plaintiff also cites to three other cases, but the Court does not find them persuasive because they are out-of-state cases that do not discuss Arizona's litigation privilege, and on this issue, the Court is bound to apply Arizona law as it stands. *See* Fed. R. Evid. 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."); *Mason and Dixon Intermodal, Inc. v. Lapmaster Intern. LLC*, 632 F.3d 1056, 1060 (9th Cir. 2011) ("When a district court . . . hears state law claims based on supplemental jurisdiction, the court applies state substantive law to the state law claims.").

Because all the factual allegations supporting Plaintiff's state claims are covered by Arizona's litigation privilege, Plaintiff cannot sustain an action for conversion or IIED against Goodman Law. Consequently, these claims must be dismissed.

### B.    Chase Bank's Motion to Dismiss

Chase Bank moves to dismiss all claims against it. Plaintiff brings claims under the Social Security Act and Federal Banking Regulations and state-law claims for unjust enrichment, conversion, and IIED. For the following reasons, the Court will dismiss all claims except Plaintiff's claims for conversion and unjust enrichment to the extent they are based on Chase Bank's alleged failure to release the funds after January 11, 2022.

### 1.    Private Right of Action

Chase first argues that neither § 207(a) of the Social Security Act, codified at 42 U.S.C. § 407(a), nor 31 C.F.R. Part 212 of the Federal Banking Regulations creates a private right of action. "[T]he fact that a federal statute has been violated and some person

harmed does not automatically give rise to a private cause of action in favor of that person." *Cannon v. Univ. of Chi.*, 441 U.S. 677, 688 (1979). "Instead, the statute must either explicitly create a right of action or implicitly contain one." *Diaz v. Davis* (*In re Digimarc Corp. Derivative Litig.*), 549 F.3d 1223, 1230 (9th Cir. 2008). To determine whether an implicit private right of action exists, courts must therefore ask whether Congress intended to create such a right. *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979). Not only must plaintiffs show that Congress intended to create a private right, but they must also show that Congress intended to create a private remedy. *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) (citing *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 15 (1979)). The party seeking a private right of action bears the burden to demonstrate that one exists. *Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 615 F.3d 1106, 1115 (9th Cir. 2010) (citing *Opera Plaza Residential Parcel Homeowners Ass'n v. Hoang*, 376 F.3d 831, 835 (9th Cir. 2004)).

### i.    42 U.S.C. 407(a)

Plaintiff brings a claim under § 407(a), alleging that Chase Bank violated the statute's anti-attachment provision, which states that Social Security benefits shall not "be subject to execution, levy, attachment, garnishment, or other legal process . . . ." The Court has not found, and the parties have not pointed to, any case where a court has addressed the question and found that a private right of action under § 407(a) exists. Instead, courts directly considering the issue—including this Court—have determined that it does not. *See*, *e.g.*, *Galanova v. Portnoy*, 432 F. Supp. 3d 433, 446 (S.D.N.Y. 2020); *Callahan v. Bregman*, No. 1:19-CV-1034, 2019 WL 9594163, at *2 (W.D. Mich. Dec. 23, 2019), *adopted*, 2020 WL 4464493 (August 4, 2020); *Pearson v. Bank of Am., N.A.*, No. CV-16-3402-JJT, 2016 WL 5871490, at *1 (D. Ariz. October 7, 2016); *Harris v. Prudential Ins. Co. of Am.*, No. 3:09-CV-613, 2010 WL 918304, at *5 (N.D. Ohio March 10, 2010).

But whether there is a private right of action of any kind under § 407(a) or not, there is no private right of action for the private remedy that Plaintiff seeks. Plaintiff pursues relief outside of the return of his benefits; they have already been released. Because "[t]he

protection afforded by § 407 is to 'moneys paid,'" *Philpott v. Essex Cnty. Welfare Bd.*, 409 U.S. 413, 416 (1973), it stands to reason that once the money has been returned to its proper place, no action under § 407(a) can be maintained. *See Tom v. First Am. Credit Union*, 151 F.3d 1289, 1291 (10th Cir. 1998) (stating that after granting summary judgment on claims for breach of contract, under § 407(a), and under the Civil Service Retirement Act, the district court awarded damages for only the amount of money that was seized); *Alexander v. Bank of Am.*, No. 07-4039-CV-C-NKL, 2007 WL 3046637, at *2 (W.D. Mo. Oct. 17, 2007) (finding that § 407(a) "would provide a defense" if the bank did not release the benefits). Plaintiff has not pointed to any case law finding otherwise.

