LAW OFFICES
BROENING OBERG WOODS & WILSON
PROFESSIONAL CORPORATION
2800 N. CENTRAL AVE., SUITE 1600
PHOENIX, ARIZONA 85004
TELEPHONE: (602) 271-7700
FACSIMILE: (602) 258-7785
Donald Wilson, Jr./Bar No. 005205
E-mail: dwj@bowwlaw.com
Jathan P. McLaughlin/Bar No. 028065
E-mail: jpm@bowwlaw.com

SIMMONDS & NARITA LLP
Tomio B. Narita (CA SBN 156576) (*pro hac vice*)
50 California Street, Suite 1500
San Francisco, CA 94111
Telephone: (415) 283-1000
tnarita@snllp.com

*Attorneys for Defendant Goodman Law Group, LLP*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Bruce E. Huffman,<br><br>            Plaintiff,<br><br>v.<br><br>JP Morgan Chase Bank, N.A.; Goodman Holmgren Law Group, LLP; and Magic Ranch Homeowners Association,<br><br>            Defendants. | 2:22-CV-00903-JTT<br><br>**DEFENDANT GOODMAN'S MOTION FOR SUMMARY JUDGMENT** |

Pursuant to Fed. R. Civ. P. 56 and LRCiv 56.1 Goodman Holmgren Law Group ("Goodman"), LLP, by and through undersigned counsel, move for summary judgment on Plaintiff's remaining claims against it for violations of the Fair Debt Collections Practices ACT ("FDCPA") and violations of the Social Security Act. Because there are no questions of material fact regarding Plaintiff's claims, and Goodman is entitled to judgment as a matter of law, Goodman requests that summary judgment be entered in its favor.

This Motion is supported by the Defendants' Separate Statement of Facts ("SOF"), the following Memorandum of Points and Authorities, and the record in this case.

### MEMORANDUM OF POINTS AND AUTHORITIES

**I.  INTRODUCTION**

**A. History of the Underlying Litigation.**

Plaintiff's claims against Goodman stem from Goodman's representation of non-party Magic Ranch Homeowner's Association ("Magic Ranch") in an underlying State Court lawsuit filed by Magic Ranch against Plaintiff. (SOF ¶1). Goodman, on behalf of Magic Ranch, obtained a judgment against Plaintiff and ultimately attempted to collect upon it by garnishing Plaintiff's account held with co-Defendant JP Morgan Chase Bank, N.A. ("Chase"). (SOF ¶ 2). After Goodman filed the Writ of Garnishment, Chase responded to the Writ on May 27, 2021, stating that it held $60,597.25 as a result of the Writ but released $300.00 in statutorily exempted funds and $4,704.00 as Federally Protected Benefits. (SOF ¶ 3). At the time the Writ was submitted, neither Ms. Moscarello nor Clint Goodman (another attorney at Goodman), had ever run into a circumstance where there were exempt funds in a bank account in excess of an amount stated by an answering bank as being exempt. (SOF ¶ 4).

Plaintiff requested a hearing which was promptly set. (SOF ¶ 5). Plaintiff – a former attorney who handled collections actions during his time in private practice – represented himself at the garnishment hearing. (SOF ¶¶ 6-7). Ashley Moscarello appeared on behalf of Goodman at the hearing in addition to briefing the matter for the Superior Court. (SOF ¶¶ 2, 8). The hearing turned on the question of whether the funds were wholly or partially exempt from garnishment. (SOF ¶ 8). A representative from Chase testified that the only funds protected from garnishment were those funds identified as having been received during a two month (62-day) "lookback period." (SOF ¶¶ 9-10). The Chase representative testified that Chase set aside all of the federally protected benefits by applying a 62-day

1 lookback period and exempting from garnishment any federally protected payments 2 received during the period. (SOF ¶ 10). Plaintiff cross-examined Chase's representative, 3 during which time Chase's representative testified that Chase's policy provided that only 4 two months of Social Security benefits were protected from garnishment. (SOF ¶ 11). 5 Further, the Court asked Chase's representative directly whether it was her position that 6 even if <u>all the monies deposited in Plaintiff's Chase account were Social Security funds,</u> 7 only those funds during the lookback period were exempt to which to which the 8 representative replied: "No, it does not." (SOF ¶ 13). During the hearing, Ms. Moscarello 9 cited the Court to 78 Fed. Reg. 32099 concerning the lookback period  in support of 10 Goodman's position (and consistent with the Chase Representative's testimony). (SOF ¶ 11 12). After the hearing, the Court upheld the Writ and the funds in Plaintiff's Chase account 12 were frozen by the bank. (SOF ¶ 14).

