LAW OFFICES
BROENING OBERG WOODS & WILSON
PROFESSIONAL CORPORATION
2800 N. CENTRAL AVE., SUITE 1600
PHOENIX, ARIZONA 85004
TELEPHONE: (602) 271-7700
FACSIMILE:  (602) 258-7785
Donald Wilson, Jr./Bar No. 005205
  E-mail: dwj@bowwlaw.com
Jathan P. McLaughlin/Bar No. 028065
  E-mail: jpm@bowwlaw.com

SIMMONDS & NARITA LLP
Tomio B. Narita (CA SBN 156576) (*pro hac vice*)
50 California Street, Suite 1500
San Francisco, CA 94111
Telephone: (415) 283-1000
tnarita@snllp.com

*Attorneys for Defendant Goodman
Holmgren Law Group, LLP*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Bruce E. Huffman,<br><br>                            Plaintiff,<br><br>v.<br><br>JP Morgan Chase Bank, N.A.; Goodman Holmgren Law Group, LLP; and Magic Ranch Homeowners Association,<br><br>                            Defendants. | 2:22-CV-00903-JTT<br><br>**SEPARATE STATEMENT OF FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

Goodman Holmgren Law Group ("Goodman"), LLP, submits the following

Separate Statement of Facts in support of its Motion for Summary Judgment.

//

//

1.  Goodman represented Magic Ranch Homeowners Association ("Magic Ranch") in Pinal County Superior Court Case No. S1100CV2015001739.  (*See*, Application for Wirt of Garnishment, submitted herewith as **Exhibit 1**).

2.  After obtaining a judgment on behalf of Magic Ranch, Ashley N. Moscarello – and attorney with Goodman – filed an Application for Writ of Garnishment ("Writ") against Garnishee JPMorgan Chase Bank, N.A. ("Chase") relating to Plaintiff's account with Chase on May 25, 2021.  (*Id.*)

3.  Chase responded to the Writ on May 27, 2021, stating that it held $60,597.25 as a result of the Writ, but released $300.00 in statutorily exempted funds and $4,704.00 as Federally Protected Benefits.  (*See*, Answer of Chase, submitted herewith as **Exhibit 2**).

4.  At the time the Writ was submitted, neither Ms. Moscarello nor Clint Goodman (another attorney at Goodman) had ever run into a circumstance where there were exempt funds in a bank account in excess of an amount stated by an answering bank as being exempt.  (*See*, Expert Report of Harvey M. Moore, attached hereto as **Exhibit A to Exhibit 3** at 5)

5.  On June 4, 2021, Plaintiff requested a hearing on the application for the Writ. (*See*, Request of Judgment Debtor for Hearing on Garnishment of Non-Earnings, attached hereto as **Exhibit 4**).

6.  Plaintiff is a retired attorney who performed collections work during his time in private practice.  (*See*, Deposition of Bruce Huffman, submitted herewith as **Exhibit 5**, at 138:17-24).

7.  A garnishment hearing was held in Pinal County Superior Court on July 12, 2021 wherein Plaintiff represented himself. (*See*, transcript of Garnishment Hearing submitted herewith as **Exhibit 6** at 2).

8. At the garnishment hearing, Ms. Moscarello argued that all of the exempt funds had been released to Mr. Huffman and that the remaining funds were subject to garnishment.  (*Id*. at 6:23-8:1).

9. At the garnishment hearing, Brenda Lariosa, a representative from Chase, testified. (*Id*. at 10:8-11:3).

10. Ms. Lariosa testified that Chase set aside all of the federally protected benefits by applying a 62-day lookback and exempting from garnishment any federally protected payments received during the "lookback period."  (*Id*. at 11:6-23).

11. Mr. Huffman cross-examined Ms. Lariosa, during which time Ms. Lariosa testified that Chase's policy was that only two months of Social Security benefits were protected from garnishment.  (*Id*. at 12:7-18).

12. Following Ms. Lariosa's testimony, Ms. Moscarello cited the Court to 78 Fed. Reg. 32099 concerning the lookback period.  (*Id*. at 13:13-14:1).

