# Exhibit 5

# Exhibit 5

```
 1                UNITED STATES DISTRICT COURT

 2               FOR THE DISTRICT OF ARIZONA

 3
                                          )
 4    Bruce E. Huffman,                   )
                                          )
 5         Plaintiff,                     )
                                          )   Case No.
 6    v.                                  )   2:22-cv-00903-JJT
                                          )
 7    JPMorgan Chase Bank, N.A.;          )
      Goodman Holmgren Law Group, LLP;    )
 8    and Magic Ranch Estates             )
      Homeowners' Association,            )
 9                                        )
           Defendants.                    )
10    _____)

11

12

13

14        VIDEOTAPED DEPOSITION OF BRUCE EVERETT HUFFMAN

15

16                   Phoenix, Arizona

17                   October 27, 2023

18

19

20

21

22

23    Prepared by:

24    Meri Coash, RMR, CRR
      Certified Reporter
25    Certification No. 50327
```

**CERTIFIED TRANSCRIPT**

```
 1                        I N D E X
    WITNESS                                              PAGE
 2
      BRUCE EVERETT HUFFMAN
 3
           Examination by Ms. Gorton                        6
 4
           Examination by Mr. McLaughlin                  121
 5
           Examination by Mr. Mills                       179
 6

 7

 8

 9

10                    EXHIBITS MARKED

11  EXHIBITS              DESCRIPTION                    PAGE

12  Exhibit 1        Chase Personal Electronic Signature  19
                     Card
13                   CHASE000096 - 99

14  Exhibit 2        Chase Deposit Account Agreement      22
                     CHASE000388 - 411
15
    Exhibit 3        Chase Deposit Account Agreement and  31
16                   Privacy Notice
                     CHASE000701 - 727
17
    Exhibit 4        Chase Checking Summaries             37
18                   CHASE000002 - 29

19  Exhibit 5        Chase Checking Summaries             53
                     CHASE000088 - 95
20
    Exhibit 6        Legal Papers Fax/Scan Cover Sheet    58
21                   CHASE000030 - 36

22  Exhibit 7        Motion to Quash Writ of Garnishment  63
                     GLG00017 - 19
23
    Exhibit 8        Order Quashing Writ of Garnishment   67
24                   and Releasing Garnishee from
                     Further Obligation
25                   GLG00020 - 21
```

1

Exhibit 9          Order Quashing Writ of Garnishment        67
2                  and Releasing Garnishee from
                   Further Obligation
3                  GLG00200

4   Exhibit 10     Email string, Subject:  Court              77
                   release of Everett Huffman funds
5                  HUFFMAN-000205 - 206

6   Exhibit 11     Email string, Subject:  Court              83
                   release of Everett Huffman funds
7                  HUFFMAN-000207 - 208

8   Exhibit 12     Email string dated 2-16-22,               86
                   Subject:  Hello
9                  HUFFMAN-000209

10  Exhibit 13     Letter dated 3-2-22                        90
                   CHASE000037 - 67
11

    Exhibit 14     Plaintiff's Response to Defendant          99
12                 JPMorgan Chase Bank, N.A.'s First
                   Set of Interrogatories to Plaintiff
13

    Exhibit 15     Complaint                                 154
14

    Exhibit 16     Reporter's Transcript of                  161
15                 Proceedings dated 7-12-21

16

17

18

19

20

21

22

23

24

25

```
 1          VIDEOTAPED DEPOSITION OF BRUCE EVERETT HUFFMAN

 2  was taken on October 27, 2023, commencing at 9:05 a.m. at

 3  the law offices of Greenberg Traurig, LLP, 2375 East

 4  Camelback Road, Suite 800, Phoenix, Arizona, before

 5  Meri Coash, a Certified Reporter in the State of Arizona.

 6

 7                            *   *   *

 8  APPEARANCES:

 9       For the Plaintiff:
              MILLS + WOODS LAW PLLC
10            By:  Robert T. Mills, Esq.
                   5055 North 12th Street
11                 Suite 101
                   Phoenix, Arizona  85014
12                 480-999-4556
                   docket@millsandwoods.com
13
         For the Defendant JPMorgan Chase Bank, N.A.:
14            GREENBERG TRAURIG, LLP
              By:  Adrianna Griego Gorton, Esq.
15                 2375 East Camelback Road
                   Suite 800
16                 Phoenix, Arizona  85016
                   602-445-8000
17                 gortona@gtlaw.com

18       For the Defendant Goodman Holmgren Law Group, LLP:
              BROENING OBERG WOODS & WILSON PC
19            By:  Jathan Paul McLaughlin, Esq.
                   2800 North Central Avenue
20                 Suite 1600
                   Phoenix, Arizona  85004
21                 602-271-7700
                   jpm@bowwlaw.com
22
         Also present:  Julieta Clur (via Zoom);
23       Jimmy Sullivan, videographer

24

25
```

|   |   |
|---|---|
| | 1 |   TRANSCRIPT OF PROCEEDINGS |
| | 2 |
| 09:10:02 | 3 |   THE VIDEOGRAPHER:  Good morning.  We are on |
| 09:10:02 | 4 | the record.  Time on the video monitor is 9:05 a.m.  Here |
| 09:10:03 | 5 | begins Volume 1, Media Number 1, in the deposition of |
| 09:10:03 | 6 | Bruce E. Huffman, in the matter of Bruce E. Huffman versus |
| 09:10:03 | 7 | JPMorgan Bank, in the United States District Court for the |
| 09:10:03 | 8 | District of Arizona, Case Number 2:22-cv-00903-JJT. |
| 09:10:03 | 9 |   Today's date is October 27th, 2023.  Our |
| 09:10:03 | 10 | court reporter is Meri Coash.  I am Jimmy Sullivan, |
| 09:10:03 | 11 | certified legal videographer, representing Coash Court |
| 09:10:03 | 12 | Reporting & Video. |
| 09:10:03 | 13 |   This deposition is taking place at 2375 East |
| 09:10:03 | 14 | Camelback Road, Suite 800, Phoenix, Arizona. |
| 09:10:03 | 15 |   Counsel, would you please identify |
| 09:10:03 | 16 | yourselves. |
| 09:10:03 | 17 |   MR. MILLS:  Bob Mills for the plaintiff, |
| 09:10:03 | 18 | Bruce Huffman. |
| 09:10:03 | 19 |   MS. GORTON:  Adrianna Gorton, for the law |
| 09:10:03 | 20 | firm Greenberg Traurig, representing Defendant JPMorgan |
| 09:10:03 | 21 | Chase Bank.  And -- and on Zoom, we have our client |
| 09:10:03 | 22 | representative Julieta Clur. |
| 09:10:03 | 23 |   MR. McLAUGHLIN:  Jathan McLaughlin, on |
| | 24 | behalf of -- what was formerly known as Goodman Holm- -- |
| 09:10:03 | 25 | Holmgren Law Group, LLP. |

09:10:03    1          THE VIDEOGRAPHER:  Okay.  Would the court

09:10:03    2    reporter please swear in the witness.

3

4                    BRUCE EVERETT HUFFMAN,

5    the witness herein, having been first duly sworn by the

09:10:03    6    Certified Reporter, was examined and testified as follows:

09:10:03    7

09:10:03    8          THE VIDEOGRAPHER:  You may begin.

9

09:10:03   10                    EXAMINATION

09:10:03   11    BY MS. GORTON:

09:10:03   12      Q.   Good morning, Mr. Huffman.  As you may have

09:10:03   13    heard, my name is Adrianna Gorton, and I represent

09:10:03   14    Defendant JPMorgan Chase Bank, NA.

09:10:03   15          Thank you for your time this morning.

09:10:03   16      A.   Very well.

09:10:03   17      Q.   I know you said earlier this morning you wanted

09:10:03   18    to be anywhere but here, so -- so I appreciate you being

09:10:03   19    here.

09:10:03   20          We're going to start -- I want to start off,

09:10:03   21    can you give your full name and spell it for the record,

09:10:03   22    please.

09:10:03   23      A.   It's Bruce Everett Huffman.  The last name or

09:10:03   24    everything?

09:10:03   25      Q.   The last name's fine, sir.

09:54:08   1      A.   Well, it's over 2000 --

           2      Q.   Right.

09:54:10   3      A.   -- I would think.

09:54:11   4      Q.   Okay.  So that's about 24 months of deposit at

09:54:16   5   this point at about 2,300 a month, so if my math's

09:54:20   6   correct, that's about almost exactly 55,200, right?  If

09:54:25   7   you need to do the math, go ahead.  I taught math for

09:54:31   8   three years and I still used a calculator for that.

09:54:33   9      A.   You know, I don't have a calculator here,

09:54:35  10   so . . .

09:54:35  11      Q.   Did you ever withdraw any of your social

09:54:40  12   security?

09:54:40  13      A.   I don't think I did.

09:54:41  14      Q.   Okay.

09:54:41  15      A.   Well, yes, there was one withdrawal.  And I can't

09:54:46  16   remember when that was or what the date was, but . . .

09:54:48  17      Q.   So maybe one time you withdrew funds?

09:54:51  18      A.   At least once, yeah.

09:54:52  19      Q.   Okay.  What was the purpose of keeping your funds

09:54:57  20   in this account?

09:55:00  21      A.   What do you mean?

09:55:01  22      Q.   So you had at this point accumulated $55,203.54.

