**GREENBERG TRAURIG, LLP**
ATTORNEYS AT LAW
SUITE 800
2375 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016
(602) 445-8000

Nicole M. Goodwin, SBN 024593; goodwinn@gtlaw.com
Adrianna Griego Gorton, SBN 031836, gortona@gtlaw.com
*Attorneys for Defendant JPMorgan Chase Bank, N.A.*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bruce E. Huffman,<br><br>  Plaintiff,<br><br>v.<br><br>JPMorgan Chase Bank, N.A.; Goodman Holmgren Law Group, LLP; and Magic Ranch Estates Homeowners' Association,<br><br>  Defendants. | Case No. 2:22-cv-00903-JJT<br><br>**DEFENDANT JPMORGAN CHASE BANK, N.A.'S STATEMENT OF FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**<br><br>(Assigned to the Hon. John J. Tuchi) |

Defendant JPMorgan Chase Bank, N.A. ("Chase" or "Defendant"), through undersigned counsel, hereby submits its Statement of Facts in Support of its Motion for Summary Judgment.

## **STATEMENT OF FACTS**

1. On or around December 2018, Plaintiff was informed that he was entitled to monthly retirement benefits in the amount of $2,224.00 beginning in November 2018 with payments of $2,286.00 thereafter. *See* Social Security Administration Notice of Award to Bruce Huffman dated December 9, 2018 and Chase Statements December 19, 2018 through July 16, 2019, attached as **Exhibit 1**.

2. Around the same time, Plaintiff opened a Chase Premier Plus Checking Account (the "Account"). *See* December 19, 2018 Signature Card, attached hereto as **Exhibit 2**.

3. In opening the Account, Plaintiff "acknowledge[d] receipt of the Bank's Deposit Account Agreement . . . which includes all provisions that apply to this deposit account . . . and agree to be bound by the terms and conditions contained therein as amended from time to time." *Id.* at CHASE000097.

4. Thereafter, Plaintiff received monthly direct deposits of his social security benefits into the Account. *See* Exh. 1; Chase Statements March 17, 2020 through January 19, 2021, attached as **Exhibit 3**; 2021 Chase Statements, attached hereto as **Exhibit 4**; 2022 Chase Statements, attached hereto as **Exhibit 5**.

5. As alleged by Plaintiff, "[o]n or about May 26, 2021, Defendant Goodman Law served a Writ of Garnishment in the amount of $60,597.25 upon Defendant Chase Bank" related to litigation between Plaintiff and Magic Ranch Estates Homeowners Association (the "Underlying Matter"). *See* Complaint (Doc. 1), ¶ 18; Application for Writ of Garnishment, Case No. S1100CV201501738, May 25, 2021, attached as **Exhibit 6**; Writ of Garnishment and Summons, Case No. S1100CV201501738, May 25, 2021, attached as **Exhibit 7**.

6. Plaintiff alleges that he "informed Defendant Magic Ranch that the funds in Mr. Huffman's Chase account only contained his Social Security retirement benefits[.]" *See* Complaint (Doc. 1), ¶ 19. Plaintiff also alleges that Defendant Goodman Law should have known that the funds in his Chase account were exempt. *Id.* at ¶ 21.

7. Plaintiff admits that after the Pinal County Superior Court held a Garnishment Hearing on July 12, 2021, it, once again, issued the Writ. *Id.* at ¶¶ 22-25.

8. Indeed, on July 13, 2021, the court in the Underlying Matter reaffirmed the Writ of Garnishment as originally issued. *See* Minute Entry re Garnishment Hearing, Case No. S1100CV201501738, July 13, 2021, attached as **Exhibit 8**.

9. On July 23, 2021, Plaintiff filed a Motion for Reconsideration. *See* Motion for Reconsideration, Case No. S1100CV201501738, July 23, 2021, attached as **Exhibit 9**. In his Motion for Reconsideration, Plaintiff requested reconsideration of the court's July 13, 2021 Minute Entry arguing that because the Account consisted of social security

benefits, the funds were exempt from garnishment. *Id.*

10. Thereafter, on August 16, 2021, Plaintiff filed his Reply in support of his Motion for Reconsideration. *See* Reply to Response to Motion for Reconsideration, Case No. S1100CV201501738, August 1, 2021, attached as **Exhibit 10**.

11. In his Reply, Plaintiff admitted that Chase had "NO authority to determine what is and what is not exempt – it is only charged with determining the amount that is 'protected' under the bank regulation, 31 CFR § 212.4." *Id.*, at HUFFMAN-000190.

