Robert T. Mills (Arizona Bar #018853)
Sean A. Woods (Arizona Bar #028930)
**MILLS + WOODS LAW, PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.4556
docket@millsandwoods.com
rmills@millsandwoods.com
swoods@millsandwoods.com
*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**

**IN AND FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Bruce E. Huffman,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>JP Morgan Chase Bank, N.A.; Goodman Holmgren Law Group, LLP, and; Magic Ranch Estates Homeowners' Association,<br><br>　　　　　Defendants. | Case No.: 2:22-cv-00903-PHX-JJT<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT JPMORGAN CHASE BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT**<br><br>(Assigned to the Honorable John J. Tuchi) |

Through counsel undersigned, Plaintiff Bruce E. Huffman ("Plaintiff") hereby responds in opposition to Defendant JPMorgan Chase Bank, N.A.'s Motion for Summary Judgment ("Chase MSJ") filed by Defendant JPMorgan Chase Bank, N.A. ("Chase"). This Response is supported by the concurrently-filed Plaintiff's Response in Opposition to Defendant JPMorgan Chase Bank, N.A.'s Statement of Facts in Support of its Motion for Summary Judgment, in particular Plaintiff's Controverting Statement of Facts ("CSOF") contained therein, and the accompanying Exhibits attached thereto. It is also supported by the relevant parts of the record in this matter, and the Memorandum of Points and Authorities below.

///

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   BACKGROUND FACTS

"[Plaintiff] opened []his account with Chase [ ] for the sole purpose of receiving by direct deposit and holding [his] Social Security benefits," and for no other purpose. CSOF ¶ 1. "No moneys from any other source were ever deposited into this Chase account, save a stimulosus [sic] check of $1,400 which the Department of Treasury deposited without prior notice to [Plaintiff]." CSOF ¶ 1. Plaintiff planned to use the funds in his Chase bank account on an "[a]s needed basis" – whenever he needed to use them. CSOF ¶ 14. The Deposit Account Agreement between Plaintiff and Chase states that "electronic direct deposits . . . will be available [for withdrawal] on the day [Chase] receive[s] your deposit." CSOF ¶ 17.

On January 11, 2022, the Pinal County Superior Court, in Case No. S1100CV201501738, signed an Under Advisement Ruling granting Plaintiff's Motion to Reconsider its July 13, 2021 ruling affirming the Writ of Garnishment against his Chase bank account (the "Reconsideration Ruling"). CSOF ¶ 2. The Reconsideration Ruling held that "the Social Security benefits held in [Plaintiff's] Chase bank account were exempt, and therefore [ ] not subject to garnishment" because "the entirety of [Plaintiff's] Social Security benefits [we]re exempt from 'execution, levy, attachment, garnishment, or other legal process.'" CSOF ¶ 3. It further held that "all benefits paid to [Plaintiff] are exempt from execution, including bank garnishment" and found "there was no evidence . . . [Plaintiff] ever co-mingled his Social security income with other discretionary accounts or monies." CSOF ¶ 3. Ultimately, the Reconsideration Ruling "GRANT[ed] Plaintiff's

Motion to Reconsider th[e] [Pinal County Superior] Court's Ruling dates July 13, 2021 . . . concerning the remaining $60,597.25 held by the garnishee Chase bank." CSOF ¶ 4. A copy of the Reconsideration Ruling was emailed, mailed, and/or distributed to Chase on January 11, 2022, the same day it was signed. CSOF ¶ 5.

On January 20, 2022, as Chase still had not released his funds, Plaintiff emailed Chase employee Sara Helton a copy of the Reconsideration Ruling, stating "[h]ere's a copy of the court order dated 1-11-22." CSOF ¶ 6. On February 4, 2022, Plaintiff forwarded that same email, with the Reconsideration Ruling again attached, to Helton, this time stating "Ms. Helton, per our phone call yesterday, please call me today before 4 pm to pick up my monies from my closed account at Chase." CSOF ¶ 6. On February 7, 2022, Plaintiff forwarded the above thread of emails to Helton, again with the Reconsideration Ruling attached, and stated "Ms. Helton: you did not call me or email me on the 4th, 5th or today. I want my money today by 4pm. call me today when its ready for pickup." CSOF ¶ 7. On February 8, 2022, Plaintiff again forwarded the above email thread to Helton, once again with the Reconsideration Ruling attached, this time stating "I got a call yesterday from Phillip stating my funds are being held due to a 'levy'. The Court Order dated January 11th clearly states that my funds are NOT subject to garnishment or 'levy'. Please call me today as to when I can pick up my monies today." CSOF ¶ 8.