Moreover, the Social Security Administration has interpreted § 407(a) as an affirmative defense to garnishment. *See Program Operations Manual System*, GN 02410.001 Assignment of Benefits, available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0202410001 ("A beneficiary or recipient can use [§ 407] as a personal defense if ordered to pay his or her payments to someone else, or if his or her payments are ordered to be taken by legal process.").

As support, Plaintiff cites to four cases where courts did not explicitly address the issue of the existence of a private right of action. In both cited Supreme Court cases, a state sued to obtain Social Security benefits of individuals, which was permitted under the state's reimbursement scheme. *Bennett v. Arkansas*, 485 U.S. 395, 396 (1988); *Philpott*, 409 U.S. at 414–15. Addressing the use of the Social Security Act as a defense to stop the taking, the Court found that the reimbursement scheme violated § 407(a) and consequently, the Supremacy Clause. *Bennett*, 485 U.S. at 396–97; *Philpott*, 409 U.S. at 415, 417. Likewise, in *Crawford v. Gould*, patients of state psychiatric hospitals brought suit to challenge a state's reimbursement scheme, and the Ninth Circuit found that the scheme violated the Supremacy Clause because it conflicted with § 407(a). 56 F.3d 1162, 1163 (9th Cir. 1995). Lastly, in *Gorstein v. World Savings Bank*, an unpublished memorandum decision, the Ninth Circuit found that a district court correctly dismissed a plaintiff's § 407(a) claim against a bank because the bank was not a proper defendant. 110 Fed. Appx. 9, at *9–10

(9th Cir. 2004). None of these cases permitted the type of relief Plaintiff pursues here. In all three cases where the courts found a violation of § 407(a), they relied on the statute to stop *ongoing* takings.

Plaintiff also equates the question of whether a defendant is proper under § 407(a) with the question of whether there is a private right of action. It is correct that courts, including the Ninth Circuit, have used the proper defendant analysis to find that plaintiffs cannot bring a claim against intermediaries. *See*, *e.g.*, *id.* at 10; *Christensen v. Ariz. Cent. Credit Union*, No. CV-08-0862-PHX-FJM, 2008 WL 4853414, at *3 (D. Ariz. November 7, 2008). But again, in none of the cases cited were the plaintiffs allowed to proceed and obtain the relief that Plaintiff seeks here.

Even if the Court were to sidestep the private right of action analysis and instead use Plaintiff's suggested approach, Chase Bank is not a proper defendant. Section 407(a) "does not entitle beneficiaries to sue intermediaries who have done nothing more than follow a court order that they had no role in obtaining." *Gorstein*, 110 Fed. Appx. at 10; *see also Christensen*, 2008 WL 4853414, at *3 ("Because section 407(a) is meant to protect social security recipients from creditors, plaintiffs have failed to state a claim against the Credit Union under section 407(a)."). A bank or credit union that holds the account containing benefits is a proper defendant only where it was also acting as a creditor. *See*, *e.g.*, *Tom*, 151 F.3d at 1293 (finding that a credit union violated § 407(a) by using Social Security benefits in plaintiff's bank account to offset unpaid loans). Here, Plaintiff does not argue that Chase Bank was acting as a creditor. And though Chase Bank delayed releasing Plaintiff's Social Security benefits, there are no allegations in the Complaint that Chase Bank used Plaintiff's benefits to secure discharge of a liability that Plaintiff owed to it.

### ii.     21 C.F.R. Part 212

Nor does Part 212 create a private right of action. First, regulations cannot by themselves create a private right of action. *Alexander*, 532 U.S. at 291 ("Language in a regulation may invoke a private right of action that Congress through statutory text created,

- 11 -

but it may not create a right that Congress has not."). Thus, for parties to invoke a right of action through a regulation, they must attach the regulation to a statute that does create a private right of action. Here, Plaintiff does not meet his burden to show there is a private right of action because Plaintiff did not provide any statute whose private right of action can be invoked through Part 212.