13 On July 23, 2021, within two weeks of the Superior Court's ruling Plaintiff retained 14 counsel and filed a Motion for Reconsideration. (SOF ¶ 15). On August 5, 2021, Goodman 15 – through Ms. Moscarello – filed a Response to Plaintiff's Motion for Reconsideration 16 citing 31 CFR Part 212 and specifically referencing 31 CFR §§ 212.3, 212.5, 212.6, and 17 31 CFR Appendix C to Part 212 in arguing that the only protected funds were those funds 18 received during the lookback period. (SOF ¶ 16). The Motion for Reconsideration was 19 fully briefed on August 16, 2021. (SOF ¶ 17). Following oral argument, Plaintiff's Motion 20 for reconsideration was ultimately granted on January 11, 2022. (SOF ¶¶ 18, 19).  On 21 January 19, 2022, Goodman filed a Motion to Quash Writ of Garnishment, requesting the 22 Court release Chase from any obligations under the Writ, (SOF ¶ 20).

23 Plaintiff agreed that between the time of the initial garnishment hearing and the 24 Court's ruling on the Motion for Reconsideration, the Court's operative ruling upheld the 25 propriety of the Writ of Garnishment. (SOF ¶ 21). Additionally, Plaintiff has no basis to
26

1 allege that Goodman took any actions while the Motion for Reconsideration was pending
2 designed to delay the Court's ruling. (SOF ¶ 22).

### B. Facts Regarding Goodman's Bona Fide Error Defense

During his deposition, Plaintiff testified that the single action which he believes triggers liability is Goodman's filing of the Writ of Garnishment. (SOF ¶ 23). As discussed below, Goodman made a good faith argument that not all funds were exempt from garnishment based upon guidance issued by the Social Security Administration. While the Court ultimately disagreed with Goodman's interpretation of this guidance, it originally agreed and held the Writ was valid.

In this case, Goodman produced the expert opinion of Harvey Moore, an attorney specializing in collections work in this matter. (SOF ¶ 24). Mr. Moore opines that Goodman's conduct in the underlying matter falls within the *bona fide* error exception and immunizes Goodman from liability. Specifically, Mr. Moore opines that "[a]ny and all of the alleged violations of the [FDCPA] were not intentional and resulted from bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." (SOF ¶ 26). To reach this conclusion Mr. Moore interviewed four staff members at Goodman's Firm – including both[1] attorneys who handled the underlying matter – to understand the background behind Goodman's position in the underlying matter. (SOF ¶ 27). Before applying for the Writ of Garnishment, Ms. Moscarello learned from the firm's investigator that Plaintiff's Chase account had a substantial balance. (SOF ¶ 28). Based on the significant balance in the account and research she conducted, Ms. Moscarello determined that comingling Social Security funds with non-social security funds could change the nature of the funds in the Chase account. (SOF ¶ 29). After receiving Chase's Answer to the Writ of Garnishment, Ms. Moscarello learned that over $60,000 in funds were being held *after* application of exemptions for Federal Protected Benefits (such as

---

[1] In addition to Ms. Moscarello, Clint Goodman worked on the underlying matter.