13. During the garnishment hearing the Court asked Chase's representative whether it was her position that even if all the monies deposited in Plaintiff's Chase account were Social Security funds, only those funds during the lookback period were exempt to which Ms. Lariosa replied: "No, it does not."  (*Id*. at 15:4-15).

14. Following the garnishment hearing the Court granted the Writ in the amount of $60,597.25.  (*See*, Minute Entry dated July 12, 2021, attached hereto as **Exhibit 7**).

15. Following the July 12, 2021 ruling, Plaintiff retained counsel and filed a Motion for Reconsideration.  (**Exhibit 5** at 165:8-166:13).

16. On August 5, 2021, Goodman – through Ms. Moscarello – filed a Response citing 31 CFR Part 212 and specifically referencing 31 CFR §§ 212.3, 212.5, 212.6, and 31 CFR Appendix C to Part 212 in arguing that the only protected funds were

those funds received during the lookback period.  (*See*, Response to Motion for Reconsideration, submitted herewith as **Exhibit 8**).

17. Plaintiff's Motion for Reconsideration was fully briefed on August 16, 2021. (*See*, Order granting Plaintiff's Motion for Reconsideration, submitted herewith as **Exhibit 9**).

18. The Pinal County Superior Court held oral argument on Plaintiff's Motion for Reconsideration on January 4, 2022.  (*Id.*)

19. On January 11, 2022, the Court granted Plaintiff's Motion for Reconsideration. (*Id.*).

20. On January 19, 2022, Goodman filed a Motion to Quash Writ of Garnishment, requesting the Court release Chase from any obligations under the Writ.  (*See*, Motion to Quash Writ of Garnishment, submitted herewith as **Exhibit 10**).

21. Between the time of the initial garnishment hearing and the Court's ruling on the Motion for Reconsideration, the Court's operative ruling held the Writ enforceable.  (**Exhibit 5** at 176:12-16).

22. Plaintiff has no information to allege that Goodman took any actions while the Motion for Reconsideration was pending designed to delay the Court's ruling.  (*Id.* at 168:9-18).

23. Goodman's action which Plaintiff believes violated the Fair Debt Collections Practices Act ("FDCPA") was the filing of the Writ.  (*Id.* at 170:4-171:1; 172:2-20; 174:7-20; 175:2-13; 176:21-177:4).

24. In this matter, Goodman produced the expert opinion of Harvey M. Moore.  (*See*, Goodman's Second Supplemental Disclosure Statement, submitted herewith as **Exhibit 11**, at 3).

25. Mr. Moore is an attorney specializing in collections practice.  (*See*, **Exhibit A to Exhibit 3** at 10-11).

- 4 -

26. Mr. Moore opines that Goodman's conduct in the underlying matter falls within the *bona fide* error exception and immunizes Goodman from liability. Specifically, Mr. Moore opines that "[a]ny and all of the alleged violations of the [FDCPA] were not intentional and resulted from bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."  (*Id*. at 6).

27. To formulate his opinions in this matter, Mr. Moore interviewed four staff members at Goodman – including both Mr. Goodman and Ms. Moscarello.  (*Id*. at 3).

28. Before applying for the Writ, Ms. Moscarello learned from the firm's investigator that Plaintiff's Chase account had a substantial balance.  (*Id*. at 4).

29. Based on the significant balance in the account and research she conducted, Ms. Moscarello determined that commingling Social Security funds with non-social security funds could change the nature of the funds in the Chase account. (*Id*.)

30. After receiving Chase's Answer to the Writ, Ms. Moscarello learned that over $60,000 in funds were being held *after* application of exemptions for Federal Protected Benefits. (*Id*.).

31. Following Plaintiff's objection to the Writ, Ms. Moscarello researched the citations provided by Plaintiff in support of his objection and determined that they did not support Plaintiff's position.  (*Id*.)

32. Ms. Moscarello researched the applicable Codes of Federal Regulations (cited in ¶ 16, *supra*) and determined that the garnishment was appropriate. (*Id*.)