09:55:07  23   It doesn't seem that -- that you were doing many

09:55:09  24   withdrawals, as you've just testified, that maybe you

09:55:11  25   withdrew once.  So were you saving this money for

| | | |
|---|---|---|
| 09:55:15 | 1 | anything? |
| 09:55:15 | 2 | A.   Yes. |
| 09:55:16 | 3 | Q.   What were you saving it for? |
| 09:55:18 | 4 | A.   My retirement. |
| 09:55:20 | 5 | Q.   Okay.  And you were already retired at this |
| 09:55:22 | 6 | point? |
| 09:55:22 | 7 | A.   Well, semiretired, yeah.  I mean, I would do odd |
| 09:55:25 | 8 | jobs, as I told you before, so . . . |
| 09:55:26 | 9 | Q.   What odd jobs were you doing in December of 2020? |
| 09:55:29 | 10 | A.   Oh, like landscaping jobs, if somebody needed |
| 09:55:36 | 11 | work done, if somebody -- you know, handyman job, stuff |
| 09:55:43 | 12 | like that. |
| 09:55:44 | 13 | Q.   But you weren't living off of these funds that |
| 09:55:46 | 14 | were on deposit in this account, right? |
| 09:55:49 | 15 | A.   No.  I had other means of income. |
| 09:55:52 | 16 | Q.   Did you have other bank accounts at this time? |
| 09:55:55 | 17 | A.   I did. |
| 09:55:55 | 18 | Q.   Okay.  Did you have a retirement or pension from |
| 09:55:59 | 19 | any of your other previous employments? |
| 09:56:02 | 20 | A.   Retirement? |
| 09:56:03 | 21 | Q.   Uh-huh. |
| 09:56:04 | 22 | A.   Yes. |
| 09:56:04 | 23 | Q.   Do you have another retirement account? |
| 09:56:06 | 24 | A.   I do. |
| 09:56:09 | 25 | Q.   Who's that with? |

09:56:11    1      A.   You mean the entity that's holding the retirement

09:56:17    2    account?

09:56:18    3      Q.   Yes.  Perfect.

09:56:19    4      A.   I don't remember.  They've changed their -- the

09:56:28    5    entity.

09:56:28    6      Q.   Do you have those statements -- or a statement

09:56:32    7    from that entity?  Let me rephrase that.

09:56:35    8           Do you receive statements from the entity

09:56:37    9    that is holding your retirement account?

09:56:40   10      A.   I do.

09:56:41   11      Q.   Do you receive those on a monthly basis?

09:56:45   12      A.   I don't think it's monthly.  And I think it's

09:56:48   13    like a quarterly-type thing or maybe --  I don't know what

09:56:52   14    their -- you know, their frequency is.

09:56:54   15      Q.   Do you have online access to view your balance?

09:56:57   16      A.   They do, but I've never used that because I've

09:57:04   17    got too many passwords as it is and I just rely on the

09:57:10   18    statements that they send me.

09:57:11   19      Q.   And when was that retirement account opened, if

09:57:17   20    you recall?

09:57:17   21      A.   I don't.

09:57:20   22      Q.   Do you think you've had it longer than 10 years?

09:57:24   23      A.   From today's date?

09:57:29   24      Q.   Correct.

09:57:30   25      A.   Oh, yeah.  I think it's longer than 10 years.

09:57:33    1        Q.    Longer than 20 years, which would put us at 2003?
09:57:37    2   Can you believe that?
09:57:38    3        A.    2003?  I don't know the answer to that.
09:57:46    4        Q.    Was that account self-funded?
09:57:49    5        A.    I think there was a contribution by Intuit.  I
09:58:08    6   don't know.  I think there was.  I think there was a
09:58:10    7   contribution by Intuit.
09:58:11    8        Q.    And so you stated that you were saving these
09:58:15    9   funds for your retirement.  Did you have a plan of when
09:58:19   10   you were thinking of using the funds?
09:58:20   11        A.    The funds that Chase was holding?
09:58:22   12        Q.    Correct.  Sorry.  And I switched gears on you for
09:58:24   13   that.  I'll rephrase my question.
09:58:26   14             You previously testified that you were
09:58:27   15   saving the funds that were on deposit with Chase for your
09:58:32   16   retirement.  Do you have an idea of when you were planning
09:58:35   17   on using the funds?
09:58:38   18        A.    No, I mean, it's --  No, I don't have a set plan.
09:58:40   19   I just --  As needed, I guess.  Whenever it comes to the
09:58:45   20   point that I need the funds.
09:58:47   21        Q.    And I'm going to jump around a little bit.  You
09:58:50   22   eventually withdrew your funds in their entirety from
09:58:54   23   Chase, correct?
09:58:56   24        A.    Yeah.  I tried --  When they wouldn't release my
09:59:03   25   social security funds, they said they were going to hold

09:59:05  1    it because of the garnishment, and -- and I explained to

09:59:09  2    them that you can't garnish social security funds, but

09:59:15  3    they wouldn't do anything about it.  So the funds that

09:59:21  4    they weren't freezing or holding on to, I immediately

09:59:26  5    withdrew.  And I decided I'm not going to have anything to

09:59:33  6    do with Chase anymore.

09:59:34  7        Q.   And then eventually, you withdrew the entirety of

09:59:38  8    your funds and closed the account, correct?

09:59:40  9        A.   Eventually, yeah.  Whenever the date --  They

09:59:43  10   delayed releasing it even after the court order, which I

09:59:46  11   gave them, so as soon as I could get my funds out of

09:59:52  12   there --  I -- I sent them emails, I called them, and they

09:59:57  13   wouldn't release it.

09:59:58  14       Q.   And I'll get through all that, Mr. Huffman.

          15       A.   Okay.

10:00:03  16       Q.   My question is you eventually withdrew all your

10:00:05  17   funds from Chase, correct?

10:00:08  18       A.   I did.  Every single penny.

10:00:09  19       Q.   And did you redeposit them into another account?

10:00:11  20       A.   No.  I just held it in my house.

10:00:13  21       Q.   Okay.  So you have all the funds currently at

10:00:15  22   home in cash?

10:00:16  23       A.   Not now, no.  But after -- after I withdrew my

10:00:19  24   funds from Chase, I had --  I did not trust banks to

10:00:23  25   comply with court orders.  I didn't trust banks to abide

| | | |
|---|---|---|
| 10:00:25 | 1 | by the law of, you know, not garnishing your social |
| 10:00:30 | 2 | security funds, so I kept -- I kept the funds personally |
| 10:00:35 | 3 | in my house. |
| 10:00:35 | 4 |     Q.   Okay.  So those funds are not currently in |
| 10:00:38 | 5 | deposit with any bank? |
| 10:00:39 | 6 |     A.   I didn't say that.  I said when I withdrew the |
| 10:00:42 | 7 | funds from Chase and I got -- when they finally released |
| 10:00:45 | 8 | my money, I took the funds and put it in my house. |
| 10:00:49 | 9 |     Q.   Okay.  Did you eventually redeposit those funds |
| 10:00:54 | 10 | into any bank account? |
| 10:00:55 | 11 |     A.   Just recently I did. |
| 10:00:56 | 12 |     Q.   When was that? |
| 10:00:57 | 13 |     A.   I don't remember the date. |
| 10:01:05 | 14 |     Q.   Within the last year? |
| 10:01:07 | 15 |     A.   Within the last year. |
| 10:01:08 | 16 |     Q.   So -- |
| 10:01:09 | 17 |     A.   I think the last --  Well, I can't say that.  I |
| 10:01:12 | 18 | don't know. |
| 10:01:12 | 19 |     Q.   Okay.  And where did you open another bank |
| 10:01:16 | 20 | account?  At which institution? |
| 10:01:20 | 21 |         THE WITNESS:  Do I have to answer that? |
| 10:01:22 | 22 |         MR. MILLS:  How is it relevant, what |
| 10:01:25 | 23 | institution? |
| 10:01:26 | 24 |         MS. GORTON:  We can take it off the record |
| 10:01:28 | 25 | and we can discuss, Bob. |

10:22:47  1   that appears to be pretty close.

10:22:49  2       Q.   Around that time?

10:22:50  3       A.   Yeah.

10:22:50  4       Q.   Okay.  And then after you withdrew the full

10:22:55  5   amount on deposit with Chase, you testified that you held

10:22:59  6   on to the funds at your home and then eventually deposited

10:23:03  7   them into your U.S. Bank account.  Is that correct?

10:23:06  8       A.   That's correct.

10:23:06  9       Q.   Do you remember, when you deposited it into your

10:23:09  10  U.S. Bank account, was it the full amount of $60,601.42?

10:23:12  11      A.   It was the, yeah, exact amount with --  And I

10:23:19  12  provided them documentation that -- that matched what was

10:23:23  13  on my Chase account and it was social security so that I

10:23:29  14  wouldn't have any issues down the road.

10:23:30  15      Q.   Okay.  And just to clarify, when you withdrew

10:23:35  16  your funds from the Chase account, you held on to them for

10:23:39  17  a while, and then you redeposited them into the U.S. Bank

10:23:43  18  account, and the amount that you redeposited was the full

10:23:46  19  amount that you had withdrawn from Chase?

10:23:47  20      A.   That's correct.

10:23:48  21      Q.   You previous -- we've previously discussed in

10:24:03  22  general terms the writ of garnishment and the underlying

10:24:08  23  action that resulted in that writ.  Chase was not involved

10:24:13  24  in that underlying action between you and Magic Ranch

10:24:16  25  homeowners association, correct?