12. Plaintiff further requested that the court "enter an order declaring that all the funds held in Mr. Huffman's Chase Bank account at the time of the service of the writ of garnishment are exempt, that they are not attachable by Plaintiff's writ of garnishment, and the garnishment be quashed." *Id.,* at HUFFMAN-000196.

13. After briefing and an evidentiary hearing, on January 11, 2022, the court issued its Under Advisement Ruling on Plaintiff's Motion for Reconsideration ("Ruling"). *See* Under Advisement Ruling Granting Plaintiff's Motion for Reconsideration, Case No. S1100CV201501738, January 12, 2022, attached as **Exhibit 11**.

14. The court's Ruling granted Plaintiff's Motion for Reconsideration and held that "the Social Security benefits held in Huffman's Chase bank account were exempt, and therefore are not subject to garnishment." *Id.* However, the Ruling did not release Chase as a garnishee, did not quash the Writ of Garnishment, nor did it order Chase to perform any action. *Id.*

15. Although the Court ruled that the Social Security retirement benefits in the Account were exempt from garnishment, the Court did not release Chase from the Writ of Garnishment. Chase was not released as a Garnishee until January 27, 2022 – more than two weeks after the Court's Under Advisement Ruling. *See* Order Quashing Writ of Garnishment and Releasing Garnishee from Further Obligation, Case No. S1100CV201501738, January 27, 2022, attached as **Exhibit 12**.

16. On or around February 14, 2022, Chase's Court Order And Levies

("COAL") received the Order Quashing the Writ and the Under Advisement ruling, and it released the hold just two short weeks after on February 28, 2022. *See* Email from O. Aziz to C. Whitfield, et al. re OCC Executive Office Complaint Results, March 25, 2022, attached as **Exhibit 13**.

17. Thereafter, Chase attempted to contact Plaintiff and inform him that the hold had been lifted but was unable to do so. *Id.*

18. Chase then sent Mr. Huffman a letter on March 2, 2022 informing him that the hold had been released on February 28, 2022. *See* Letter to B. Huffman from Chase, March 2, 2022, attached as **Exhibit 14**; Checking Account Summary, attached as **Exhibit 15** at CHASE000382.

19. However, because Plaintiff would only accept the funds in cash (which needed to be ordered), Plaintiff did not receive his funds until March 26, 2022. *See* Exh. 14.

20. Plaintiff and Chase's relationship is governed by a contractual agreement: the Deposit Account Agreement ("DAA") to which Plaintiff agreed when opening his Chase banking account. *See* Exh. 2; *see also* Deposit Account Agreement, effective November 11, 2018, attached hereto as **Exhibit 16**; *see also* Bruce Huffman Deposition taken October 27, 2023 ("Huffman Depo."), 20:23-22:3, attached hereto as **Exhibit 17**.

21. The DAA states the following regarding garnishments:

> If we receive any legal process relating to you or your account, you authorize us to comply with it. "Legal process" means any document that appears to have the force of law that requires us to hold or pay out funds from your account, including a ***garnishment***, attachment, execution, levy or similar order. ***We do not have to determine whether the legal process was validly issued or enforceable.*** If a hold is in effect, we will continue to charge any applicable fees even though the account cannot be closed. We also may remove your Overdraft Protection if a hold is placed, but you may ask us to relink your accounts after the hold is removed. As permitted by law, we will deduct from your balance a Legal Processing Fee or costs and expenses we incur in complying with the order, or both.

> If any action, including administrative proceedings, garnishment, tax levies, restraining orders or another action is brought against you or your account, you will be liable to us for any loss, cost or expense (including attorneys' fees) resulting from our compliance with any legal process.
>
> If we receive any subpoena, court order or request for information or documents from a government entity or arbitration panel relating to your account, we are authorized to comply with it. If we are required to answer a subpoena or similar order requesting records of your account, we may charge you a Research Fee, less any amount we are paid by the person issuing the subpoena before we deliver our response.

See Exh. 16 at CHASE000400.

22. The DAA grants Chase the following rights related to this matter:

> There are many reasons we may decline or prevent transactions to or from your account, but we generally do it to protect you or us, or to comply with legal requirements. We may decline or prevent any or all transactions to or from your account. We may refuse, freeze, reverse or delay any specific withdrawal, payment or transfer of funds to or from your account, or we may remove funds from your account to hold them pending investigation, including in one or more of the following circumstances:
>
> • Your account is involved in any legal or administrative proceeding;
>
> * * *
>
> • We reasonably believe that doing so is necessary to avoid a loss or reduce risk to us.
>
> * * *
>
> We also may limit cash deposits to, or withdrawals from, your account (or all of your accounts collectively) in a single transaction or total withdrawals or deposits during any period of time, or who may make deposits, in order to reduce risk and/or enhance our efforts to comply with applicable law.
>
> We will have no liability for any action we take under this section.