On February 16, 2022, as Chase was *still* withholding the funds in his account, Plaintiff once again forwarded the above email thread to Helton, again with the Reconsideration Ruling attached, and stated "I want my money today! I need a response from you by email today." CSOF ¶ 9. Later that same day, Helton emailed Plaintiff

3

"apologiz[ing] for the late response" and stating she was "no longer with the Johnson Ranch branch." CSOF ¶ 10. Plaintiff replied to her that same day, reminding her that she "[was] still an employee of Chase" and advising her to "forward this on to your superiors and the branch," as he "need[ed] a [ ] response today." CSOF ¶ 10.

On March 2, 2022, as Chase was *still* withholding his funds, Plaintiff again emailed Helton, this time with the subject line "When are you going to give me my SS money??????" and stated "Sara: What is wrong with the people at Chase???? I just told a friend of mine to close his Chase account!!!!" CSOF ¶ 11. A week later, as the funds *still* had not been released, Plaintiff again emailed Helton, now stating "Sara : Every day you keep my SS money increases my damages!!! I need a call today on when I can get my money!!!!" CSOF ¶ 12. On March 21, 2022, Chase finally released its hold on the funds in Plaintiff's account, but the funds *still* were not made available to him to withdraw until March 26, 2022. CSOF ¶ 13.

Plaintiff testified that the damages he incurred for the loss of use of the funds in his Chase bank account from January 11 to March 21, 2022 was his inability to use those funds for whatever means he wanted to use them for – such as, for example, the purchase of a car or the payment of bills. CSOF ¶ 15. He was also seriously considering investing in stocks and real estate during that time period. *See* CSOF ¶ 15. Moreover, Plaintiff has testified that he was told by Veterans Administration medical personnel that he had mental stress and anguish. *See* CSOF ¶ 16.

///

///

4

## II. LEGAL ARGUMENT

### A. Standard of Review

"Summary judgment is appropriate when the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Russell v. Flores*, No. CV-14-02474-TUC-RM (EJM), at *6 (D. Ariz. Jan. 9, 2017) (quoting Fed. R. Civ. P. 56(c)). "In evaluating a motion for summary judgment, the Court must make all inferences in the light most favorable to the non-moving party." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "If 'the evidence yields conflicting inferences [regarding material facts], summary judgment is improper, and the action must proceed to trial.'" *Williams v. Circle K Stores Inc.*, No. CV-19-01952-PHX-SMB, at *10 (D. Ariz. Sep. 25, 2020) (quoting *O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1150 (9th Cir. 2002)). "'In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence.'" *Konarski v. City of Tucson*, No. CV 11-612-TUC-LAB, at *6-7 (D. Ariz. June 4, 2018) (emphasis added) (quoting *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *see also Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990) (court may not make credibility determinations or weigh conflicting evidence).

///

///

///

///

5

**B.     Summary Judgment is Not Merited on Plaintiff's Unjust Enrichment Claim.**

### 1. The Deposit Account Agreement Does Not Preclude Plaintiff From Pursuing His Unjust Enrichment Claim.

Chase contends that Plaintiff cannot pursue a claim for unjust enrichment against it because the parties' relationship was governed by a valid and enforceable contract – i.e., the Deposit Account Agreement (the "DAA"). In so arguing, Chase relies on the statement in *Brooks v. Valley Nat'l. Bank*, 113 Ariz. 169 (1976) that "where there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application." *Id.* at 174.