Second, even if a regulation could create a private right of action, Part 212 could not create one. The existence of one express method of enforcing a rule suggests that the drafters intended to preclude all other methods. *Id.* at 290. And here, 31 C.F.R. 212.11(a) expressly provides that "[f]ederal banking agencies will enforce compliance with this part." There is no other stated method of enforcement. Accordingly, there is no private right of action to enforce Part 212. *Hawes v. Stephens*, 964 F.3d 412, 416 n.3 (5th Cir. 2020) (finding the same).

### iii.    Common Law Claims

Chase Bank also argues that Plaintiff's common law claims must be dismissed because they are simply a method to get around the lack of private right of action under § 407(a) and Part 212.

Under this "end-run" theory, courts have dismissed common law claims that rely upon statutes that do not have a private right of action. *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 581 (7th Cir. 2012) (discussing the theory); *see e.g.*, *Lil' Man in the Boat, Inc. v. City & Cty. of San Francisco*, No. 17-CV-00904-JST, at *11–12, 2018 WL 4207260, at *4 (N.D. Cal. Sept. 4, 2018) (finding that plaintiffs "cannot argue around [a lack of private right of action] by boostrapping" their cause of action to a common law claim).

Assuming, without deciding, that the "end-run" theory is a valid theory of law,[2] the Court will not dismiss the claims under this theory. None of Plaintiff's claims necessitate finding that Chase Bank violated § 407(a) or Part 212. Generally, success on claims for unjust enrichment, conversion, and IIED is not predicated on finding that a defendant

---

[2] *See Wigod*, 673 F.3d at 584 (critiquing the "end-run" theory in part because it is "an 'end run' around well-established preemption doctrine").

violated any other law. And the Complaint does not require a departure from the usual. Typically, where courts have used the "end-run" theory to dismiss claims, plaintiffs expressly tied violations of the statute without a private right of action into their common law claims. *See*, *e.g.*, *Fossen v. Caring for Montanans, Inc.*, 993 F. Supp. 2d 1254, 1265 (D. Mont. 2014) (dismissing breach of contract claim where the complaint alleged that defendant breached its contracts by violating statutes that were incorporated into the contract); *Short v. Chase Home Fin. LLC*, No. CV-11-133-PHX-DGC, 2011 WL 9160941, at *2–5 (D. Ariz. August 22, 2011) (listing allegations in the complaint that linked claims to violations of a statute without a private right of action and dismissing those claims to the extent they were based on that statute); *Lil' Man in the Boat, Inc.*, 2018 WL 4207260, at *4 (dismissing common law claims because they "expressly incorporate [the federal claim], and ask the Court to find a violation"). Plaintiff did not do so here. The Court thus will evaluate Plaintiff's common law claims against Chase on their substance.

### 2.    Unjust Enrichment

To establish an unjust enrichment claim under Arizona law, a plaintiff must establish: "(1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy provided by law." *Wang Elec., Inc. v. Smoke Tree Resort, LLC*, 283 P.3d 45, 49 (Ariz. Ct. App. 2012) (quoting *Freeman v. Sorchych*, 245 P.3d 927, 936 (Ariz. Ct. App. 2011)). Chase Bank brings arguments only for the last two elements.

### i.    Absence of Legal Remedy

Chase Bank argues that Plaintiff does not meet the "absence of a legal remedy" element because their relationship is governed by a contract and because Plaintiff did not allege he had no legal remedy. Plaintiff does not respond to the contract argument and instead argues that Plaintiff will have no remedy other than unjust enrichment if the Court dismisses all other claims.

The Court finds Plaintiff's argument unavailing; Plaintiff's argument is based on a misunderstanding of the element. "[A] party's right to seek unjust enrichment is not controlled by whether the party has an 'adequate' remedy at law—in the sense of providing all the relief the party desires—but by whether there is a contract which governs the relationship between the parties." *Trustmark Ins. Co. v. Bank One, Ariz., NA*, 48 P.3d 485, 491 n.5 (Ariz. Ct. App. 2002).

But the Court is also not persuaded by Chase Bank's assertion that Plaintiff does not meet the "absence of a legal remedy" element. The Complaint does not allege the existence of a contract, so the Court finds that Plaintiff has sufficiently alleged that he does not have a legal remedy. And though Chase Bank asserts that there is a contract that governs the relationship of the parties, the existence of a contract is not a fact at this phase of the case. *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) ("In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."). Further, the Court declines to infer Plaintiff's lack of response to Chase Bank's argument as a concession that such a contract exists.