1 Social Security Funds). (SOF ¶ 30). Following Plaintiff's objection to the Writ, Ms. Moscarello researched the citations provided by Plaintiff in support of his objection and determined that they did not support Plaintiff's position. (SOF ¶ 31). Additionally, Ms. Moscarello researched the applicable Codes of Federal Regulations -- which she cited to the Pinal County Superior Court -- and determined that the garnishment was appropriate. (SOF ¶ 32). As noted above, neither Mr. Goodman, nor Ms. Moscarello, had ever before encountered a situation where funds in excess of an exempt amount as identified by a financial institution were, in fact, also exempt. (SOF ¶ 4). Additionally, in responding to Plaintiff's Motion for Reconsideration, Ms. Moscarello believed that the cases cited by Plaintiff were distinguishable, and that the CFR sections cited to the Superior Court controlled. (SOF ¶ 33). In Sum, Ms. Moscarello believed that she was exercising appropriate legal discretion and acting in good faith. (SOF ¶ 34).

Mr. Moore also reviewed Goodman's written collections policies and procedures put in place to prevent errors as well as the pleadings and transcripts from the underlying matter. (SOF ¶ 35). Mr. Moore's report details the lengths that Goodman goes to in order to prevent errors in collections cases, including: a requirement that any lawyer handling a collections matter take, and pass, an exam on the FDCPA; a policy that attorneys must stay up to date on State and Federal laws impacting debt collections – with an emphasis on debt collection in the HOA arena; holding weekly meetings regarding updates to State and Federal laws impacting collections work; belonging to organizations which provide frequent updates on legal developments in impacting the collections field; attending CLEs relevant to, *inter alia*, HOA debt collection; attending an annual conference which includes sessions on debt collection practice; and, holding of regular meetings with a senior attorney at the firm to discuss issues in the debt collection practice. (SOF ¶ 36). In Mr. Moore's expert opinion, these procedures are properly adapted to prevent errors in the handling of FDCPA claims. (SOF ¶ 37).

1    Plaintiff does not have any expert to counter Mr. Moore's opinion, nor has discovery revealed any evidence that Goodman was not acting in good faith, or that the protocols put into place by Goodman are not reasonably adapted to prevent errors from taking place when handling FDCPA claims.

### C.   Plaintiff Has No Cognizable Damages.

Plaintiff does not have any damages in this case.  Plaintiff's Complaint alleges that he suffered the loss of use of the funds during the time they were garnished.  (SOF ¶ 38). But Plaintiff had no intention to actually use the funds during the period they were garnished.  Plaintiff testified that aside from one withdrawal made from the Chase account, he intended to leave the funds in the account to use "for retirement."  (SOF ¶ 39).  During the time his funds were in the Chase account Plaintiff was not living off of the funds as he "had other means of income" including at least one other retirement account.  (SOF ¶ 40). Plaintiff was unable to identify any investment he lost out on, or purchase he was unable to make, as a result of his funds being garnished.  (SOF ¶ 43).  When the funds were released by Chase, Plaintiff withdrew all of them and held the funds at his house.  (SOF ¶ 41).  Ultimately, Plaintiff re-deposited all of the funds withdrawn from his Chase account into another financial institution.  (SOF ¶ 42).  As if to underscore the fact that he never lost the use of his funds, Plaintiff testified during his deposition that he still has not used any of the garnished funds. (SOF ¶ 44).

While Plaintiff testified that he retained an attorney to file a Motion for Reconsideration and, despite never receiving a detailed billing statement, believes he was invoiced about $5,000 (SOF ¶ 45).  At the time Plaintiff retained an attorney, though, the Superior Court had held that the application for the Writ was appropriate.

Finally, Plaintiff's Complaint alleges he sustained mental anguish as a result of Goodman's conduct, Plaintiff agreed that he was not diagnosed with any medical condition or ailment as a result of the underlying actions in this matter.  (SOF ¶ 46).

In short, Plaintiff has no cognizable damages related to Goodman's conduct.

## II.      LEGAL ARGUMENT

### A.      Summary Judgment Standard

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the initial burden of showing no genuine issue of material fact exists. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). The movant must inform the court of the basis for its motion, and identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact. *Id.* The movant can also discharge its initial burden by pointing out to the court there is an absence of evidence to support the nonmoving party's case. *Id.* at 325.