33. In responding to Plaintiff's Motion for Reconsideration, Ms. Moscarello believed that the cases cited by Plaintiff were distinguishable, and that the CFR sections cited to the Superior Court controlled.  (*Id*. at 5),

34. Ms. Moscarello believed that she was exercising appropriate legal discretion and acting in good faith in the underlying matter.  (*Id.*)

35. Mr. Moore reviewed Goodman's written collections policies and procedures put in place to prevent errors as well as the pleadings and transcripts from the underlying matter.  (*Id.* at 1-3, 7-9).

36. Mr. Moore found that Goodman has, *inter alia*, the following procedures in place to prevent errors in collections cases: a requirement that any lawyer handling a collections matter take, and pass, an exam on the FDCPA; a policy that attorneys must stay up to date on State and Federal laws impacting debt collections – with an emphasis on debt collection in the HOA arena; holding weekly meetings regarding updates to State and Federal laws impacting collections work; belonging to organizations which provide frequent updates on legal developments in impacting the collections field; attending CLEs relevant to, *inter alia*, HOA debt collection; attending an annual conference  which includes sessions on debt collection practice; and, the holding of regular meetings with a senior attorney at the firm to discuss issues in the debt collection practice.  (*Id.*).

37. In Mr. Moore's expert opinion, these procedures are properly adapted to prevent errors in the handling of collections claims. (*Id.* at 6-7).

38. Plaintiff's only financial damages he attributes to Goodman are loss of use of his garnished funds and attorneys' fees. (**Exhibit 5** at 150:6-151:9)

39. Plaintiff testified that aside from one withdrawal made from the Chase account[1], he intended to leave the funds in the account to use "for retirement."  (*Id.* at 40:22-41:4).

---

[1] Thew funds Plaintiff withdrew were not garnished.

40. During the time his funds were in the Chase account Plaintiff was not living off of the funds as he "had other means of income" including another retirement account. (*Id*. at 41:13-24).

41.  When the funds were released by Chase, Plaintiff withdrew all of them and held the funds at his house.  (*Id*. at 44:7-45:3).

42. Ultimately, Plaintiff re-deposited all of the funds withdrawn from his Chase account into another financial institution. (*Id*. at 56:4-20).

43. Plaintiff could not recall having plans to use the funds in his Chase account in any specific way including paying bills, purchasing a vehicle, purchasing real estate, or having any specific plans to invest the funds.  (*Id*. at 101:12-110:21).

44. As of the date of his deposition, Plaintiff had not spent any of the funds garnished in 2021.  (*Id*. at 103:10-104:1).

45. Plaintiff "never received a detailed billing" from the counsel he retained in the underlying matter but believes he was charged $5,000 to $6,000. (*Id*. at 118:21-120:7).

46. Plaintiff agreed that he was not diagnosed with any medical condition or ailment as a result of the underlying actions in this matter.  (*Id*. at 114:11-115:9).

RESPECTFULLY SUBMITTED this 26th day of January, 2024.

BROENING OBERG WOODS & WILSON, P.C.


By /s/ Jathan P. McLaughlin
     Donald Wilson, Jr.
     Jathan P. McLaughlin
     2800 N. Central Ave., Ste. 1600
     Phoenix, Arizona 85004
     *Attorneys for Defendant Goodman Holmgren Law Group, LLP*

CERTIFICATE OF SERVICE

I hereby certify that on January 26, 2024, I electronically transmitted the attached

document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice

of Electronic Filing to the following CM/ECF registrants:

Robert T Mills
Sean A Woods
MILLS+WOODS LAW PLLC
5055 North 12th Street, Suite 101
Phoenix, Arizona, 85014
docket@millsandwoods.com

Nicole M. Goodwin
Adrianna Griego Gorton
Greenberg Traurig, LLP
2375 E. Camelback Road, Suite 800
Phoenix, Arizona 85016
Nicole.goodwin@gtlaw.com
gortona@gtlaw.com
*Attorneys for JPMorgan Chase Bank, NA*

by: /s/Josie Uong