Bruce E. Huffman vs. JPMorgan Chase Bank
Bruce Everett Huffman                    October 27, 2023

2:22-cv-00903-JJT
101

11:37:59  1  seeking three categories of damages:  one, the loose --

11:38:03  2  the loss of use of your $60,597.20 from January 11, 2022,

11:38:10  3  until March 21st, 2022; two, compensation for the mental

11:38:16  4  stress and anguish you suffered as a result of defendants'

11:38:20  5  conduct, and that's plural; and then, three, attorneys'

11:38:26  6  fees and costs incurred in the Pinal County action in an

11:38:31  7  effort to free your funds.  Do you see that?

11:38:32  8      A.   Yes.

11:38:32  9      Q.   Is that an accurate interpretation of the damages

11:38:35  10  that you seek in this matter?

11:38:36  11      A.   Well, that's interesting because I didn't get the

11:38:38  12  funds until March 26th, so . . .

11:38:41  13      Q.   Is March 21st, 2022, the date that you were

11:38:44  14  informed -- or that you allege you were informed that the

11:38:47  15  funds were available and offered a cashier's check?

11:38:50  16      A.   I -- I don't know.  I mean, that sounds like a

11:38:52  17  long period of time.  That's five days' difference.  I

11:38:58  18  wouldn't think it would take Chase five days to get

11:39:01  19  $60,000 cash.  So --

11:39:03  20      Q.   Okay.

11:39:04  21      A.   -- I -- I question that.

11:39:05  22      Q.   Okay.  So I'm speaking specifically about the

11:39:08  23  three categories.  Are those three categories that I

11:39:12  24  enumerated for you accurate as to the damages that you're

11:39:15  25  claiming?

11:39:16  1      A.   The loss of use?

11:39:18  2      Q.   Correct.

11:39:18  3      A.   Loss of use and -- yeah, and mental stress and

11:39:20  4   anguish and --

11:39:21  5      Q.   Mental stress and anguish?

11:39:22  6      A.   I mean, it's the whole gamut of, you know, anger

11:39:25  7   and --

11:39:25  8      Q.   Are those the three categories, Mr. Huffman?  And

11:39:28  9   then attorneys' fees and costs incurred in the Pinal

11:39:32  10  County action in an effort to free your funds?

11:39:35  11     A.   Yes.

11:39:35  12     Q.   Okay.  And we discussed earlier that you had been

11:39:38  13  saving the funds in your Chase Bank account for your

11:39:41  14  retirement and that you then transferred those funds to

11:39:44  15  your U.S. Bank account maybe in or around August of 2021.

11:39:51  16     A.   I don't know or remem- -- I don't remember the

11:39:53  17  date that I did it, but I had it in my house, as I told

11:39:57  18  you before.

          19     Q.   Uh-huh.

11:39:59  20     A.   Then at one -- some point in time, I decided

11:40:02  21  that -- after talking to the bankers at -- at U.S. Bank,

11:40:07  22  that they would still be exempt because I could trace

11:40:12  23  them.

11:40:12  24     Q.   Uh-huh.

11:40:12  25     A.   So I decided to take them out of my mattress.

11:40:17   1      Q.   So have you used those funds at all?

11:40:19   2      A.   Some of the funds.  You mean the ones that were

11:40:24   3  in my Chase Bank account?

11:40:26   4      Q.   Correct.

11:40:26   5      A.   Yeah.  I used some of them because I withdrew

11:40:32   6  whatever wasn't tied up, you know, the -- I guess $10,000

11:40:37   7  when I saw the statements, so . . .

11:40:38   8      Q.   You withdrew $10,000.  What did you use it for?

11:40:41   9      A.   Oh, I don't know.

11:40:42   10     Q.   Okay.  And then you previously testified that

11:40:46   11 when you withdrew the $60,000 in or around March of 2022,

11:40:52   12 you then deposited that full amount into your U.S. Bank

11:40:55   13 account, right?

11:40:56   14     A.   That's correct.

11:40:57   15     Q.   Okay.  So what was the plan --  Or what plans did

11:40:59   16 you have for the use of the money during that time frame,

11:41:02   17 during the January 11, 2022, to March 21, 2022, time

11:41:07   18 frame?

11:41:12   19     A.   You mean what was I going --  Was I going to buy

11:41:14   20 something?  Is that what you're asking me or --

11:41:15   21     Q.   Right.  Because you're alleging damages for the

11:41:18   22 loss of use of your funds.  What were you going to use

11:41:21   23 them for?

11:41:21   24     A.   My retirement.

11:41:23   25     Q.   But you still have those funds, correct?

| | | |
|---|---|---|
| 11:41:26 | 1 | A.   Right. |
| 11:41:26 | 2 | Q.   So you haven't used them? |
| 11:41:27 | 3 | A.   I'm still retired. |
| 11:41:28 | 4 | Q.   Right. |
| 11:41:29 | 5 | A.   Okay. |
| 11:41:30 | 6 | Q.   So can you explain to me what damages for the |
| 11:41:35 | 7 | loss of use are in your -- in your opinion? |
| 11:41:38 | 8 | A.   The ability to use it for whatever means you want |
| 11:41:43 | 9 | to use it for.  I mean, you could buy a car with it.  You |
| 11:41:46 | 10 | could pay bills. |
| 11:41:50 | 11 | Q.   Did you have plans to buy a car? |
| 11:41:52 | 12 | A.   At that point in time? |
| 11:41:54 | 13 | Q.   Uh-huh. |
| 11:41:55 | 14 | A.   Maybe.  I don't know. |
| | 15 | Q.   Did you -- |
| 11:41:56 | 16 | A.   I don't remember. |
| 11:41:56 | 17 | Q.   Did you approach any dealerships? |
| 11:41:58 | 18 | A.   I don't remember. |
| 11:41:59 | 19 | Q.   Were you denied a car because you didn't have use |
| 11:42:02 | 20 | of these funds? |
| 11:42:03 | 21 | A.   I don't -- I don't think so.  No. |
| 11:42:07 | 22 | Q.   Okay.  Were you using these funds to pay bills? |
| 11:42:09 | 23 | A.   Did I use those funds to pay bills? |
| 11:42:14 | 24 | Q.   Yes. |
| 11:42:14 | 25 | A.   No. |

| | | |
|---|---|---|
| 11:42:14 | 1 | Q.   Okay.  So you weren't going to use them to pay |
| 11:42:18 | 2 | bills during this? |
| 11:42:18 | 3 | A.   Are you talking about the $10,000 or the $60,000? |
| 11:42:21 | 4 | Q.   I'm talking about the $60,000.  It says damages |
| 11:42:24 | 5 | for the loss of use of the 60,597.20 from January 11th, |
| 11:42:30 | 6 | 2022, until March 21, 2022.  And what I'm trying to figure |
| 11:42:34 | 7 | out is what was your intent?  How were you going to use |
| 11:42:37 | 8 | those funds?  How were you damaged? |
| 11:42:38 | 9 | A.   I was --  Those funds were earmarked for my |
| 11:42:42 | 10 | retirement. |
| 11:42:43 | 11 | Q.   Did you have plans to use those funds from |
| 11:42:46 | 12 | January 11th, 2022, to March 21, 2022? |
| 11:42:50 | 13 | A.   Other than use it -- putting them in the bank? |
| 11:42:54 | 14 | Q.   Yes. |
| 11:42:55 | 15 | A.   I don't remember in 2021.  There was a point in |
| 11:42:59 | 16 | time where there was -- during COVID, that the stock |
| 11:43:08 | 17 | market had -- took a dump.  I mean, it was pretty low in a |
| 11:43:14 | 18 | lot of areas, so I had looked at stocks and was |
| 11:43:18 | 19 | contemplating putting some money into stocks. |
| 11:43:22 | 20 | Q.   And COVID occurred -- March 17th was when the |
| 11:43:25 | 21 | national emergency was -- was declared -- of 2020, |
| | 22 | correct? |
| 11:43:30 | 23 | A.   2020?  That sounds about right. |
| 11:43:32 | 24 | Q.   So that was two years prior to this, right? |
| 11:43:36 | 25 | A.   Yes. |

11:43:36  1      Q.   And did you use any of those funds to invest in

11:43:39  2   the stock market at that time?

11:43:40  3      A.   I didn't have access to those funds.

11:43:42  4      Q.   In March of 2020?

11:43:44  5      A.   Oh, March of 2020.  No.  But during that period

11:43:51  6   from 2020 to -- during the COVID situation, there were a

11:44:03  7   lot of -- blue-chip stocks is what I call them, like Ford

11:44:09  8   and Intuit and -- which I worked for, and General

11:44:19  9   Electric, some of the ones that I was looking at,

11:44:21 10   contemplating whether or not I should -- should take

11:44:25 11   advantage of the low stock price.

11:44:27 12      Q.   And when was that?

11:44:28 13      A.   It would have been during that COVID period.

11:44:30 14      Q.   What are you defining as the "COVID period"?

11:44:33 15      A.   Well, when the stock market really went down, so

11:44:38 16   I don't have exact dates.

11:44:39 17      Q.   Okay.

11:44:41 18      A.   But there were a lot of stocks that were just

11:44:43 19   bargain-basement price.

11:44:45 20      Q.   And is it your testimony that in January 11th,

11:44:51 21   2022, to March 21, 2022, you were looking at investing

11:44:56 22   stocks due to the COVID pandemic?

11:44:58 23      A.   I was considering it, yes.