See Id. at CHASE000399.

23. When asked to identify the factual and legal basis for the allegation that Chase had reaped benefits from the alleged use of Plaintiff's funds, Plaintiff simply responded that "[b]anks typically invest/re-lend depositor funds." *See* Plaintiff's

5

Response to Defendant JPMorgan Chase Bank, N.A.'s First Set of Interrogatories to Plaintiff, October 13, 2023, attached as **Exhibit 18**.

24. When asked for a calculation of damages, Plaintiff responded as follows:

> Pursuant to the Court's March 29, 2023 Order (Doc. 45), Plaintiff seeks damages for the loss of use of his $60,597.20 from January 11, 2022, the date the Pinal County Superior Court issued an order ruling that those funds were exempt from garnishment, until March 21, 2022, the date Chase finally released those funds to Plaintiff. Plaintiff also seeks compensation for the mental stress and anguish he suffered as a result of Defendants' conduct. Plaintiff also seeks compensation for attorneys' fees and costs incurred in the Pinal County action in an effort to free his funds.

*Id.*, at 5-6.

25. As indicated by Plaintiff, he is seeking three categories of damages: (1) damages for the loss of use of his funds from January 11, 2022 to March 21, 2022; (2) compensation for the mental stress and anguish he allegedly suffered; and (3) compensation for attorneys' fees and costs incurred in the Pinal County action in an effort to free his funds. *Id.*

26. In his deposition, Plaintiff testified that his Chase account was opened solely to direct deposit his Social Security benefits. *See* Exh. 17, Huffman Depo. at 18:15-25, 39:3-6.

27. Plaintiff further testified that he did not use the funds for living expenses, did not use the funds for investment purposes, and did not withdraw funds until his account was frozen due to the writ of garnishment. *Id.* at 40:11-41:15.

28. Indeed, Plaintiff's bank statements show that every month, there was a direct deposit of social security benefits, there were no other debits or credits to the account, and Plaintiff did not make any withdrawals until after the account was frozen. *See* Exhs. 4-5.

29. When asked specifically about loss of use of the funds, Plaintiff speculated that he may have used the funds to purchase a car, invest in the stock market, or purchase real estate investment properties. *See* Exh. 17, Huffman Depo., at 104:6 – 113:8.

30. When pressed, Plaintiff admitted that he had not been denied any car loans, did not purchase any stock with the funds when he had use of the funds, and had not previously purchased any real estate investment properties with the funds (or any other funds) in the last 20 years. *Id.* at 104:6 – 113:8.

31. Plaintiff was unable to describe any alleged damages stemming from the alleged use of funds. *Id.*

32. Regarding mental stress and anguish, Plaintiff admitted that he has not been diagnosed with any medical condition, including any related to his mental health, that was caused by any alleged conduct by Chase. *Id.* at 113:9 – 116:18.

33. Plaintiff has not (1) disclosed the amount of attorneys' fees he allegedly incurred or (2) provided any documentation relating to the alleged attorneys' fees. *Id.*, at 116:19 – 120:10.

34. The DAA, which governs the relationship between Plaintiff and Chase, states in clear and unequivocal terms (and **BOLD** and **CAPITAL** letters) that Chase "**WILL NOT BE LIABLE FOR INDIRECT, SPECIAL, OR CONSEQUENTIAL DAMAGES REGARDLESS OF THE FORM OF ACTION AND EVEN IF WE [CHASE] HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.**" *See* Exh. 16, DAA at CHASE000400 (emphasis in original).

DATED this 26th day of January 2024.

                GREENBERG TRAURIG, LLP

                By: */s/ Adrianna Griego Gorton*
                    Nicole M. Goodwin
                    Adrianna Griego Gorton
                    *Attorneys for Defendant JPMorgan Chase Bank, N.A.*

**CERTIFICATE OF SERVICE**

☒  I hereby certify that on January 26, 2024, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Robert T Mills
Sean A Woods
MILLS +WOODS LAW PLLC
5055 North 12th Street, Suite 101
Phoenix, Arizona, 85014
Telephone (480) 999-4556
docket@millsandwoods.com
*Attorneys for Plaintiff*

Donald Wilson, Jr.
Jathan P. McLaughlin
BROENING OBERG WOODS & WILSON, P.C.
2800 N. Central Ave., Ste. 1600
Phoenix, Arizona 85004
*Attorneys for Defendant Goodman Holmgren Law Group, LLP*

By: */s/ Carolyn Smith*
Employee, Greenberg Traurig, LLP