Chase, however, greatly overextends *Brooks*. Contrary to Chase, "[t]he language in *Brooks*, . . . often cited by Arizona courts, is misleadingly overbroad. *The mere existence of a contract governing the dispute does not automatically invalidate an unjust enrichment alternative theory of recovery*. A theory of unjust enrichment is unavailable only to a plaintiff if that plaintiff has already received the benefit of her contractual bargain." *Adelman v. Christy*, 90 F. Supp. 2d 1034, 1045 (D. Ariz. 2000) (emphasis added) (first citing *USLife Title Co. of Arizona v. Gutkin*, 152 Ariz. 349, 355 (App. 1986); and then citing Restatement (First) of Restitution § 107 (1936)); *see also Arnold Associates, Inc. v. Misys Healthcare Systems*, 275 F. Supp. 2d 1013, 1030 (D. Ariz. 2003) (The argument "that Plaintiff cannot claim unjust enrichment in the face of an express contract . . . is without merit. . . . If the plaintiff never received the benefit of the contractual bargain, [he] may pursue a claim for restitution.").

The District of Arizona is in accord with Arizona courts. In *Uslife Title Company of Arizona v. Gutkin*, 152 Ariz. 349 (App. 1987), the Arizona Court of Appeals held that despite the existence of a contract between the parties, *where "[a plaintiff] did not obtain the benefit of its bargain [with defendant] it [i]s free to pursue a claim for unjust enrichment."* See id. at 355 (emphasis added) (first citing *Brooks*, 113 Ariz. at 174; then citing *Johnson v. American Nat'l Ins. Co.*, 126 Ariz. 219, 223 (App. 1980); and then citing Restatement of Restitution § 107, comment (1)(a) (1936)).

Plaintiff may pursue a claim for unjust enrichment against Chase because he did not receive the contractual benefits he bargained for with it. Pursuant to the parties' DAA, "electronic direct deposits . . . will be available [for withdrawal by the depositor] on the day [Chase] receive[s] [the] deposit." *See* CSOF ¶ 17. And even aside from the DAA, "[a] contract arises by implication of law from a general deposit of funds in a bank that *the bank will*, whenever properly demanded, *pay the funds* in such sums and *to such persons as the depositor shall direct and designate*. . . . A high standard of contractual responsibility has been imposed on banks in paying money chargeable against their depositors' accounts." *Schoenfelder v. Arizona Bank*, 165 Ariz. 79, 85 (1990) (emphasis added) (quoting with approval *Menerey v. Citizens First Nat'l Bank*, 513 N.E.2d 553, 554 (Ill. 1987)); *see also Davies Vincent v. Bank of Commerce*, 27 Ariz. 276, 285 (1925) ("[T]he contract the law implies every banker enters into with his depositor [is] to keep and hold the latter's funds for his use and benefit, and to pay them out on the depositor's orders . . . .")

Here, Plaintiff was denied the benefit of his contractual bargain with Chase from January 11, 2022, the day the Pinal County Superior Court ruled that the funds in Plaintiff's

7

Chase account (comprised solely of electronic direct deposits) were exempt from garnishment, *see* CSOF ¶¶ 2-4, until March 26, 2022, the day Chase finally permitted him to withdraw those funds, *see* CSOF ¶ 13. Under the DAA and by implication of law, Chase was contractually obligated to make those funds available the day he requested them, and despite Plaintiff's repeated requests, *see* CSOF ¶¶ 6-12, they did not until March 26, 2022, *see* CSOF ¶ 13. There is no question that Chase was notified of the Reconsideration Ruling (by the Pinal County Superior Court, and multiple times by Plaintiff) quite soon after it was issued. *See* CSOF ¶¶ 5-9. Therefore, because Plaintiff did not receive the benefit of his contractual bargain with Chase, he is not precluded from pursuing an unjust enrichment claim against it. *See, e.g.*, *Adelman*, 90 F. Supp. 2d at 1045; *Gutkin*, 152 Ariz. at 355.

In addition, unjust enrichment claims are also not precluded by the existence of a contract between the parties if "the unjust enrichment claim does not seek to relieve the plaintiff of the effects of an express provision in the contract." *U.S. Bank National Assoc. v. Casa Grande Regional Med. C*, No. CV 04-1707-PHX-NVW, at *9 (D. Ariz. June 16, 2006) (first citing *Trustmark Ins. Co. v. Bank One, Ariz., NA*, 202 Ariz. 535, 542-43 (App. 2002)); and then citing *Johnson*, 126 Ariz. at 223). Here, Plaintiff's unjust enrichment claim does not seek to relieve him of any express provision of the DAA. There is no express provision therein precluding Plaintiff from recovering damages for Chase wrongfully withholding his account funds. Thus, he may pursue unjust enrichment against Chase despite the existence of the DAA.