### i. Absence of Justification

Chase Bank also argues that Plaintiff does not meet the "absence of justification" element because the writ of garnishment justified the restriction of the benefits. "[A]n order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings." *United States v. Mine Workers*, 330 U.S. 258, 293 (1947). Plaintiff cannot maintain an unjust enrichment claim against Chase Bank for the time period in which a writ of garnishment was in place.

However, after receiving a copy of the state court ruling overturning the garnishment, Chase Bank did not release the Social Security benefits for more than two months, and Chase Bank did not explain the delay in release. Whether Chase Bank was still operating within the scope of the writ is, at the very least, debatable. Thus, construing the allegations as true and in Plaintiff's favor, the Court finds that Plaintiff's unjust

enrichment claim survives for the time between the Superior Court's ruling on the motion for reconsideration on January 11, 2022 and the release of funds on March 21, 2022.

### 3. Conversion

Conversion is "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." Restatement (Second) of Torts § 222(A)(1); *see also Universal Mktg. and Ent., Inc. v. Bank One of Ariz.*, 53 P.3d 191, 193 (Ariz. Ct. App. 2002).

Chase Bank first argues that it cannot be liable for conversion because it was acting pursuant to a court order. Under the Restatement (Second) of Torts § 266, "[o]ne is privileged to commit acts which would otherwise be a trespass to a chattel or a conversion when he acts pursuant to a court order which is valid or fair on its face." Courts have found that plaintiffs cannot state a claim for conversion where a defendant garnished money pursuant to court order. *E.g., Bromfield v. HSBC Bank Nev.*, No. 3:13-CV-462-SI, 2013 WL 3929846, at *6 (D. Or. July 29, 2013); *Taylor v. Gelfand*, 505 S.E.2d 222, 224 (Ga. Ct. App. 1998). Likewise, the Court finds that Chase Bank cannot be held liable for conversion during the time that a writ of garnishment was in place.

Again, Chase Bank did not release the funds for more than two months after the court's ruling reversed the garnishment. Thus, as the Court noted above with respect to Plaintiff's unjust enrichment claim, it is at least debatable whether Chase Bank was operating pursuant to the writ during this time.

Chase Bank also argues that Plaintiff did not have a right to the funds at the time of the conversion. "To maintain an action for conversion, a plaintiff must have had the right to immediate possession of the personal property at the time of the alleged conversion." *Case Corp. v. Gehrke*, 91 P.3d 362, 365 (Ariz. Ct. App. 2004) (citing *Sears Consumer Fin. Corp. v. Thunderbird Prods.*, 802 P.2d 1032, 1034 (Ariz. Ct. App. 1990) and *Empire Fire & Marine Ins. Co. v. First Nat'l Bank of Ariz.*, 546 P.2d 1166, 1168 (Ariz. Ct. App. 1976)). But once the garnishment was lifted, Plaintiff arguably had a right to his benefits, and

Chase Bank continued to prevent Plaintiff from accessing his funds. Accordingly, Plaintiff can state a claim for conversion for this time period, just as he can for unjust enrichment

Last, Chase Bank argues that the claim for conversion cannot be maintained because the funds have been released. However, Chase Bank provides no supporting law that indicates that the return of funds precludes an action for conversion. And the fact that Arizona permits recovery for damages other than simply the value of the garnished money, *see Strawberry Water Co. v. Paulsen*, 207 P.3d 654, 666 (Ariz. Ct. App. 2008) (stating that damages for conversion can include incidental and consequential damages), suggests otherwise.

### 4.   IIED

Three elements are necessary to establish a claim of IIED: "(1) the defendant's conduct must be capable of being characterized as 'extreme and outrageous'; (2) the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that distress will result from his conduct; and (3) the defendant's conduct must have caused severe emotional distress." *Lucchesi v. Frederic N. Stimmell, M.D., Ltd.*, 716 P.2d 1013, 1015–16 (Ariz. 1986) (citing *Watts v. Golden Age Nursing Home*, 619 P.2d 1032, 1035 (Ariz. 1980)).