If the movant meets this burden, the opposing party must offer evidence of specific facts sufficient to raise a genuine issue for trial. *Matushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). A plaintiff cannot rely only on his allegations but must support his complaint by presenting significant and probative evidence. *E.g., General Business Systems v. North American Philips Corp.*, 699 F.2d 965, 971 (9th Cir.1983). The nonmoving party must go beyond the pleadings and by his own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249-50. Even when viewing the facts in a manner most favorable to Plaintiff, the Court should enter summary judgment in Defendants' favor.

### B. Social Security Act Claims

Plaintiff alleges that Goodman violated the Social Security Act (42 U.S.C. § 407(a), *et seq.*) in its handling of the underlying matter. [Dkt. No. 1 at ¶¶ 43-48]. As this Court noted when ruling on Chase's Motion to Dismiss[2] the same claim Plaintiff filed against it, "there is no private right of action for the private remedy that Plaintiff seeks" under 42 U.S.C. § 407(a). [Dkt. No. 45 at 9-10]. Where there is no private right of action available to pursue a claim for violations of the Social Security Act, summary judgment in Goodman's favor is appropriate.

### C. Fair Debt Collections Practices Act.

#### i. Goodman did not violate 15 U.S.C. § 1692c(b)

Plaintiff alleges that Goodman violated 15 U.S.C. § 1692c(b) for communicating about the debt with Chase without Plaintiff's consent. (SOF ¶ 23). However, the statute itself provides:

> Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, **or as reasonably necessary to effectuate a post-judgment judicial remedy**, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

15 U.S.C. § 1692c(b) (emphasis added).

Here, Goodman was attempting to garnish funds pursuant to a validly entered judgment against Plaintiff. Accordingly, his conduct fell within the ambit of the statute's exception and summary judgment in Goodman's favor is appropriate.

---

[2] Goodman joins in the arguments made in Chase's Motion to Dismiss as they apply equally to Goodman.

### ii. Goodman's remaining conduct is subject to the bona fide error defense.

Assuming, *arguendo*, Goodman's conduct violated the remaining sections of the FDCPA cited in Plaintiff's Complaint, summary judgment is appropriate as Goodman's conduct is subject to the bona fide error defense. Plaintiff has only pointed to the filing of the Writ of Garnishment as the conduct for which Goodman is subject to liability, regardless of the specific section of the FDCPA Plaintiff claims Goodman violated. (SOF ¶ 23). 15 U.S.C. § 1692k(c) provides that "A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." Summary judgment based upon the bona fide error defense is appropriate where a defendant demonstrates that they did not intentionally violate the FDCPA, any presumed violation resulted from a bona fide error, and they maintained procedures reasonably adapted to avoid such an error. *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 948-49 (9th Cir. 2011); *Kort v. Diversified Collection Services*, 394 F.3d 530, 539 (7th Cir. 2005); *see, Wilhelm v. Credico, Inc.*, 519 F.3d 416, 421 (8th Cir. 2008) (holding that summary judgment was proper where "a reasonable jury could only conclude that Credico's procedures were reasonably adapted to avoid such errors.")

As set out above, Goodman did not intentionally violate the FDCPA. Rather, the firm believed in good faith that the funds held in Plaintiff's account were not all exempt from garnishment based upon their experience as well as the Codes of Federal Regulation relied upon in the underlying matter. There is simply no evidence in this case that Goodman intentionally violated the FDCPA.

While a mistake about the FDCPA itself is not sufficient to raise the bona fide error defense, mistakes about a collateral legal element impacting a debt are subject to the bona

fide error defense. *Kaiser v. Cascade Capital*, 989 F.3d 1127, 1138 (9th Cir. 2021). In *Kaiser* a law firm hired by Cascade Capital, LLC sued Kaiser after Kaiser defaulted on a contract relating to his purchase of an automobile and the proceeds from the car's sale (following its repossession) were insufficient to cover the outstanding balance due under the contract. *Id*. at 1131. The law firm attempted to collect the debt between four and six years after Kaiser's default on the contract. *Id*. Kaiser argued that the collection efforts were "time barred under Oregon's four-year statute of limitations for sale-of-goods contract claims" whereas the firm argued a six-year statute of limitations for other contract claims applied. *Id*.