11:45:00 24      Q.   Do you have any record of that?  Did you speak to

11:45:04 25   a broker?

| | | |
|---|---|---|
| 11:45:06 | 1 | A.   What do you mean? |
| 11:45:07 | 2 | Q.   In terms of investing stocks, how were you going |
| 11:45:08 | 3 | to do that? |
| 11:45:08 | 4 | A.   Self-directed. |
| 11:45:09 | 5 | Q.   Okay.  Did you open any brokerage account? |
| 11:45:12 | 6 | A.   I have brokerage accounts. |
| 11:45:14 | 7 | Q.   Okay.  And that's a self-directed account? |
| 11:45:15 | 8 | A.   Yes. |
| 11:45:15 | 9 | Q.   Okay.  And who's that with? |
| 11:45:17 | 10 | A.   I don't remember.  They -- it's a --  It's a |
| 11:45:25 | 11 | retirement account. |
| 11:45:26 | 12 | Q.   Is this the retirement account that you were |
| 11:45:30 | 13 | talking about earlier? |
| 11:45:31 | 14 | A.   Yes. |
| 11:45:32 | 15 | Q.   And you said that you do have statements |
| 11:45:37 | 16 | available for that that you could provide, correct? |
| 11:45:40 | 17 | A.   I think so. |
| 11:45:40 | 18 | Q.   And after this deposition, are you able to |
| 11:45:44 | 19 | collect those and provide those to your attorney so they |
| 11:45:47 | 20 | can be produced in this litigation? |
| 11:45:49 | 21 | A.   I believe so. |
| | 22 | Q.   Okay. |
| 11:45:50 | 23 | A.   If I have them. |
| 11:45:51 | 24 | Q.   And if not, are you able to provide the entity |
| 11:45:54 | 25 | that they have so that we may issue a subpoena? |

11:45:58  1       A.   Oh, yeah, I can -- I can find out who it is.

11:46:02  2       Q.   And then the next cate- --  Is there any other

11:46:04  3  use that was contemplated between January 11, 2022, until

11:46:08  4  March 21, 2022, for these funds?  And when I say "these

11:46:12  5  funds," I mean the $60,597.20.

11:46:15  6       A.   Other than the stock market, I think that was the

11:46:18  7  only serious -- I mean, there may have been, you know,

11:46:20  8  other things that I considered, but I -- the stock

11:46:23  9  market --

11:46:24 10       Q.   What other --

11:46:25 11            I'm sorry, Mr. Huffman.  Go ahead.

11:46:26 12       A.   The stock market is the one that comes to mind.

11:46:30 13       Q.   But you had not previously used any of your

11:46:32 14  social security benefits to invest in the stock market

11:46:38 15  prior to this, right?

11:46:38 16       A.   No.  No.

11:46:39 17       Q.   The next category --

11:46:43 18            Oh, I'm sorry.  And you said that there were

11:46:44 19  other things that you may have considered.  What are the

11:46:46 20  other things you may have considered?

11:46:48 21       A.   Real estate, but it's kind of hard to do that

11:46:55 22  when it's retirement funds.  You can't earmark it for --

11:46:59 23  as retirement.  So . . .

11:47:02 24       Q.   So how were you planning on using the funds to

11:47:06 25  invest in real estate?

| | | |
|---|---|---|
| 11:47:08 | 1 | A.   Find something that's a really good deal and make |
| 11:47:10 | 2 | a down payment with it. |
| 11:47:11 | 3 | Q.   Did you find any houses or any properties that |
| 11:47:14 | 4 | you were interested in investing in that you were |
| 11:47:16 | 5 | precluded from doing so because these funds were on hold? |
| 11:47:20 | 6 | A.   I -- I don't recall anything specifically, but I |
| 11:47:23 | 7 | was always looking at real estate prices and homes.  I get |
| 11:47:27 | 8 | emails from various real estate things like Redfin and -- |
| 11:47:39 | 9 | there's another one I can't remember the name of it, but I |
| 11:47:42 | 10 | get emails from these real estate places. |
| 11:47:49 | 11 | Q.   Were you working with a real estate agent or a |
| 11:47:52 | 12 | broker? |
| 11:47:52 | 13 | A.   At that point in time? |
| 11:47:54 | 14 | Q.   Yes, sir.  And that point in time being |
| 11:47:56 | 15 | January 11, 2022, to March 21st, 2022. |
| 11:47:59 | 16 | A.   I don't think so.  They -- but they --  When they |
| 11:48:01 | 17 | send you that stuff, like Redfin and places like that, |
| 11:48:05 | 18 | they -- they have a phone number where you can con- -- if |
| 11:48:07 | 19 | you're interested in something, you can contact them and |
| 11:48:10 | 20 | then they can show you the property and . . . |
| 11:48:12 | 21 | Q.   Did you contact anyone in relation to any |
| 11:48:14 | 22 | specific property? |
| 11:48:15 | 23 | A.   I don't think --  Well, I may have inquired about |
| 11:48:18 | 24 | some, but I don't remember anything specifically. |
| 11:48:20 | 25 | Q.   Would you have records of those inquiries? |

| | | |
|---|---|---|
| 11:48:25 | 1 | A.   Probably not. |
| 11:48:30 | 2 | Q.   Would you have called a phone number? |
| 11:48:32 | 3 | A.   I may have.  I don't -- I don't know.  I mean, |
| 11:48:41 | 4 | it's been a long time.  So . . . |
| 11:48:42 | 5 | Q.   And you said you'd be able to provide your phone |
| 11:48:47 | 6 | records, right? |
| 11:48:48 | 7 | A.   Sure. |
| 11:48:48 | 8 | Q.   Anything else besides the stock market and |
| 11:48:55 | 9 | potential real estate investments that you were looking at |
| 11:48:58 | 10 | for possible use of these funds? |
| 11:49:02 | 11 | A.   That's the only two that come to mind. |
| 11:49:04 | 12 | Q.   Speaking of the real estate investments, did you |
| 11:49:06 | 13 | put in any offers on any properties at this time? |
| 11:49:09 | 14 | A.   I don't --  During March -- January through |
| 11:49:13 | 15 | March? |
| 11:49:14 | 16 | Q.   Correct. |
| 11:49:14 | 17 | A.   I don't think so. |
| 11:49:14 | 18 | Q.   Okay.  Were you denied a property because you |
| 11:49:16 | 19 | didn't have use of these funds? |
| 11:49:17 | 20 | A.   If -- if I didn't make an offer, I wouldn't have |
| 11:49:22 | 21 | been denied, so yeah, I don't think so. |
| 11:49:24 | 22 | Q.   Do you have any other current real estate |
| 11:49:26 | 23 | holdings? |
| 11:49:27 | 24 | A.   Yes, I do. |
| 11:49:31 | 25 | Q.   Okay.  What are those? |

| | | |
|---|---|---|
| 11:52:35 | 1 | A.   Whenever they -- they set up appointments. |
| 11:52:41 | 2 | Q.   And have you been diagnosed with anything from |
| 11:52:42 | 3 | the VA in terms of mental stress and anguish? |
| 11:52:45 | 4 | A.   Yes, I have. |
| 11:52:46 | 5 | Q.   Okay.  If you can go to page 4 of this. |
| 11:52:50 | 6 | A.   Page 4? |
| 11:52:51 | 7 | Q.   Yes.  Page 4 of Exhibit -- |
| 11:52:55 | 8 | MS. GORTON:  What number are we on?  14? |
| 11:52:58 | 9 | MR. McLAUGHLIN:  Correct. |
| 11:52:58 | 10 | BY MS. GORTON: |
| 11:53:03 | 11 | Q.   Interrogatory -- Interrogatory Number 5 asked -- |
| 11:53:08 | 12 | related to your complaint allegation that you suffered |
| 11:53:12 | 13 | anguish, fright, nervousness, grief, anxiety, worry, |
| 11:53:12 | 14 | shock, humiliation, and shame because of the actions of |
| 11:53:16 | 15 | the -- of Chase.  It then asked you to identify each |
| 11:53:19 | 16 | medical condition you experienced from January 1, 2021, to |
| 11:53:22 | 17 | present, including but not limited to medical conditions |
| 11:53:25 | 18 | you allege to have been caused by Chase.  And then it goes |
| 11:53:29 | 19 | on to ask for more specifics. |
| 11:53:31 | 20 | Your attorneys, on behalf of your -- on your |
| 11:53:35 | 21 | behalf, objected and then said that, again, you suffered |
| 11:53:40 | 22 | anguish, fright, nervousness, grief, anxiety, worry, |
| 11:53:43 | 23 | shock, humiliation, loss of sleep, and shame due to |
| 11:53:48 | 24 | Chase's actions, so just reiterating the allegations.  And |
| 11:53:52 | 25 | then states that you did not receive medical treatment for |

11:53:55   1   any medical condition caused by Chase.  Is that an

11:53:58   2   accurate statement?

11:53:59   3       A.   I think so.  Yeah, I didn't --  I mean, they

11:54:01   4   didn't prescribe anything for me.  You know, I see them

11:54:03   5   periodically.  They ask me what's going on in my life and

11:54:07   6   I tell them.  And -- and I may have told them about my

11:54:11   7   social security being garnished.  And -- and so those

11:54:15   8   types of discussions are -- you know, take place.  Whether

11:54:19   9   they noted it in the file, I don't know.

11:54:21   10      Q.   Do you have those files available to you?

11:54:24   11      A.   I don't, no.  The VA has them.

11:54:26   12      Q.   But they're your medical records, right?  So you

11:54:29   13   could --

11:54:30   14      A.   That's -- that's correct.