///

///

### 2. Chase Was Unjustly Enriched, and Plaintiff was Impoverished, by the Former's Wrongful Withholding of his Funds.

Chase also argues that no evidence exists that Chase was unjustly enriched or that Plaintiff was impoverished. This contention is simply not true. "A party is unjustly enriched when it 'has and retains money or benefits which in justice and equity belong to another.'" *Iow, LLC v. Breus*, 425 F. Supp. 3d 1175, 1190-91 (D. Ariz. 2019) (quoting *City of Sierra Vista v. Cochise Enters., Inc.*, 144 Ariz. 375 (App. 1984)). Here, as previously set forth above, from January 11, 2022 until March 26, 2022, Chase wrongfully retained the funds in Plaintiff's account and prevented him from accessing them – i.e., it retained money which in justice and equity (and pursuant to contract) belonged to Plaintiff. Though banks typically invest and/or re-lend depositor money, even if they did not do so with Plaintiff's money they were still enriched simply by having it (and Plaintiff was correspondingly impoverished). This is because as these were deposited funds, Chase had the right to possess them upon deposit. *York v. JPMorgan Chase Bank*, No. CV-18-04039-PHX-SPL, 2019 U.S. Dist. LEXIS 136137, at *15-16 (D. Ariz. Aug. 12, 2019) ("Generally, a bank and depositor have a debtor-creditor relationship, meaning the bank has the right to possess deposited money . . . ."). Clearly, there is sufficient evidence on the elements of Plaintiff's unjust enrichment claim to at least survive summary judgment.

### C. Summary Judgment on Plaintiff's Conversion Claim is Not Merited.

Chase also attacks Plaintiff's claim for conversion, arguing that a conversion claim cannot lie for a sum of money deposited in a bank. Chase is again wrong. "[M]oney *can* be the subject of a conversion action if the funds can be described, identified or segregated and there is an obligation to treat the funds in a specific manner." *Koss Corp. v. Am.*

9

*Express Co.*, 309 P.3d 898, 914 (Ariz. App. 2013) (emphasis added) (citing *Autoville, Inc. v. Friedman*, 510 P.2d 400, 402 (Ariz. 1973)).

Here, "[Plaintiff] opened []his account with Chase [ ] *for the sole purpose* of receiving by direct deposit and holding [his] Social Security benefits," and *for no other purpose*. CSOF ¶ 1 (emphasis added). Moreover, "[n]o moneys from any other source were ever deposited into this Chase account, save a stimulosus [sic] check of $1,400 which the Department of Treasury deposited without prior notice to [Plaintiff]." CSOF ¶ 1. Additionally, there can be no dispute that during the time period at issue Chase knew that the specific purpose of Plaintiff's account was for his Social Security deposits. *See* CSOF ¶¶ 2-9, 11-12. Therefore, this is precisely the type of conversion action involving a sum of "funds [that] can be described, identified or segregated and there is an obligation to treat [them] in a specific manner." *See Koss*, 309 P.3d at 914. Chase's contention that Plaintiff cannot pursue his conversion claim is unavailing.

### D. <u>Plaintiff Has Presented Evidence of His Damages From Chase's Wrongful Conduct, and Those Damages are Not Prohibited by the DAA.</u>

Chase also claims (incorrectly) that "Plaintiff has failed to disclose any alleged damages or viable theory of damages." Chase MSJ 9:3-5, ECF No. 77. In point of fact, evidence exists for at least two (2) viable categories of Plaintiff's damages: damages for the loss of use of the funds in his account from January 11, 2022 to March 26, 2022, and; damages for his mental stress and anguish arising from said loss of use.

With respect to the first category of damages, the measure of damages for conversion is the value of the property converted plus "other damage suffered because of the wrongful detention or deprivation . . . such as *damages for loss of use*." *Collins v. First*

*Financial Services, Inc.*, 168 Ariz. 484, 486 (App. 1991) (emphasis added).  And with respect to loss of use, "[t]he proper measure of damages for the loss or deprivation of money is *interest*."  *Patterson v. Bianco*, 167 Ariz. 249, 252 (App. 1991) (emphasis added) (first citing *Rossi v. Hammons*, 34 Ariz. 95, 104-05 (1928); then citing *King Realty, Inc. v. Grantwood Cemeteries, Inc.*, 4 Ariz. App. 76 (App. 1966); then citing C. McCormick, *McCormick on Damages* § 50 (1935); and then citing D. Dobbs, *Remedies* § 3.5 at 166 (1973)); *see also JJ Sports Productions Inc. v. Miramontes*, No. CV-10-02345-PHX-FJM, at *4 (D. Ariz. Mar. 14, 2011) ("Damages for conversion are based on the value of the property at the time of the conversion plus interest.").