Chase Bank argues that its conduct does not meet the high "extreme and outrageous" standard. To meet the "extreme and outrageous" element, a plaintiff must show that the defendant's conduct was "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*, 905 P.2d 559, 563 (Ariz. Ct. App. 1995) (citing *Cluff v. Farmers Ins. Exchange*, 460 P.2d 666, 668 (Ariz. 1969)). "Even if a defendant's conduct is unjustifiable, it does not necessarily rise to the level of 'atrocious' and 'beyond all possible bounds of decency' that would cause an average member of the community to believe it was 'outrageous.'" *Nelson v. Phoenix Resort Corp.*, 888 P.2d 1375, 1386 (Ariz. Ct. App. 1994) (quoting *Ford v. Revlon, Inc.*, 734 P.2d 580, 585 (Ariz. 1987); *Lucchesi*, 716 P.2d at 1015) (remaining citations omitted).

"It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." *Watts*, 619 P.2d at 1035 (citing Restatement (Second) of Torts § 46 cmt. h).

It was not extreme and outrageous for Chase Bank to comply with a writ of garnishment and freeze Plaintiff's account. Additionally, taking approximately two months after receipt of a court order releasing the garnishment does not fall "at the very extreme edge of the spectrum of possible conduct." *Id.* at 1035; *see, e.g.*, *Haney v. ACE Am. Ins. Co.*, No. CV-13-02429-PHX-DGC, 2014 WL 1230503, at *3 (D. Ariz. March 25, 2014) (finding that repeated underpayment and delays of insurance benefits, even with defendant's knowledge that plaintiff was injured and vulnerable, is not extreme and outrageous); *Wilson v. GMAC Mortg., LLC*, No. CV 11–00546–PHX–FJM, 2011 WL 4101668, at *5 (D. Ariz. Sep. 13, 2011) (finding that rejection of loan modification four days after foreclosure and five months after application began is not extreme and outrageous).[3]

### C.    Magic Ranch's Motion for Summary Judgment

Magic Ranch moves for summary judgment on all claims against it. As noted, Plaintiff brings claims against Magic Ranch under the Social Security Act and the Fair Debt Collection Practices Act ("FDCPA") and for conversion and IIED. For the following reasons, the Court finds summary judgment is appropriate against Plaintiff on each of these claims.

### 1.    42 U.S.C. § 407(a)

Like Chase Bank, Magic Ranch argues that there is no private right of action under § 407(a). To respond to Magic Ranch's Motion, Plaintiff brings the same arguments and cites to the same cases that he does in his Response to Chase Bank's Motion. For the reasons explained above in the Court's analysis of the Chase Bank Motion, Plaintiff fails

---

[3] Chase Bank also argues that Plaintiff's IIED claim is barred under the economic loss doctrine, but because the Court finds that Plaintiff did not meet the extreme and outrageous element, the Court will not address this additional argument.

1   to meet his burden here that § 407(a) creates a private right of action for Plaintiff's

2   requested remedy.[4]

3                               **2.    FDCPA**

4           Magic Ranch argues that it cannot be held liable under the FDCPA because it does

5   not collect debts and is not a "debt collector" under the Act. Under the FDCPA:

6           The term "debt collector" means any person who uses any instrumentality of
            interstate commerce or the mails in any business the principal purpose of
7           which is the collection of any debts, or who regularly collects or attempts to
            collect, directly or indirectly, debts owed or due or asserted to be owed or
8           due another.

9   15 U.S.C. § 1692a(6).

10          Though Plaintiff disputes Magic Ranch's assertion that it does not qualify as a debt

11  collector, Plaintiff does not provide any evidence supporting his position.[5] Nor does

12  Plaintiff assert that Magic Ranch is itself a debt collector. Instead, Plaintiff only argues that

13  Magic Ranch can be held vicariously liable as a debt collector through the actions of

14  Goodman Law, which Plaintiff has alleged is a debt collector.

15          The question of whether an entity is a debt collector precedes the question of

16  whether it can be held vicariously liable for another's actions. *McAdory v. M.N.S. &*

17  *Assocs., LLC*, 952 F.3d 1089, 1096 (9th Cir. 2020). Only debt collectors, as defined by the

18  statute itself, can be held liable—including vicariously liable—under the FDCPA. *Pollice*

19  *v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 404–05 (3d Cir. 2000) *abrogated on other*

20  *grounds by Henson v. Santander Consumer USA Inc., LLC*, 137 S. Ct. 1718, 1721 (2017);

21  *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 108 (6th Cir. 1996); *e.g.*, *Caron v.*

22  *Maxwell*, 48 F. Supp. 2d 932, 936 (D. Ariz. 1999) (dismissing a plaintiff's vicarious

23  liability FDCPA claim after the plaintiff failed to allege the defendant was a debt collector).