On appeal from the granting of a Motion to Dismiss, the 9th Circuit held that the shorter statute of limitation applied. *Id*. at 1132-1133. However, in remanding the case for further proceedings, the Court ruled that the bona fide error defense would be available to the law firm upon remand. *Id*. at 1140. The Court began its analysis distinguishing an error concerning a collateral matter related to the collection of a debt, from a mistake about the FDCPA itself which the Supreme Court ruled did not qualify as a bona fide error in *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,* 559 U.S. 573, 130 S.Ct. 1605, 176 L.Ed.2d 519 (2010). The 9th Circuit pointed out that *Jerman* "'relied on the presumption that "ignorance of the law will not excuse any person, either civilly or criminally." 989 F.3d 1127 (quoting, 559 U.S. at 581, 130 S.Ct. 1605). "This maxim [] normally applies" the Court continued "where a defendant has the requisite mental state in respect to the elements of the crime but claims to be 'unaware of the existence of a statute proscribing his conduct." *Id*. (internal citation and quotation omitted).

The Court noted, however, that "the ignorance-of-the-law 'maxim does not normally apply where a defendant 'has a mistaken impression concerning the legal effect of some collateral matter and that mistake results in his misunderstanding the full significance of his conduct.'" *Id*. (quoting, *Rehaif v. United States*¸ --- U.S. ----, 139 S.Ct.

2191, 2198, 204 L.Ed.2d 594 (2019).  In such a situation "where the defendant is ignorant of an independently determined legal status or condition that is one of the operative facts of the crime ... the mistake of the law is for practical purposes a mistake of fact." *Id.* (citation and quotation omitted).  The Court then held that because the mistake at issue in *Kaiser* dealt with the applicable state law statute of limitations, the mistake was susceptible to the bona fide error defense. *Id.* at 1139.

This case presents the same situation as in *Kaiser*. Goodman was mistaken about a collateral issue – the ability to garnish Social Security funds outside of a specified exemption amount.  This belief was predicated upon the review of 31 CFR § 212.5 which requires a financial institution receiving a writ of garnishment to perform an account review within two days of the garnished account and, "If the account review shows that a benefit agency deposited a benefit payment into the account during the lookback period, then the financial institution shall follow the procedures in § 212.6."  31 CFR § 212.5(c).  31 CFR § 212.6 requires a financial institution to calculate the protected amount[3], set those funds aside and then follow its otherwise customary procedures for handling garnishment orders with respect to the remaining funds.

As articulated in Mr. Moore's report, Goodman had policies and procedures in place reasonably adapted to avoid such an error including a requirement that any lawyer handling an FDCPA matter take, and pass, an exam on the FDCPA; a policy that attorneys must stay up to date on State and Federal laws impacting debt collections – with an emphasis on debt collection in the HOA arena; holding weekly meetings regarding updates to State and Federal laws; belonging to organizations which provide updates on debt collection practice; attending CLEs relevant to, *inter alia*, HOA debt collection; attending an annual

---

[3] Protected amount is defined as "the lesser of the sum of all benefit payments posted to an account between the close of business on the beginning date of the lookback period and the open of business on the ending date of the lookback period, or the balance in an account when the account review is performed."  31 CFR § 212.3

conference which includes sessions on debt collection practice; and, the holding of regular meetings with a senior attorney at the firm to discuss issues in the debt collection practice.

As Plaintiff has no expert to counter Mr. Moore, and no evidence has been produced to support the proposition that Goodman did *not* have appropriate safeguards in place, summary judgment in Goodman's favor is appropriate on the remaining FDCPA claims.

### iii. Partial Summary Judgment is appropriate as Plaintiff has no damages

Finaly, in the event the Court does not conclude that summary judgment on the entirety of Plaintiff's claims is appropriate, partial summary judgment is appropriate as Plaintiff has no actual damages. 15 U.S.C. § 1692(k) provides that a Plaintiff in an FDCPA violation case may recover (1) any actual damages sustained; (2) "additional" damages not to exceed $1,000; and (3) "in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court."