11:54:30   15      Q.   Okay.  And you stated that you may have discussed

11:54:35   16   this matter with your medical providers?

11:54:37   17      A.   They ask me what's going in my life and I tell

11:54:40   18   them.

           19      Q.   Okay.

11:54:42   20      A.   And that would have been something that I would

11:54:44   21   have, had I --  if I had an examination during that period

11:54:48   22   of time, I would have told them about it.

11:54:51   23      Q.   Okay.  So your medical records have information

11:54:53   24   that may be relevant to this matter?

11:54:55   25      A.   Yeah.  I -- I don't know.

| | | |
|---|---|---|
| 11:54:56 | 1 | Q. Well, you discussed this matter with your medical |
| 11:54:59 | 2 | providers? |
| 11:55:00 | 3 | A. Yeah, I don't know what they noted. You know, |
| 11:55:02 | 4 | they -- they may -- they put down things sometimes. |
| 11:55:05 | 5 | Sometimes they don't. It's just a verbal discussion a lot |
| 11:55:09 | 6 | of times. So whether they noted it in the file -- so I |
| 11:55:12 | 7 | have no idea. |
| 11:55:12 | 8 | Q. Okay. So you don't know one -- one way or |
| 11:55:14 | 9 | another whether they're noted in your medical files? |
| 11:55:17 | 10 | A. That is correct. |
| 11:55:17 | 11 | Q. But you did discuss this matter with your medical |
| 11:55:20 | 12 | providers? |
| 11:55:20 | 13 | A. I would have -- I would have discussed anything |
| 11:55:22 | 14 | that was happening in my life, because they always ask you |
| 11:55:25 | 15 | that. |
| 11:55:25 | 16 | Q. Okay. But you were not diagnosed with any |
| 11:55:27 | 17 | medical condition as a result of Chase's conduct, right? |
| 11:55:30 | 18 | A. That's correct. |
| 11:55:31 | 19 | Q. Okay. Next category is that you seek |
| 11:55:35 | 20 | compensation for attorneys' fees and costs incurred in the |
| 11:55:38 | 21 | Pinal County action in an effort to free your funds. What |
| 11:55:44 | 22 | was Chase's involvement, other than as the garnishee, in |
| 11:55:49 | 23 | the Pinal County action? |
| 11:55:51 | 24 | A. Say that again. |
| 11:55:52 | 25 | Q. What was Chase's role in the under- -- in the |

| | | |
|---|---|---|
| 11:55:55 | 1 | Pinal County action other than as a garnishee? |
| 11:55:59 | 2 | A.   One more time? |
| 11:56:08 | 3 | Q.   Yeah.   What was Chase's role in the Pinal County |
| 11:56:11 | 4 | action other than as a garnishee? |
| 11:56:13 | 5 | A.   Withholding my funds and not releasing them. |
| 11:56:16 | 6 | Q.   So its only role was that of a garnishee? |
| 11:56:21 | 7 | A.   I don't know if that's accurate, saying they were |
| 11:56:27 | 8 | only -- it was only related to being them -- them being a |
| 11:56:31 | 9 | garnishee.   They were holding my funds and they wouldn't |
| 11:56:33 | 10 | release them.   That was -- |
| 11:56:35 | 11 | Q.   So this says attorneys' fees and costs incurred |
| 11:56:38 | 12 | in the Pinal County action in an effort to free your |
| 11:56:43 | 13 | funds. |
| 11:56:43 | 14 | A.   Right.   They wouldn't release my funds. |
| 11:56:45 | 15 | Q.   So you freed, according to you, your funds when? |
| 11:56:47 | 16 | A.   January -- |
| 11:56:51 | 17 | Q.   11th? |
| 11:56:51 | 18 | A.   I contacted them when I got the garnishment and I |
| 11:56:54 | 19 | said, "Look, social security funds -- you know, it's -- |
| 11:56:57 | 20 | social security funds are not subject to garnishment. |
| 11:56:59 | 21 | Release them."   And they wouldn't.   I talked to that 800 |
| 11:57:04 | 22 | number or whatever it was, and I think it was in |
| 11:57:08 | 23 | Louisiana -- New Orleans comes to mind -- and they said |
| 11:57:13 | 24 | they would get back to me.   Never did. |
| 11:57:15 | 25 | Q.   And, Mr. Huffman, you're aware that in this |

| | | |
|---|---|---|
| 11:57:18 | 1 | matter, the Court has already ruled that Chase doesn't |
| 11:57:20 | 2 | have any liability prior to January 11th, 2022, right? |
| 11:57:27 | 3 | A.   I -- |
| 11:57:27 | 4 | MR. MILLS:  I'll object to the form. |
| 11:57:33 | 5 | Answer, if you can. |
| 11:57:34 | 6 | THE WITNESS:  I -- I don't know. |
| 11:57:35 | 7 | BY MS. GORTON: |
| 11:57:35 | 8 | Q.   So you're not aware of that? |
| 11:57:36 | 9 | A.   I don't know. |
| 11:57:37 | 10 | Q.   So prior to January 11th, 2022, which is the date |
| 11:57:44 | 11 | that you said that you freed your -- that you freed your |
| 11:57:46 | 12 | funds, what was Chase's action other than as a |
| 11:57:49 | 13 | garnishee -- or Chase's role in the action other than as a |
| 11:57:54 | 14 | garnishee? |
| 11:57:55 | 15 | A.   January 11th is the date that the judge ruled |
| 11:57:58 | 16 | that they weren't subject to garnishment. |
| 11:58:01 | 17 | Q.   Okay.  And that was the date that, according to |
| 11:58:03 | 18 | you, you freed your funds? |
| 11:58:05 | 19 | A.   That's the date that I -- they should have been |
| 11:58:10 | 20 | released or within a short period thereafter. |
| 11:58:13 | 21 | Q.   Okay.  So then after that date, what attorneys' |
| 11:58:16 | 22 | fees and costs did you incur? |
| 11:58:19 | 23 | A.   Oh, I don't know how he -- I don't know --  My -- |
| 11:58:26 | 24 | my attorney would know exactly what, you know, was |
| 11:58:29 | 25 | incurred for what particular day.  I've never received a |

| | | |
|---|---|---|
| 11:58:32 | 1 | detailed billing from him, so I don't know.  I received a |
| 11:58:35 | 2 | final billing. |
| 11:58:37 | 3 | Q.   And do you have that final billing available? |
| 11:58:39 | 4 | A.   I don't know if he sent that via email or if it |
| 11:58:44 | 5 | was --  I think it's probably an email. |
| | 6 | Q.   Would you be able to -- |
| 11:58:50 | 7 | A.   It's just a flat amount, said you owe $5,000 or |
| 11:58:56 | 8 | whatever it was.  And I paid them a retainer, so maybe it |
| 11:58:58 | 9 | was $6,000.  I don't know. |
| 11:59:00 | 10 | Q.   Are you able to retrieve your billing information |
| 11:59:06 | 11 | from your prior attorney, Mr. -- is it Bybee or -- Bybee? |
| 11:59:11 | 12 | A.   Bybee.  B-u-y- -- Bybee -- b-e-e, I think.  Well, |
| 11:59:16 | 13 | you have it on one of those. |
| 11:59:18 | 14 | Q.   Right.  I think it's B-y-b-e-e. |
| | 15 | A.   Okay. |
| 11:59:21 | 16 | Q.   Are you able to retrieve your billing entries |
| 11:59:24 | 17 | from him? |
| 11:59:24 | 18 | A.   My billing what? |
| 11:59:26 | 19 | Q.   Your -- the billing invoices that you received |
| 11:59:27 | 20 | from him? |
| 11:59:28 | 21 | A.   I don't think I received an invoice.  I received |
| 11:59:30 | 22 | something that said I owe X amount of dollars, so -- and |
| 11:59:34 | 23 | it may have been via email. |
| 11:59:36 | 24 | Q.   And as an attorney -- or previously trained as an |
| 11:59:39 | 25 | attorney or practicing attorney, you understand that |

| | | |
|---|---|---|
| 11:59:42 | 1 | attorneys usually keep pretty accurate records of their |
| 11:59:45 | 2 | time and billing entries, right? |
| 11:59:47 | 3 | A.   I would hope so.  And I think I even asked for a |
| 11:59:49 | 4 | detailed billing. |
| 11:59:50 | 5 | Q.   Okay.  So would you be able to provide that or |
| 11:59:52 | 6 | ask your attorney for -- |
| 11:59:53 | 7 | A.   I didn't get a detailed billing. |
| 11:59:55 | 8 | Q.   Okay.  So we can subpoena him for a detailed |
| 11:59:58 | 9 | billing? |
| 11:59:58 | 10 | A.   I guess you can. |
| 11:59:59 | 11 | Q.   Other than these three categories that were |
| 12:00:12 | 12 | enumerated and the discussions that we've had, are there |
| 12:00:15 | 13 | any other damages that you allege were incurred as a |
| 12:00:18 | 14 | result of Chase's conduct? |
| 12:00:19 | 15 | A.   I don't think so. |
| 12:00:21 | 16 | MS. GORTON:  Okay.  And I think I am done |
| 12:00:22 | 17 | for now.  I may have some questions later.  But I think |
| 12:00:27 | 18 | Mr. McLaughlin here might have some questions for you. |
| 12:00:30 | 19 | MR. McLAUGHLIN:  I do.  It's been a little |
| 12:00:33 | 20 | bit less than an hour.  We can either start now or take a |
| 12:00:35 | 21 | break.  Whatever you all want. |
| 12:00:37 | 22 | MS. GORTON:  It's up to you, Mr. Huffman. |
| 12:00:39 | 23 | MR. MILLS:  Do you need a break or -- |
| 12:00:40 | 24 | THE WITNESS:  No.  I'm fine. |
| | 25 | MR. MILLS:  Okay. |