Here, Plaintiff is thus entitled, at the very least, to the interest he would have received on the amount of the funds in his account from January 11 to March 26, 2022.  Chase's contention that Plaintiff has failed to present evidence for his damages for loss of use is irrelevant, because he is legally entitled at the very least to interest on the funds Chase withheld.

Chase's contention is also untrue.  The evidence shows that Plaintiff planned to use the funds in his Chase bank account on an "[a]s needed basis" – i.e., whenever he needed to use them.  CSOF ¶ 14.  Plaintiff testified that the damages he incurred for the loss of use of the funds in his Chase bank account from January 11 to March 21, 2022 was his inability to use those funds for whatever means he wanted to use them for – such as, for example, the purchase of a car or the payment of bills.  CSOF ¶ 15.  He was also seriously considering investing in stocks and real estate during that time period, *see* CSOF ¶ 15, and was unable to use those funds to do so during that time period.

With respect to the second category, damages for Plaintiff's mental stress and anguish, damages for pain and suffering are proper compensatory damages, *see Denton v. American Family Care*, 190 Ariz. 152, 155 (1997) (citing *Myers v. Rollette*, 103 Ariz. 225, 231 (1968)), and Plaintiff has testified that he was told by Veterans Administration medical personnel that he had mental stress and anguish, *see* CSOF ¶ 16.

Moreover, even if Plaintiff has failed to show actual damages for conversion (and he has not), he may still receive nominal damages. *SWC Baseline & Crismon Investors, L.L.C. v. Augusta Ranch Ltd. Partnership*, 265 P.3d 1070, 1092, ¶ 99 (Ariz. App. 2011) (citing *Koepnick v. Sears Roebuck & Co.*, 158 Ariz. 322, 331 (App. 1988)).

Finally, Chase also argues that the DAA, which explicitly precludes Chase's liability for "indirect, special, or consequential damages," forecloses Plaintiff from recovering damages. The problem with Chase's argument is that none of the viable categories of damages available to Plaintiff set forth above are "indirect, special, or consequential." They are all forms of direct damages, and Chase does not explain, let alone cite any authority for, its contention that they are "indirect, special, or consequential." The Court should disregard that contention accordingly.

### III. CONCLUSION

For all the foregoing reasons, the Court should decline to grant summary judgment to Chase on both plaintiff's unjust enrichment and conversion claims.

///

///

///

12

**RESPECTFULLY SUBMITTED** this 25th day of March 2024.

**MILLS + WOODS LAW, PLLC**

By     */s/ Sean A. Woods*
　　　Robert T. Mills
　　　Sean A. Woods
　　　5055 North 12th Street, Suite 101
　　　Phoenix, AZ 85014
　　　*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 25, 2024, I electronically transmitted the foregoing document to the Clerk's Office using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Nicole M. Goodwin
nicole.goodwin@gtlaw.com
Adrianna Griego Gorton
gortona@gtlaw.com
**GREENBERG TRAURIG, LLP**
2375 E Camelback Rd., Ste. 800
Phoenix, AZ 85016
*Attorneys for Defendant JPMorgan Chase Bank, N.A.*

Donald Wilson, Jr.
dwj@bowwlaw.com
Jathan P. McLaughlin
jpm@bowwlaw.com
**BROENING OBERT WOODS & WILSON, P.C.**
2800 N Central Ave., Ste. 1600
Phoenix, AZ 85004
*Attorneys for Defendant Goodman Holmgren Law Group, LLP*

Tomio B. Narita
tnarita@snllp.com
**SIMMONDS & NARITA, LLP**
44 Montgomery St., Ste. 3010
San Francisco, CA 94104
*Pro Hac Vice Attorneys for Defendant Goodman Holmgren Law Group, LLP*

　　　*/s/ Ben Dangerfield*

13