24  _____

25  [4] However, though the Court alternatively found that Chase Bank is not a proper defendant, the Court does not reach the proper defendant issue here.

26  [5] Magic Ranch asserts that it is not a debt collector, is not subject to the FDCPA, and does not collect debts. (DSOF ¶ 2.) Plaintiff disputes the entire paragraph and notes that "Magic
27  Ranch has stated a legal conclusion without any factual support." (PRSOF ¶ 2.) Plaintiff is correct as to Magic Ranch's first two assertions. However, Magic Ranch's third assertion—
28  that it does not collect debts—is a factual statement supported by its property manager's declaration (DSOF, Ex. 1), and Plaintiff has provided no conflicting evidence.

Thus, left with no other argument or evidence in favor of finding Magic Ranch a debt collector, Plaintiff cannot resist summary judgment for Magic Ranch on his FDCPA claim. The Court will grant the Motion as to this claim.

### 3.     Liability for Goodman Law's Actions

Plaintiff alleges that Magic Ranch is liable for Goodman Law's actions. Magic Ranch argues that Goodman Law is an independent contractor and that Magic Ranch cannot be held liable for Goodman Law's actions. Plaintiff does not dispute that Goodman Law is an independent contractor but argues that it is an agent, so Magic Ranch can be held liable. Because the Court has found that Magic Ranch is not liable under either of Plaintiff's federal claims, the only claims that remain are state claims. Consequently, though Plaintiff's arguments are based on federal law,[6] the Court must apply Arizona law. *See Dominguez v. City of Scottsdale*, 587 F. Supp. 3d 914, 937–38 (D. Ariz. 2022) (applying Arizona law on vicarious liability to state-law claims).

Under Arizona law, it is well-established that lawyers are independent contractors, but are also agents—the terms are not mutually exclusive. *Wiggs v. City of Phoenix*, 10 P.3d 625, 628 (Ariz. 2000); *Green Acres Tr. v. London*, 688 P.2d 658, 664 (Ariz. Ct. App. 1983), *aff'd on this ground and rev'd on other grounds*, 688 P.2d 617 (Ariz. 1984); *Balmer v. Gagnon*, 504 P.2d 1278, 1280 (Ariz. 1973). Consequently, a principal can be held liable for its lawyer's actions, and general agency law applies. *See Green Acres*, 688 P.2d at 664–65. The party asserting a principal's liability has the burden to prove it. *Id.*

A principal can be liable for its agent's tortious actions if the principal authorized or ratified the conduct, Restatement (Third) of Agency § 7.04, or if the agent acted with apparent authority, Restatement (Third) of Agency § 7.08. *See Green Acres*, 688 P.2d at 665 (stating that clients "would be vicariously liable for the allegedly defamatory

---

[6] However, Magic Ranch cites in part to Arizona law, and Arizona, like the Ninth Circuit, typically follows the Restatements of Agency, to which Plaintiff repeatedly cited. *See Fid. & Deposit Co. of Md. v. Bondwriter Sw., Inc.*, 263 P.3d 633, 639 (Ariz. Ct. App. 2011) ("Arizona courts generally follow the Restatement of Agency." (quoting *Ruesga v. Kindred Nursing Ctrs., L.L.C.*, 161 P.3d 1253, 1261 n.5 (Ariz. Ct. App. 2007)).

statements of their attorneys only if such statements were actually or apparently authorized by them”).

### i. Actual Authority

“An agent acts with actual authority when . . . the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act.” Restatement (Third) of Agency § 2.01; *see also Ruesga*, 161 P.3d at 1261. Actual authority includes both express and implied authority. Express authority may be proved with direct evidence, and implied authority may be proved with facts implying authority or through ratification. *Ruesga*, 161 P.3d at 1261. “Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority.” Restatement (Third) of Agency § 4.01(1).