There is no evidence that Goodman took any actions to try and delay the Court's Ruling on Plaintiff's Motion for Summary Judgment, and Plaintiff testified that he was not aware of any such evidence. (Depo at 168:10-18). Accordingly, after the Court enforced the Writ, Goodman was simply abiding by the Court's Order. Nor did Goodman take any actions following the Superior Court's initial ruling enforcing the Writ to remove funds from Plaintiff's Chase account. Where Plaintiff did not retain an attorney until *after* the Court ruled the Writ was enforceable, Plaintiff cannot point to the $5,000 in attorneys' fees he claims to have incurred in order to reverse the Court's ruling as damages attributable to Goodman.

Likewise, Plaintiff testified that he was waiting to use the money frozen in his Chase account for retirement. Yet, as of the date of his deposition, he <u>had not spent any of the funds which he alleges he was denied access to</u>. He further testified that he had other sources of income during the time his funds were frozen, did not miss any bill payments,

1 and was not otherwise in need of the frozen funds. Where Plaintiff's allegation is that he
2 lost the *use* of funds he never actually intended or planned to use, he cannot recover from
3 Goodman for that loss of use.

4 Finally, Plaintiff agreed that he was not diagnosed with any medical condition or
5 ailment as a result of the underlying actions in this matter. (SOF ¶ 46). While corroborative
6 evidence is not necessarily required to establish a right to emotional distress damages, a
7 Plaintiff must nevertheless make a showing that "the circumstances make it obvious that a
8 reasonable person would suffer **significant** emotion[al] harm." *Perkons v. American*
9 *Acceptance, LLC*, No. CV-10-8021-PCT-PGR, 2010 WL 4922916, at *3 (D. Ariz., Nov.
10 29, 2010. (citation omitted, emphasis and alteration added); *see*, *Waldrop v. LTS*
11 *Collections Incorporated*, 2020 WL 654772, at *7 (D. Ariz. Nov. 6, 2020) (holding that
12 emotional distress damages were warranted when the "Defendants' conduct in this case is
13 sufficiently egregious that it is 'obvious that a reasonable person would suffer significant
14 emotion[al] harm.'") (quoting, *Perkons, supra*, alteration in citation).  Here, Plaintiff is a
15 former attorney with experience in the collections field.  Plaintiff testified that he did not
16 plan to use the money for anything during the time his funds were frozen and promptly
17 filed a Motion for Reconsideration which was ultimately granted.  Considering the facts in
18 this case, there is no evidence that he suffered *significant* emotional harm sufficient to
19 recover emotional distress damages from Goodman.

20 Because Plaintiff has no actual damages in this matter, summary judgment in
21 Goodman's favor is appropriate.

22
23
24 //
25 //
26 //

### III. CONCLUSION

For the reasons set out above, Goodman requests the Court enter summary judgment in its favor. To the extent the Court is not inclined to grant summary judgment on the entirety of the claims in this matter, Goodman requests the Court grant partial summary judgment regarding the scope of Plaintiff's alleged damages in this case.

RESPECTFULLY SUBMITTED this 26th day of January, 2024.

BROENING OBERG WOODS & WILSON, P.C.

By: /s/ Jathan P. McLaughlin
Donald Wilson, Jr.
Jathan P. McLaughlin
2800 N. Central Ave., Ste. 1600
Phoenix, Arizona 85004
*Attorneys for Defendant Goodman Law Group, LLP*

CERTIFICATE OF SERVICE

I hereby certify that on January 26, 2024, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Robert T Mills
Sean A Woods
MILLS+WOODS LAW PLLC
5055 North 12th Street, Suite 101
Phoenix, Arizona, 85014
docket@millsandwoods.com

Nicole M. Goodwin
Adrianna Griego Gorton
Greenberg Traurig, LLP
2375 E. Camelback Road, Suite 800
Phoenix, Arizona 85016
Nicole.goodwin@gtlaw.com
gortona@gtlaw.com
*Attorneys for JPMorgan Chase Bank, NA*

by: /s/Josie Uong