| | | |
|---|---|---|
| 12:00:44 | 1 | THE WITNESS:  I have one question I want to |
| 12:00:45 | 2 | ask you. |
| 12:00:45 | 3 | MR. MILLS:  Okay. |
| | 4 | THE WITNESS:  A couple minutes. |
| 12:00:46 | 5 | MR. MILLS:  Let's take just a couple-minute |
| 12:00:50 | 6 | break. |
| | 7 | MS. GORTON:  Wait.  Do you -- did you want |
| 12:00:52 | 8 | to take a --  I'm sorry.  We can go off the record. |
| 12:00:54 | 9 | THE VIDEOGRAPHER:  We are off the record. |
| 12:00:55 | 10 | Time on the video monitor is 12:00 noon.  This will end |
| 12:01:00 | 11 | Media Number 2. |
| 12:01:01 | 12 | (A recess ensued.) |
| 12:13:00 | 13 | THE VIDEOGRAPHER:  We're back on the |
| 12:13:18 | 14 | camera -- or back on the record.  Time on the video |
| 12:13:23 | 15 | monitor is 12:13. |
| 12:13:26 | 16 | |
| 12:13:28 | 17 | EXAMINATION |
| 12:13:28 | 18 | BY MR. McLAUGHLIN: |
| 12:13:28 | 19 | Q.   Mr. Huffman, my name is Jathan McLaughlin.  I |
| 12:13:34 | 20 | represent Goodman Law in this case. |
| | 21 | I'm probably going to jump around a little |
| 12:13:35 | 22 | bit.  It's never my intention to --  When I jump around, I |
| 12:13:40 | 23 | will also probably paraphrase what I think I heard you say |
| 12:13:44 | 24 | earlier in your deposition.  It's never my intention to |
| 12:13:46 | 25 | put words in your mouth, and so if I -- I misstate what I |

12:36:30  1  testified that you, you know, didn't really know what this

12:36:32  2  was, you hadn't seen it before, you were unfamiliar with

12:36:36  3  it.  What I'm asking you is, when you were in practice,

12:36:38  4  did you ever file something like this, seeking to have a

12:36:42  5  garnishment writ removed?

12:36:45  6      A.   I -- No, I mean, I don't -- I'm not familiar

12:36:48  7  with it.  I -- I think -- I'm trying to think of an

12:36:53  8  instance where, you know, the garnishment was invalid or

12:37:00  9  illegal or something.  I -- I don't recall anything to

12:37:05  10 that effect.  There may have been a situation where I

12:37:10  11 withdrew a writ of garnishment, you know, because the

12:37:14  12 person decided that they were -- they weren't getting

12:37:17  13 their -- they were tired of getting their wages garnished

12:37:20  14 or whatever it might be and they decided that they're

12:37:22  15 going to set up a payment plan.  So that may have

12:37:25  16 happened.

12:37:25  17     Q.   So your -- your answer to that question answers

12:37:35  18 my next question, but I'm going to ask it anyway.  During

12:37:39  19 your time in private practice, you would garnish judgment

12:37:43  20 debtors?

12:37:45  21     A.   Yeah.  I would garnish -- if somebody owed a debt

12:37:49  22 and I knew that they were working at a certain place, that

12:37:54  23 was -- for the most part, that was the main way of

12:37:57  24 collecting on the debt, was to garnish their wages.

12:38:02  25     Q.   Did you ever levy bank accounts?

| | | |
|---|---|---|
| 12:53:26 | 1 | that you couldn't -- you lost the use of those funds -- of |
| 12:53:29 | 2 | those retirement funds.  And that was, at least as I |
| 12:53:33 | 3 | understood your answers -- again, not trying to put words |
| 12:53:35 | 4 | in your mouth -- in addition to attorneys' fees.  That was |
| 12:53:40 | 5 | the only financial damage you -- you incurred. |
| 12:53:44 | 6 | So my question is with respect to Goodman |
| 12:53:46 | 7 | Law firm, other than loss of use of funds, are there any |
| 12:53:50 | 8 | other financial damages and attorneys' fees -- sorry, are |
| 12:53:55 | 9 | there any other financial damages that you believe you |
| 12:53:57 | 10 | sustained because of Goodman Law firm's actions in the |
| 12:54:01 | 11 | garnishment proceeding? |
| 12:54:02 | 12 | A.   Excluding attorneys' fees and excluding the worry |
| 12:54:10 | 13 | and -- excluding that also?  So you're just talking about |
| 12:54:15 | 14 | loss of use? |
| 12:54:16 | 15 | Q.   I'm asking if, in addition to loss of use and |
| 12:54:21 | 16 | attorneys' fees, there are any other financial damages |
| 12:54:23 | 17 | that you believe you sustained because of Goodman Law's |
| 12:54:27 | 18 | actions in the garnishment proceeding. |
| 12:54:28 | 19 | A.   So you're excluding the worry and the grief and |
| 12:54:31 | 20 | the anger and all that stuff? |
| 12:54:33 | 21 | Q.   I'm not excluding it.  We'll get to that.  But |
| 12:54:36 | 22 | right now, I'm just talking about financial damages. |
| 12:54:38 | 23 | A.   That what I'm trying to understand -- what you're |
| 12:54:40 | 24 | talking about there.  So you're talking about out of |
| 12:54:43 | 25 | pocket? |

```
12:54:45   1        Q.   Any -- any sort of financial damages.  I can't --
12:54:47   2    I can't describe your damages for you.  You have to
12:54:49   3    describe them to me.  And that's why I'm asking.
12:54:52   4    Financial harm that you suffered as a result of Goodman
12:54:55   5    Law firm's actions in the garnishment proceeding in a --
12:54:59   6    in addition to loss of use and attorneys' fees?
12:55:02   7        A.   I -- I think that's all of the -- as you're
12:55:05   8    characterizing the question, I think that's all there is,
12:55:08   9    is loss of use and -- and attorneys' fees.
12:55:13  10        Q.   Okay.  I'm going to ask another question that
12:55:18  11    maybe gives you some insight into what -- where I'm --
12:55:20  12    where my head is at.  When you purchased your home in
12:55:22  13    Pinal County, did you buy it in cash or did you have a
12:55:25  14    mortgage?
12:55:25  15        A.   At that time, I paid cash for it.  It was during
12:55:29  16    the downturn in the housing market when there was a lot of
12:55:34  17    foreclosures.  And, quite frankly, I couldn't believe they
12:55:41  18    were selling houses for that.  That's why I moved from
12:55:43  19    Reno down here.  They were just basically giving houses
12:55:47  20    away, so I -- I paid cash for it.
12:55:49  21        Q.   Paid cash.  So you never had a mortgage.  So my
12:55:52  22    follow-up was --
12:55:52  23        A.   I do now.
12:55:53  24        Q.   On your house?
12:55:55  25        A.   Yes.
```

13:25:26   1       Q.   And right, wrong, or otherwise, he -- he rejected

13:25:29   2   that argument that you made?

13:25:30   3       A.   That shows you what I was up against.

13:25:32   4       Q.   Right, wrong, or otherwise, the judge rejected

13:25:37   5   your argument that all of these funds were -- were exempt

13:25:41   6   and could not be garnished, correct?

13:25:45   7       A.   He -- he -- he ruled against me.

13:25:52   8       Q.   Okay.  I'm going to now actually -- going to turn

13:25:54   9   your attention back to Exhibit 15, and we're on page 4.

13:26:00  10   And this was --  On -- on July 12th, they had the hearing

13:26:04  11   and the ruling.  On July -- paragraph 28 of your

13:26:07  12   Complaint, it reads -- very bottom of page 4 -- "On

13:26:11  13   July 23rd, 2021, Plaintiff, now represented by counsel,

13:26:14  14   filed a Motion for Reconsideration."

13:26:17  15            And so you waited a little bit less than two

13:26:20  16   weeks before a motion for reconsideration was filed on

13:26:25  17   that ruling, correct?

13:26:29  18       A.   Well, that's a mischaracterization.  I didn't

13:26:31  19   wait two weeks.  I -- I think the day of that hearing or

13:26:36  20   maybe even the next day, I started calling around to

13:26:38  21   attorneys, and I'm saying, "I don't understand why this

13:26:45  22   judge ruled against me.  Federal law says it's exempt.