Here, Plaintiff puts no facts forward that Magic Ranch expressly or impliedly authorized Goodman Law's actions, including those to obtain and continue garnishment of Plaintiff's bank account. Indeed, Magic Ranch states, and Plaintiff does not dispute, that Magic Ranch did not “have any knowledge of that account.” (DSOF ¶ 8.) Plaintiff repeatedly argues that Magic Ranch authorized Goodman Law's conduct, but “[b]lanket allegation[s]” of authorization are “insufficient to support a claim of client liability.” *Green Acres*, 688 P.2d at 665 (quoting *Williams v. Burns*, 463 F. Supp. 1278, 1285 (D. Colo. 1979)). Thus, there is no genuine dispute of material fact as to whether Magic Ranch authorized or ratified Goodman Law's conduct.

### ii. Apparent Authority

Under the doctrine of apparent authority, a principal can be held liable for actions of an agent “when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations.” Restatement (Third) of Agency, §§ 2.03, 7.08 cmt. b; *see also Reed v. Gershweir*, 772 P.2d 26, 28 (Ariz. Ct. App. 1989).

Plaintiff argues that he only needs to show he reasonably believed that Goodman Law had authority to act “and that this belief is traceable to something Goodman Law said

or did." (Resp. at 8.) But "[a]pparent authority can never be derived from the acts of the agent alone." *Reed*, 772 P.2d at 28. And hiring and using legal representation is an insufficient manifestation by a client to hold the client liable for attorney actions. *See Green Acres*, 688 P.2d at 665 (finding clients were not liable for their attorneys' statements where the plaintiff did not provide any allegations about the client's actions).

Plaintiff has not provided any other facts which serve to infer that Magic Ranch manifested that it authorized Goodman Law's actions at issue here. As there is no question of material fact and Plaintiff has failed to meet his burden, the Court finds Magic Ranch is not liable for Goodman Law's actions.

### 4.      Common Law Claims

Magic Ranch argues that Plaintiff's claims for conversion and IIED rest on imputing Goodman Law's actions to it. The Court agrees, and Plaintiff does not appear to argue otherwise. Without the attribution of Goodman Law's actions to Magic Ranch, the only facts that Plaintiff brings concerning Magic Ranch are that it levied fines on Magic Ranch residents, including Plaintiff, and Magic Ranch hired Goodman Law. (PSSOF ¶¶ 2–3.) These facts cannot sustain a claim for conversion or IIED.

In his Response, Plaintiff also states that Magic Ranch was aware of Plaintiff's extreme emotional distress; however, this allegation is not in Plaintiff's Statement of Facts or attached Exhibit. Even if it was, Plaintiff is still unable to meet the "extreme and outrageous" conduct element of IIED. Summary judgment is appropriate in favor of Magic Ranch.

**IT IS THEREFORE ORDERED** granting Defendant Goodman Law's Motion to Dismiss (Doc. 16). Count Five (Conversion) and Count Seven (IIED) are dismissed as against Defendant Goodman Law. Count Two (Violations of the Social Security Act)[7] and Count One (FDCPA) will proceed as against Defendant Goodman Law.

---

[7] As set forth above in Sections III.B.1 and III.C.1, the Court will grant Chase Bank's Motion to Dismiss and Magic Ranch's Motion for Summary Judgment as to Plaintiff's Social Security Act claims. Goodman Law did not similarly move for dismissal or summary judgment as to Plaintiff's Social Security Act claims against it pursuant to Fed. R. Civ. P 12(b), 12(c) or 56. Thus, the claim as to Goodman Law survives presently.

**IT IS FURTHER ORDERED** granting in part and denying in part Defendant Chase Bank's Motion to Dismiss (Doc. 15). Count Two (Violations of the Social Security Act), Count Three (Violations of Federal Banking Regulations), and Count Seven (IIED) are dismissed as against Defendant Chase Bank. Count Five (Conversion) and Count Six (Unjust Enrichment) will proceed as against Defendant Chase Bank but **only for the time period after January 11, 2022**.

**IT IS FURTHER ORDERED** granting Defendant Magic Ranch's Motion for Summary Judgment (Doc. 29) on all of Plaintiff's claims pending against it. The Clerk of the Court shall enter judgment accordingly.

**IT IS FURTHER ORDERED** that the Court will set a case management conference by separate Order.

Dated this 29th day of March, 2023.

Honorable John J. Tuchi
United States District Judge