13:26:50  23   And he ruled against me."  And the most -- every attorney

13:26:54  24   I talked to said, "That's wrong."  So then I was trying to

13:26:58  25   retain an attorney.  I had to pay money out of my pocket

| | | |
|---|---|---|
| 13:27:02 | 1 | to protect my social security benefits.  So I was looking |
| 13:27:06 | 2 | for an attorney.  And I contacted more than one. |
| 13:27:09 | 3 | Q.   And you're correct in that I did not mean to |
| 13:27:12 | 4 | imply that you waited that long.  What I -- what I meant |
| 13:27:14 | 5 | to say and ask was, you agree that within two weeks, a |
| 13:27:18 | 6 | motion for reconsideration of that ruling was filed? |
| 13:27:22 | 7 | A.   My attorney filed it whatever date he filed it. |
| 13:27:26 | 8 | I don't know if it's the 25th or whatever day it was, but |
| 13:27:29 | 9 | he filed it. |
| 13:27:29 | 10 | Q.   Okay.  And the Complaint says July 23rd.  As you |
| 13:27:32 | 11 | sit here today, do you have any reason to dispute that |
| 13:27:34 | 12 | that's accurate? |
| 13:27:35 | 13 | A.   I have no other document that tells me otherwise. |
| 13:27:39 | 14 | Q.   Okay.  So if you'll flip to the next page, very |
| 13:27:43 | 15 | top of page 5 -- and this is paragraph 29 -- states, "On |
| 13:27:49 | 16 | January 11, 2022, the Pinal County Superior Court granted |
| 13:27:55 | 17 | Plaintiff's Motion for Reconsideration, and held that the |
| 13:27:57 | 18 | Social Security retirement benefits in Mr. Huffman's Chase |
| 13:28:01 | 19 | account were exempt, and therefore not subject to |
| 13:28:03 | 20 | garnishment, pursuant to 42 U.S.C. Section 407(a)." |
| 13:28:08 | 21 | My -- my question -- well, my question for |
| 13:28:11 | 22 | you is, the motion for reconsideration was filed July 23rd |
| 13:28:17 | 23 | of 2021.  There's not a ruling until January of 2022. |
| 13:28:23 | 24 | During that period of time --  I -- I suspect that your |
| 13:28:27 | 25 | position is, during that period of time, you had the loss |

| | | |
|---|---|---|
| 13:29:53 | 1 | set more quickly? |
| 13:29:54 | 2 | A.   I do know that, and he did try.  But I don't know |
| 13:30:01 | 3 | what the efforts were, if he called the clerk's office or |
| 13:30:04 | 4 | he filed a request to have an expedited hearing.  I don't |
| 13:30:10 | 5 | know what specifically he did.  Because --  But he did |
| 13:30:16 | 6 | something because he told me he did, unless that was |
| 13:30:19 | 7 | inaccurate.  I don't know.  That's just what he told me, |
| 13:30:21 | 8 | that he was trying to get a hearing. |
| 13:30:23 | 9 | Q.   That's absolutely fair.  Okay. |
| 13:30:25 | 10 | And this next question is again yes or no. |
| 13:30:28 | 11 | Do you know, as you sit here today, if during that time |
| 13:30:32 | 12 | period Goodman Law did anything to try and prevent the |
| 13:30:36 | 13 | court from setting a hearing as soon as it would -- would |
| 13:30:39 | 14 | set a hearing? |
| 13:30:41 | 15 | A.   I -- I do not know what Goodman Law did or did |
| 13:30:44 | 16 | not do in terms of expediting the hearing. |
| 13:30:47 | 17 | Q.   Okay.  Or -- or conversely, delaying the hearing? |
| 13:30:52 | 18 | A.   I don't know. |
| 13:30:54 | 19 | Q.   Okay.  Here at paragraph 36, which is the very |
| 13:31:09 | 20 | bottom of page 5, you allege "Defendants' actions were |
| 13:31:15 | 21 | intentional, malicious, and reckless; and resulted in the |
| 13:31:17 | 22 | foreseeable consequence of the conversion of $60,597.25 of |
| 13:31:22 | 23 | Mr. Huffman's Social Security retirement benefits from |
| 13:31:27 | 24 | May 26, 2021, until March 21st of 2022." |
| 13:31:31 | 25 | And you would agree with me that during the |

| | | |
|---|---|---|
| 13:33:07 | 1 | A.   6, you said? |
| 13:33:09 | 2 | Q.   6. |
| 13:33:10 | 3 | A.   Okay. |
| 13:33:10 | 4 | Q.   And this is talking about Count One:  Violations |
| 13:33:14 | 5 | of the Fair Debt Collection Practices Act.  And |
| 13:33:23 | 6 | paragraph 39 reads, "Defendants' violations of the FDCPA |
| 13:33:26 | 7 | include, but are not limited to, the following:  a. |
| 13:33:29 | 8 | Defendants Goodman Law and Magic Ranch violated |
| 13:33:33 | 9 | Section 1692c of the FDCPA when they communicated about |
| 13:33:37 | 10 | the collection of a debt with then-third-party Chase Bank |
| 13:33:40 | 11 | without obtaining prior permission from Plaintiff or a |
| 13:33:43 | 12 | court of competent jurisdiction." |
| 13:33:45 | 13 |           And my question for you is, when you make |
| 13:33:48 | 14 | that allegation, is the communication that you're |
| 13:33:51 | 15 | referring to serving the writ of garnishment? |
| 13:33:54 | 16 | A.   My attorney filed this, though, and -- and cited |
| 13:34:08 | 17 | the various provisions of that.  And I didn't --  I mean, |
| 13:34:18 | 18 | there's nothing that I did.  They used their expertise to |
| 13:34:27 | 19 | file when they filed that, their knowledge of the law. |
| 13:34:29 | 20 | Q.   I understand that. |
| 13:34:33 | 21 | A.   Okay. |
| 13:34:33 | 22 | Q.   My question is from a factual basis, your |
| 13:34:36 | 23 | personal knowledge, are you aware of any communication |
| 13:34:39 | 24 | that Goodman Law -- Goodman Law had with Chase Bank other |
| 13:34:43 | 25 | than filing that writ of garnishment? |

13:34:44   1      A.   I have no idea.

13:34:45   2      Q.   Okay.  When you practiced and did debt collection

13:35:05   3   work, would you obtain permission from a judgment debtor

13:35:12   4   before you contacted their bank or their employer to serve

13:35:15   5   a writ of garnishment?

13:35:16   6      A.   You know, typically, I knew where they worked,

13:35:27   7   the -- you know, the creditor, when they came to me, said

13:35:30   8   that "We've got this application that shows where they

13:35:35   9   work," or "We know where they work."  And so with that

13:35:39   10  information, that's the basis that I used to file the

13:35:44   11  garnishment.

13:35:44   12     Q.   Sure.  And you didn't ask permission from the --

13:35:50   13  the judgment creditor before you did that -- sorry,

13:35:54   14  judgment debtor before you did that, correct?

13:35:56   15     A.   I usually didn't communicate with the judgment

13:35:58   16  debtor unless they contacted our office and said, "Hey, I

13:36:06   17  want to make a payment plan."  That's typically what

13:36:10   18  happened.  It wasn't --  You know, I may have sent a

13:36:14   19  demand letter or something like that, but that -- my

13:36:18   20  communication with the judgment debtor was very limited --

           21     Q.   So you --

13:36:22   22     A.   -- if at all.

13:36:23   23     Q.   So you -- you wouldn't, for example, contact the

13:36:28   24  judgment debtor and say, "Hey, is it okay if I serve this

13:36:32   25  writ of garnishment on your employer?"

| | | |
|---|---|---|
| 13:36:39 | 1 | A.    Typically, no. |
| 13:36:40 | 2 | Q.    Okay.  Subsection b of paragraph 39 states, |
| 13:36:42 | 3 | "Defendants violated Section 1692d of the FDCPA when the |
| 13:36:48 | 4 | Defendants engaged in conduct the natural consequence of |
| 13:36:50 | 5 | which was to harass, oppress, or abuse Plaintiff in |
| 13:36:54 | 6 | connection with the collection of a debt." |
| 13:36:56 | 7 | And I would like to know, again just from |
| 13:36:59 | 8 | you, what you believe the conduct was which was harassing, |
| 13:37:03 | 9 | oppressive, or abusive. |
| 13:37:05 | 10 | A.    Well, they -- they knew that it was social |
| 13:37:10 | 11 | security benefits and it was exempt.  You're not -- you're |
| 13:37:13 | 12 | not allowed to levy or garnish social security benefits. |
| 13:37:19 | 13 | So the only natural conclusion you can come to is that |
| 13:37:25 | 14 | they were doing this to cause me harm, to harass me, |
| 13:37:29 | 15 | and -- and abuse their position as attorneys so they |
| 13:37:36 | 16 | could, you know, cause me damages, cause me grief.  And |
| 13:37:41 | 17 | there's, you know, many examples of that in that |
| 13:37:44 | 18 | underlying case, you know, about filing the false |
| 13:37:46 | 19 | affidavit for attorneys' fees and lying to the court. |
| 13:37:50 | 20 | And, I mean, there's --  It's not going to look good. |
| 13:37:56 | 21 | Q.    And -- and we're only here talking about the -- |
| 13:37:57 | 22 | the garnishment action.  So you stated that they did it as |
| 13:38:03 | 23 | attorneys.  Would you not consider yourself an attorney, |
| 13:38:10 | 24 | even if you're not practicing?  You wouldn't consider |
| 13:38:12 | 25 | yourself to be an attorney? |

13:38:13   1      A.   I was so fed up with the legal system and how --

13:38:20   2   how much injustice there is that I don't want to associate

13:38:22   3   with the legal system.  I quit the practice of law in 1995

13:38:26   4   because I was fed up with it.  And I never ever

13:38:32   5   contemplated practicing law again.  I think it's a

13:38:38   6   despicable profession.  I think it's so screwed up.

13:38:42   7   Politicians, the judges, and attorneys have screwed it up

13:38:45   8   so bad that it's beyond repair.

13:38:48   9      Q.   When were you suspended from the practice of law

13:38:50  10   in Oregon?

13:38:51  11      A.   When?

13:38:55  12      Q.   Uh-huh.

13:38:55  13      A.   2000 -- something.  2001 maybe.  2000.  I don't

13:39:00  14   remember.  It was for two years.

13:39:01  15      Q.   You stopped practicing in 1995 and you were

13:39:08  16   suspended?

13:39:08  17      A.   Before -- yeah, before the -- before that -- the

13:39:10  18   bar -- the bar came after me for filing an affidavit.  I

13:39:15  19   thought --  I'm not a tax guy.  But I thought you keep

13:39:19  20   your personal assets separate from your business assets.

13:39:22  21   And I was having a downturn in my business, so I filed an

13:39:28  22   affidavit for an exemption for filing fees.  And they

13:39:41  23   said --  They sent me another form saying what is your

13:39:46  24   assets, basically?  They wanted personal assets.  So when

13:39:49  25   I found that out, I withdrew my application to waive the

13:39:55    1   filing fees, because I thought that business assets are --

13:40:00    2   are different from your personal assets.  That's what I've

13:40:02    3   always been told.  So I screwed up.  And I was suspended

13:40:07    4   for two years even though I had quit practice six years

13:40:11    5   before that.  And I had no intention of ever practicing

13:40:18    6   again.

13:40:19    7        Q.   Okay.  Section c, paragraph 39 of your Complaint,

13:40:32    8   states, "Defendants violated Section 1692e of the FDCPA

13:40:36    9   when Defendants used false, deceptive, and/or misleading

13:40:39   10   representations or means in connection with the collection

13:40:41   11   of a debt."

13:40:42   12             And again, I just want to make sure I know

13:40:45   13   factually from you what were the false, deceptive, and/or

13:40:48   14   misleading representations made by Goodman Law?

13:40:51   15        A.   Well, I don't know what the attorneys are

13:40:53   16   referring to there, but in my mind, it is the filing the

13:41:02   17   garnishment knowing that it was social security benefits.

13:41:06   18   And then when they --  When there was no question that it

13:41:08   19   was solely social security benefits, they didn't release

13:41:14   20   the garnishment; they continued with it.

13:41:16   21        Q.   And you would agree with me, sir, that during the

13:41:20   22   entirety of the underlying garnishment matter, Goodman Law

13:41:25   23   never said these aren't social security funds.  They

13:41:31   24   agree -- they told the court, "Yes, we agree, these funds

13:41:34   25   that we have garnished are social security funds"?

| | | |
|---|---|---|
| 13:41:38 | 1 | A.   Yeah.   That makes it even worse in my mind. |
| 13:41:46 | 2 | Q.   I'm going to read subparagraph d of paragraph 39 |
| 13:41:50 | 3 | of your Complaint now, which provides, "Defendants |
| 13:41:52 | 4 | violated Section 1692f of the FDCPA when Defendants used |
| 13:41:57 | 5 | unfair or unconscionable means to collect or attempt to |
| 13:42:01 | 6 | collect a debt." |
| 13:42:02 | 7 | Again, from you, sir, what were the unfair |
| 13:42:04 | 8 | or unconscionable means used by Goodman Law? |
| 13:42:08 | 9 | A.   Well, I don't know -- again, I don't know what |
| 13:42:09 | 10 | the attorneys were getting at there.   But in my mind, it's |
| 13:42:13 | 11 | continuing a garnishment against a social security account |
| 13:42:19 | 12 | when they know that it's exempt by federal law.   And to |
| 13:42:25 | 13 | that --   To me, that is unconscionable.   It's outrageous. |
| 13:42:30 | 14 | Q.   And when you say "continuing," I assume that you |
| 13:42:33 | 15 | mean after the court upheld that writ of garnishment. |
| 13:42:37 | 16 | A.   No.   I'm saying the git-go, from when I filed the |
| 13:42:41 | 17 | exemption showing -- stating that those were solely social |
| 13:42:46 | 18 | security funds, which would have been -- whenever I did |
| 13:42:48 | 19 | that, before the hearing, all they had to do was open a |
| 13:42:53 | 20 | book if they didn't know and see that social security |
| 13:42:57 | 21 | benefits are not subject to garnishment. |
| 13:43:01 | 22 | Q.   Okay. |
| 13:43:02 | 23 | A.   And that's un- -- outrageous, unconscionable. |
| 13:43:07 | 24 | Q.   Sorry.   I'm not trying to step on you, I promise. |
| 13:43:11 | 25 | I'm trying to get the time frame narrowed |

13:43:14    1   down here.  So if the garnishment was served on May 26th

13:43:17    2   of 2021 and the hearing was held on July 12th of 2021,

13:43:22    3   that's the period in which you're talking about they

13:43:24    4   should have -- Goodman Law should have just voluntarily

13:43:28    5   quashed the writ?

13:43:30    6        A.   When they knew from -- from my exemption request

13:43:35    7   and -- yeah, and then they -- I'm sure they talked with

13:43:39    8   Chase before they called them as a witness and said, "Are

13:43:43    9   these social security funds?"  So they knew then.  They

13:43:50   10   should -- they shouldn't have garnished it.  They screwed

13:43:53   11   up.  And they did it intentionally.

13:43:55   12        Q.   And you would agree with me that following that

13:43:58   13   initial garnishment hearing, the -- the court had ordered

13:44:01   14   that it was an appropriate garnishment, correct?

13:44:05   15        A.   The court ordered that -- they denied or they --

13:44:13   16   I lost.

13:44:13   17        Q.   Okay.

           18        A.   And . . .

13:44:18   19        Q.   We're almost done.

13:44:19   20        A.   Okay.

13:44:19   21        Q.   Next subparagraph here, subparagraph e of

13:44:23   22   paragraph 39 of your Complaint, "Defendants Goodman Law

13:44:25   23   and Magic Ranch violated Section 1692j of the FDCPA when

13:44:29   24   Defendants designed, compiled, and/or furnished a

13:44:32   25   misleading Writ of Garnishment to Defendant Chase Bank."

13:44:36   1              What was misleading about the garnishment

13:44:38   2    writ?

13:44:39   3        A.    That it was social security funds and they -- and

13:44:48   4    it wasn't subject to garnishment.

13:44:50   5        Q.    Okay.  I'm going to have --  Now we're going to

13:44:56   6    talk about the other -- other damages that you're alleging

13:44:58   7    in this case.  You go to the next page, page 7.

13:45:04   8    Paragraph 40 alleges "Plaintiff suffered severe emotional

13:45:10   9    distress, including suffering, anguish, fright,

13:45:12  10    nervousness, grief, anxiety, worry, shock, humiliation,

13:45:17  11    and shame."

13:45:18  12              And you're alleging these damages were

13:45:20  13    caused by Goodman Law, correct?

13:45:22  14        A.    Correct.

13:45:22  15        Q.    Earlier you were asked whether -- I believe you

13:45:27  16    were asked whether you have been diagnosed with an

13:45:32  17    emotional distress-type condition from the VA.  I think

13:45:35  18    you indicated that you had.  And if I misheard you, I'm

13:45:39  19    wrong.  But I'm --  This is why I'm asking this question.

13:45:42  20    Have you been diagnosed by any medical provider with a

13:45:45  21    medical condition that you relate to this severe emotional

13:45:50  22    distress that you -- you are asserting?

13:45:53  23        A.    I discussed with the VA because they ask you

13:45:59  24    "How's life going?  What's --  You know, is anything

13:46:03  25    bothering you?"  And if -- if I discussed it with them

| | | |
|---|---|---|
| 13:48:38 | 1 | A.   They asked somebody.  Yeah, I think it comes from |
| 13:48:40 | 2 | the clerk's office. |
| 13:48:40 | 3 | MR. MILLS:  That's all I have.  Thanks. |
| 13:48:44 | 4 | MS. GORTON:  I don't have any follow-up. |
| 13:48:49 | 5 | THE VIDEOGRAPHER:  Okay.  We are off the |
| 13:48:51 | 6 | record.  Time on the video monitor is 1:48.  This ends |
| 13:48:58 | 7 | Volume 1, Media Number 3, of the deposition of Bruce E. |
| 13:49:03 | 8 | Huffman. |
| | 9 | (The deposition was concluded at 1:48 p.m.) |
| | 10 | |
| | 11 | |
| | 12 | (Signature Not Requested) |
| | 13 | _____ |
| | 14 | |
| | 15 | BRUCE EVERETT HUFFMAN |
| | 16 | |
| | 17 | |
| | 18 | |
| | 19 | |
| | 20 | |
| | 21 | |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |

```
 1   STATE OF ARIZONA     )

 2   COUNTY OF MARICOPA   )

 3              BE IT KNOWN the foregoing deposition was

 4   taken by me pursuant to stipulation of counsel; that I was

 5   then and there a Certified Reporter of the State of

 6   Arizona, and by virtue thereof authorized to administer an

 7   oath; that the witness before testifying was duly affirmed

 8   by me to testify to the whole truth; signature by the

 9   deponent was not requested; that the questions propounded

10   by counsel and the answers of the witness thereto were

11   taken down by me in shorthand and thereafter transcribed

12   into typewriting under my direction; that the foregoing

13   pages are a full, true, and accurate transcript of all

14   proceedings and testimony had and adduced upon the taking

15   of said deposition, all to the best of my skill and

16   ability.

17        I FURTHER CERTIFY that I am in no way related to

18   nor employed by any parties hereto nor am I in any way

19   interested in the outcome hereof.

20        DATED at Phoenix, Arizona, this 9th day of

21   November, 2023.

22

23   _____
                                  Meri Coash, RMR, CRR
24                                Certified Reporter #50327

25
```