Robert T. Mills (Arizona Bar #018853)
Sean A. Woods (Arizona Bar #028930)
**MILLS + WOODS LAW, PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.4556
docket@millsandwoods.com
rmills@millsandwoods.com
swoods@millsandwoods.com
*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

# IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bruce E. Huffman, | Case No.: 2:22-cv-00903-PHX-JJT |
| Plaintiff, | |
| vs. | **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT GOODMAN'S MOTION FOR SUMMARY JUDGMENT** |
| JP Morgan Chase Bank, N.A.; Goodman Holmgren Law Group, LLP, and; Magic Ranch Estates Homeowners' Association, | |
| Defendants. | (Assigned to the Honorable John J. Tuchi) |

Through counsel undersigned, Plaintiff Bruce E. Huffman ("Plaintiff") hereby responds in opposition to Defendant Goodman's Motion for Summary Judgment ("Goodman's MSJ") filed by Defendant Goodman Holmgren Law Group, LLP ("Goodman"). This Response is supported by the concurrently-filed Plaintiff's Response in Opposition to Defendant Goodman Holmgren Law Group, LLP's Separate Statement of Facts in Support of Motion for Summary Judgment – which in turn contains Plaintiff's Controverting Statement of Facts (the "CSOF") – and its attached Exhibits, the relevant parts of the record in this action, and the Memorandum of Points and Authorities that follows.

///

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. RELEVANT FACTS

After obtaining a judgment for a client against Plaintiff, Ashley N. Moscarello – an attorney with Goodman – filed an Application for Writ of Garnishment ("Writ") against Garnishee and fellow Defendant JPMorgan Chase Bank, N.A. ("Chase") relating to Plaintiff's account with Chase on May 25, 2021.  CSOF ¶ 1.  "[Plaintiff] [had] opened []his account with Chase [ ] for the sole purpose of receiving by direct deposit and holding [his] Social Security benefits," and for no other purpose.  CSOF ¶ 2 (internal citations omitted) (quoting **Ex. 3** ¶ 10).  "No moneys from any other source were ever deposited into this Chase account, save a stimulosus [sic] check of $1,400 which the Department of Treasury deposited without prior notice to [Plaintiff]." *Id.* (quoting **Ex. 3** ¶ 11).

On June 4, 2021 Plaintiff filed a Request for a Hearing on the garnishment with the Pinal County Superior Court.  CSOF ¶ 3.  Therein, he objected to the garnishment on the grounds that social security benefits, which are exempt, were being garnished. *Id.*  He mailed a copy of the Request for a Hearing to Ms. Moscarello on or about June 7, 2021, *id.*, thus putting Goodman on Notice that the account they were garnishing contained exempt social security benefits.  Nevertheless, Goodman took no action to withdraw, or disclaim in any way, the Writ.  CSOF ¶ 19.

On July 7, 2021, in an email to the investigator who "found" Plaintiff's Chase account for her to execute on, Ms. Moscarello stated that "[Plaintiff] is claiming that the funds in the account are exempt Social Security, but I doubt the full amount is exempt (the Bank withheld about $4k as 'federal protected' benefits)."  CSOF ¶ 4 (quoting **Ex. 4** at 2).

The investigator responded that "[Plaintiff] isn't that old to have accumulated that much in social security, even if he just left it alone and never touched it. So yeah, that is ridiculous that all of that is protected funds." *Id.* (quoting **Ex. 4** at 1). This conversation demonstrates that Ms. Moscarello was aware at this time that Plaintiff's account contained social security benefits that were exempt from garnishment. Yet, Goodman took no action to withdraw, or disclaim in any way, the Writ. CSOF ¶ 19.

A garnishment hearing was held in Pinal County Superior Court on July 12, 2021, wherein Plaintiff represented himself. CSOF ¶ 5. During the hearing "the parties agreed and stipulated that all the moneys deposited into [Plaintiff's] Chase Bank account, and currently held in the account, were derived solely from [his] Social Security Benefits," save a stimulus check deposited therein without his prior knowledge. CSOF ¶ 6 (quoting **Ex. 3** ¶ 8). It was, and is, undisputed that those stimulus funds were exempt from garnishment. *Id.* Yet even after this hearing, Goodman took no action to withdraw, or disclaim in any way, the Writ. CSOF ¶ 19. Following the garnishment hearing, the Court granted the Writ in the amount of $60,597.25. CSOF ¶ 7.

Plaintiff subsequently retained counsel, and on July 23, 2021 filed a Motion for Reconsideration. CSOF ¶ 8. Therein, he cited and quoted 42 U.S.C. § 407(a), which clearly and explicitly prohibits any garnishment of social security benefits. *Id.* He also cited and quoted the U.S. Supreme Court decision *Philpott v. Essex County Welfare Board*, 409 U.S. 413 (1973), which clearly and explicitly affirms that "§ 407 . . . imposes a broad bar against the use of any legal process to reach all social security benefits," and the U.S.

3

Supreme Court decision *Porter v. Aetna Casualty Company*, 370 16 U.S. 159 (1962) for the same proposition.  CSOF ¶ 9.  Plaintiff's Motion also noted that:

> The funds in [his] Chase bank account were solely from his Social Security benefits. No other funds had ever been deposited in that account, except [a] stimulosus [sic] payment. Chase knew this; [Plaintiff's creditor, represented by Goodman] so stipulated; and the records bear it out.

CSOF ¶ 10 (quoting **Ex. 1** at 4:18-21).  Plaintiff attached copies of all his Chase bank account statements to show this.  CSOF ¶ 11.

Plaintiff's Motion also sharply criticized Ms. Moscarello's reliance on "78 Federal Register 32099 [codified at 31 CFR § 212] to support [her] position."  CSOF ¶ 12 (quoting **Ex. 1** at 4:22-6:24).  The Motion noted that that regulation "does not make the remainder of the Social Security Benefits – those going back more than 60 days – non-exempt and subject to garnishment, as [Moscarello] argues."  *Id.* (quoting **Ex. 1** at 6:2-5).  Instead, noted Plaintiff's Motion, 31 CFR § 212 "only governs the banks' handling of garnishments when . . . Social Security Benefits are in the account. It did NOT amend the Social Security Act, 42 U.S.C. § 407(a), in determining what is and what is not exempt."  *Id.* (quoting **Ex. 1** at 5:13-16).

Plaintiff's Motion also cited and quoted 42 U.S.C. § 407(b), which makes clear that no other law may supersede or modify 42 U.S.C. § 407(a)'s protection of social security from garnishment unless it explicitly references § 407, and noted that the regulation relied on by Ms. Moscarello does not do that, as its only reference to § 407 is the statement "[u]nder 42 U.S.C. 407(a) . . . , Federal Old-Age, Survivors, and Disability Insurance benefits and Supplemental Security Income payments are generally exempt from

4

garnishment," a statement that actually supports Plaintiff's position. CSOF ¶ 13. Ultimately, the Motion pointed out that 31 CFR § 212:

> is only a Rule governing the procedures of immediate release of 60 days worth of benefits if the bank receives a garnishment. It does not instruct the bank to hand over the remaining Social Security benefits to the judgment creditor. And it does not declare the remaining benefits in the account non-exempt, as [Moscarello] argues.

CSOF ¶ 14 (quoting **Ex. 1** at 6:20-24).

Despite the clear authority and undisputed facts in Plaintiff's Motion for Reconsideration showing that the funds in Plaintiff's Chase account were immune from garnishment, Goodman still took no action to withdraw, or disclaim in any way, the Writ. CSOF ¶ 19. Indeed, on August 5, 2021, Goodman – through Ms. Moscarello – filed a Response in opposition to Plaintiff's Motion, in which she continued to cite 31 CFR § 212 (and various subsections), and continued to argue that the only protected social security benefits were those received during a two (2) month lookback period. CSOF ¶ 15.

On August 16, 2021, Plaintiff filed his Reply to Response to Motion for Reconsideration, wherein he again: cited 42 U.S.C. § 407(a)'s and *Philpott v. Essex County Welfare Board*'s explicit prohibition on the garnishment of social security benefits; sharply criticized Goodman's continued reliance on 31 CFR § 212 and its subsections, and; noted that "it is undisputed . . . that all the remaining funds in [Plaintiff's] account were Social Security benefits." CSOF ¶ 16 (quoting **Ex. 2** at 7:7-9). Still, Goodman took no action to withdraw, or disclaim in any way, the Writ. CSOF ¶ 19.

Then, nearly five (5) more months passed with the garnishment remaining in effect, and Plaintiff continuing to be denied access to his social security benefits. Yet, Goodman

5

still refused to withdraw, or disclaim in any way, the Writ. CSOF ¶ 19. Indeed, on January 4, 2022 Mascarello, representing Goodman, in oral argument before the Pinal County Superior Court on Plaintiff's Motion for Reconsideration, continued to assert Goodman's position that only two (2) months of Plaintiff's social security benefits were exempt from garnishment. CSOF ¶ 17.

Finally, on January 11, 2022 (seven-and-a-half months after Goodman applied for the Writ), the Court granted Plaintiff's Motion for Reconsideration, ruling that "the Social Security benefits held in [Plaintiff's] Chase bank account were exempt, and therefore [ ] not subject to garnishment" because "the entirety of [Plaintiff's] Social Security benefits [we]re exempt from 'execution, levy, attachment, garnishment, or other legal process.'" CSOF ¶ 18 (quoting Goodman SOF, Ex. 9 at 1). It further held that "all benefits paid to [Plaintiff] are exempt from execution, including bank garnishment" and found "there was no evidence . . . [Plaintiff] ever co-mingled his Social security income with other discretionary accounts or monies." CSOF ¶ 18 (quoting Goodman SOF, Ex. 9 at 2). Accordingly, on January 19, 2022, Goodman finally filed a Motion to Quash Writ of Garnishment, requesting the Court release Chase from any obligations under the Writ. CSOF ¶ 19. This constituted Goodman's first action to withdraw, or disclaim in any way, the Writ that they had instituted, *id.*, in the nearly eight (8) month period the garnishment had been in effect.

On May 25, 2022, Plaintiff filed a Complaint against Goodman for, among other claims, violating the Fair Debt Collection Practices Act ("FDCPA"). CSOF ¶ 20. He alleged Goodman violated the FDCPA by "communicat[ing] about the collection of a debt

6

with [Chase] without obtaining prior permission from Plaintiff," "engag[ing] in . . . harass[ing], oppress[ing], or abus[ive] [conduct] [ ] in connection with the collection of a debt," "us[ing] false deceptive, and/or misleading representations or means in connection with the collection of a debt," "us[ing] unfair or unconscionable means to collect or attempt to collect a debt," and "design[ing], compil[ing], and/or furnish[ing] a misleading Writ of Garnishment." CSOF ¶ 20 (quoting Compl. ¶ 39, ECF No. 1).

During discovery, Goodman produced the expert opinion of Harvey M. Moore, an attorney. CSOF ¶ 21. Mr. Moore opines that "Goodman . . . did not violate 1692c of the FDCPA by communicating with Chase [ ] when they levied upon funds held by Chase [ ] in [Plaintiff's] bank account." CSOF ¶ 22 (quoting Goodman SOF, Ex. A to Ex. 3, § VI(1), ECF No. 76-3). Mr. Moore further opines that "[a]ny and all of the alleged violations of the [FDCPA] were not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." CSOF ¶ 23 (quoting Goodman SOF, Ex. A to Ex. 3, § VI(2)).

With respect to his damages resulting from Goodman's conduct, Plaintiff asserted in his Complaint that "[b]ecause of the violations of the FDCPA described herein, [he] is entitled to recover statutory damages, economic compensatory damages, noneconomic compensatory damages, and attorneys' fees and costs, in an amount to be proven at trial." CSOF ¶ 28 (quoting Compl. ¶ 42). Prior to the garnishment, Plaintiff had planned to use the funds in his Chase bank account on an "[a]s needed basis," or whenever he needed to use them. *See* CSOF ¶ 24. Indeed, he testified that the damages he incurred for the loss of use of the funds in his Chase bank account was his inability to use those funds for whatever

7

means he wanted to use them for – such as, for example, the purchase of a car or the payment of bills. CSOF ¶ 25. He was also seriously considering investing in stocks during that time period, and also frequently considering investing in real estate. *Id.*

With regard to emotional distress, Plaintiff testified that he "suffered severe emotional distress, including suffering, anguish, fright, nervousness, grief, anxiety, worry, shock, humiliation, and shame" as a result of Goodman's conduct. CSOF ¶ 29. He also testified that he was diagnosed by Veterans Administration personnel as having mental stress and anguish. *See* CSOF ¶ 26.

## II.     LEGAL ARGUMENT

### A.     Summary Judgment Standard

"Summary judgment is appropriate when the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Russell v. Flores*, No. CV-14-02474-TUC-RM (EJM), at *6 (D. Ariz. Jan. 9, 2017) (quoting Fed. R. Civ. P. 56(c)). "In evaluating a motion for summary judgment, the Court must make all inferences in the light most favorable to the non-moving party." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "If 'the evidence yields conflicting inferences [regarding material facts], summary judgment is improper, and the action must proceed to trial.'" *Williams v. Circle K Stores Inc.*, No. CV-19-01952-PHX-SMB, at *10 (D. Ariz. Sep. 25, 2020) (quoting *O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1150 (9th Cir. 2002)). "'In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence.'"

*Konarski v. City of Tucson*, No. CV 11-612-TUC-LAB, at *6-7 (D. Ariz. June 4, 2018) (quoting *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *see also Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990) (court may not make credibility determinations or weigh conflicting evidence).

### B. Plaintiff Has Asserted, and Evidence Exists to Support, that Goodman Violated the FDCPA in Multiple Ways, Not Merely By Communicating About the Debt Without His Consent.

Goodman takes issue with only one of the multiple ways the evidence demonstrates that Goodman violated the FDCPA. Goodman argues that it did not violate the FDCPA by communicating about the debt with Chase without Plaintiff's consent, because it did so "as reasonably necessary to effectuate a post-judgment judicial remedy . . . ." Goodman's MSJ 8:11-17, ECF No. 75.

However, Goodman's liability under the FDCPA extends far beyond merely communicating about the debt with Chase. Plaintiff has also alleged Goodman violated the FDCPA by "engag[ing] in . . . harass[ing], oppress[ing], or abus[ive] [conduct] [ ] in connection with the collection of a debt," by "us[ing] false deceptive, and/or misleading representations or means in connection with the collection of a debt," by "us[ing] unfair or unconscionable means to collect or attempt to collect a debt," and by "design[ing], compil[ing], and/or furnish[ing] a misleading Writ of Garnishment." CSOF ¶ 20 (quoting Compl. ¶ 39, ECF No. 1).

Moreover, the evidence supports Plaintiff's allegations. First, Goodman furnished a Writ of Garnishment that was misleading, because all the funds it sought to garnish were exempt. *See* CSOF ¶¶ 1, 18. Second, by refusing to withdraw, or take any action to

9

disclaim, that Writ for nearly eight (8) months, during which time it received repeated, clear, legal and factual notice that the funds in Plaintiff's account were all exempt from garnishment, Goodman "engag[ed] in . . . harass[ing], oppress[ing], or abus[ive] [conduct] [ ] in connection with the collection of a debt" and "us[ed] unfair or unconscionable means to collect or attempt to collect [that] debt." *See* CSOF ¶ 20. Third, in continuing to argue, wrongly, before the Pinal County Superior Court – first during the garnishment hearing on July 12, 2021, *see* CSOF ¶¶ 5-6, then in filing its Response to Plaintiff's Motion for Reconsideration on August 5, 2021, *see* CSOF ¶ 15, and then during oral argument on Plaintiff's Motion for Reconsideration on January 4, 2022, *see* CSOF ¶ 17 – that Plaintiff's account could be garnished because only two (2) months of social security was exempt, despite the repeated, clear legal and factual notice it had received that *all* the funds in the account were exempt, it did all of the above *plus* it "us[ed] false deceptive, and/or misleading representations or means in connection with the collection of a debt." *See* CSOF ¶ 20. None of this was "reasonably necessary to effectuate a post-judgment judicial remedy."

"The FDCPA is 'broadly remedial,' and should be liberally construed in favor of consumers." *Urbina v. Nat'l Bus. Factors Inc.*, 979 F.3d 758, 763 (9th Cir. 2020) (citing *McAdory v. M.N.S. & Assocs., LLC*, 952 F.3d 1089, 1092 (9th Cir. 2020)). Moreover, "the determination whether the defendant violated the FDCPA must be resolved by the trier of fact." *United States v. ACB Sales & Service, Inc.*, 590 F. Supp. 561, 570 (D. Ariz. 1984). Accordingly, in light of all of the above, summary judgment against Plaintiff on the grounds that Goodman did not violate the FDCPA as a matter of law is not merited.

### C. The Bona Fide Error Defense Does Not Shield Goodman From Liability.

Goodman also argues that even if its conduct did violate the FDCPA, that the bona fide error defense (the "BFED") immunizes it from liability. Goodman is incorrect.

The BFED defense is codified in the FDCPA, and it states:

> a debt collector may not be held liable in any action brought under [the FDCPA] if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c). Accordingly, "to qualify for the [BFED], the defendant must prove that (1) it violated the FDCPA unintentionally; (2) the violation resulted from a bona fide error; and (3) it maintained procedures reasonably adapted to avoid the violation." *Mccollough v. Johnson, Rodenburg Lauinger*, 637 F.3d 939, 948 (9th Cir. 2011). The bona fide error defense is a "narrow" defense, for which "[Goodman] has the burden of proof . . . ." *Id.* (quoting *Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1005-06 (9th Cir. 2008)).

#### 1. Goodman's Violations Were Not Unintentional.

To qualify for the BFED, Goodman first has the burden of proof to show that it violated the FDCPA unintentionally. However, given the evidence set forth in **§ I**, *supra*, showing that Goodman continued to press ahead with its garnishment of Plaintiff's account despite repeated notice that the funds therein were all immune from garnishment by law, it defies credulity to suppose that Goodman did not intentionally violate the FDCPA.

The anti-attachment provision of the Social Security Act, codified at 42 U.S.C. § 407(a), states clearly that "none of the moneys paid or payable . . . under this subchapter

11

shall be subject to execution, levy, attachment, garnishment, or other legal process . . . ." This clear proposition of law was affirmed by the United States Supreme Court in *Philpott v. Essex County Welfare Board*, 409 U.S. 413 (1973), which clearly and explicitly affirms that "§ 407 . . . imposes a broad bar against the use of any legal process to reach all social security benefits." *Id.* at 416-17 (citing *Porter v. Aetna Casualty Co.*, 370 U.S. 159 (1962)). Goodman had notice of this clear authority as early as July 23, 2021, upon Plaintiff's filing of his Motion for Reconsideration. CSOF ¶¶ 8-9. Goodman also knew, because it had previously stipulated at the garnishment hearing on July 12, 2021, that save for one stimulus payment that was also exempt from process, the funds in Plaintiff's account were solely social security. CSOF ¶¶ 5-6, 10-11. Yet Goodman pressed ahead with, and refused to withdraw or disclaim, its garnishment until no earlier than January 19, 2022, when it finally moved to quash the Writ (and only after the Pinal County Superior Court ruled that the garnishment was unlawful). *See* CSOF ¶¶ 18-19.

Though Goodman continued to insist, in the face of 42 U.S.C. § 407(a) and clear Supreme Court precedent, that its garnishment was justified by 31 CFR § 212 and its subsections, it defies credulity to suppose that it did so in good faith. First, because Plaintiff thoroughly dismantled Goodman's reliance on that regulation in his Motion for Reconsideration and Reply in support, showing that it does not contradict or conflict with § 407(a)'s clear prohibition on the garnishment of all social security funds. *See* CSOF ¶¶ 12-14, 16. However, and much more importantly, *even if 31 CFR § 212 does contradict or conflict with § 407(a), it is of no matter because the former is merely a regulation.* As every law student knows, and as is hornbook law, "[w]here an administrative regulation

conflicts with a statute, the statute controls." E.g., *United States v. Doe*, 701 F.2d 819, 823 (9th Cir. 1983); *see also Sacks v. S.E.C*, 635 F.3d 1121, 1125 n.4 (9th Cir. 2011). Again, to suppose that Goodman did not know that it was violating the law in pressing ahead with the garnishment, in the face of clear statutory and Supreme Court precedent to the contrary, simply does not pass the smell test. Goodman cannot show prong 1 of the BFED.

### 2. Goodman's Violation Did not Result From an Error, Let a "Bona Fide" One.

Goodman also has the burden of proof to show that its violation of the FDCPA resulted from a bona fide error. First, it could not have because it simply did not result from an error at all. As set forth in detail in the previous Section, Goodman's violations were not the result of a "mistake" – they were the result of its intentional (or at least reckless) disregard of clear statutory and Supreme Court precedent showing its garnishment of Plaintiff was unlawful.

Second, even if Goodman's violations were the result of a genuine error (and they were not) it was not a bona fide error. Whether a violation resulted from a bona fide error is an objective determination. *Gray v. Suttell & Assocs.*, 123 F. Supp. 3d 1283, 1293 (E.D. Wash. 2015) (citing *Johnson v. Riddle*, 443 F.3d 723, 729 (10th Cir. 2006)). "A bona fide error is one that is 'made in good faith; a genuine mistake, as opposed to a contrived mistake.'" *Id.* at 1293-94 (quoting *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 538 (7th Cir.2005)). Once again, as set forth in detail in the previous Section, Goodman's "error" was not made in good faith. If it was a mistake at all, it was a contrived mistake. It is not credible that attorneys practicing in the area of debt collection would not

13

be aware of controlling federal statutes and controlling decisions of the United States Supreme Court. Attorneys are obligated to practice the law in a competent manner. [CITE].

Goodman offers the recent *Kaiser v. Cascade Capital, LLC*, 989 F.3d 1127 (9th Cir. 2021) opinion as support that its violations resulted from a bona fide error. But *Kaiser* merely "hold[s] that a mistake about the time-barred status of a debt under *state* law c[an] qualify as a bona fide error within the meaning of the FDCPA." *Id.* at 1137. There, the Court was "ask[ed] [ ] to decide whether the FDCPA's prohibitions regarding [ ] 'time-barred debts' apply even if it was unclear at the time a debt collector sued or threatened suit whether a lawsuit was time barred under state law." *Id.* There, the state law in question was unclear at the time, *id.* at 1131, and determining which limitations period applied required a complex interpretive analysis, *id.* at 1132. Moreover, there the Court did not rule that defendant had a valid BFED as a matter of law, but left that issue to the trial court to consider. *See id.* at 1131. In fact, the Court merely ruled that the defense was not foreclosed to the defendant – it "express[ed] no opinion on [defendant's] likelihood of success . . . ." *Id.* at 1140.

Here, in contrast, the controlling federal authority prohibiting garnishment of social security benefits was clear and unmistakable. And here, Goodman is not merely seeking to raise the BFED at trial, it is seeking summary judgment in its favor as a matter of law. Moreover, *Kaise*r simply does not stand for the proposition, as implied by Goodman, that any mistake, no matter how unjustifiable, made about a law other than the FDCPA constitutes a bona fide error that excuses a Defendant's violations of the FDCPA. Such an interpretation would invite absurd and unjust results, and would violate the well-known

14

maxim *Kaiser* itself quotes, that "ignorance of the law will not excuse any person, either civilly or criminally." *Id.* at 1138. To the contrary – *Kaiser* merely stands for the proposition that "a mistake about the time-barred status of a debt under *state* law c[an] qualify as a bona fide error within the meaning of the FDCPA." *Id.* at 1137 (emphasis added). That is not the case here. For all the above reasons, *Kaiser* does not support Goodman's entitlement to summary judgment on its BFED.

### 3. Goodman Did Not Maintain Procedures Reasonably Adapted to Avoid its Violations.

Finally, Goodman has the burden of proof to show that it maintained procedures reasonably adapted to avoid its FDCPA violations. This is an objective determination. *Gray*, 123 F. Supp. at 1293. For this prong, "the procedures that support a valid [BFED] must be '"reasonably adapted" to avoid the specific error at issue.'" *Mccollough*, 637 F.3d at 948 (quoting *Reichert*, 531 F.3d at 1006) (affirming that Defendant's BFED failed as a matter of law where, among other factors, debtor plaintiff had informed debt collector defendant that the statute of limitations precluded collection). A defendant must assert and explain how a procedure or policy is tailored to avoid the specific mistake at issue to take advantage of the [BFED]." *Gibson v. U.S. Collections W. Inc.*, No. CV-16-00166-PHX-GMS, at *4 (D. Ariz. May 8, 2017). This prong "is a fact-sensitive inquiry." *Flores v. Frost-Arnett Co.*, No. CV-21-01645-PHX-DLR, at *6 (D. Ariz. Jan. 11, 2023) (quoting *Urbina*, 979 F.3d at 764); *see also Gray*, 123 F. Supp. 3d at 1294 ("The third prong is assessed on a case-by-case basis, and the analysis depends on the facts and circumstances of the particular case."). Thus, deciding in favor of Goodman on this prong as a matter of law at the summary judgment stage is particularly inappropriate. Nevertheless, to the

15

extent the issue may be considered, Goodman has not satisfied its burden to explain how the procedures it claims to have in place are "tailored to avoid the specific mistake at issue . . . ." It fails to show how its procedures were tailored to avoid mistake (if not outright disregard) of clear, on-point federal authority prohibiting the conduct it was engaging in. In fact, such procedures are as a matter of law inadequate if they would permit ignorance and/or disregard of controlling authority in an area of law in which Defendants regularly practice. For all the above reasons, Goodman does not satisfy prong three (3) of the BFED.

### 4. Goodman's Expert May Not Testify as to His Legal Conclusions re its BFED.

Goodman offers the expert testimony of Harvey M. Moore, an attorney, to opine on the applicability of the BFED. *See* CSOF ¶¶ 21-23. This is prohibited, as "an expert witness cannot give an opinion as to h[is] legal conclusion, i.e., an opinion on an ultimate issue of law." *Sw. Fair Hous. Council v. WG Scottsdale LLC*, No. CV-19-00180-TUC-RM, at *9 (D. Ariz. Oct. 13, 2021) (quoting *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008); *see also, e.g.*, *Wichansky v. Zowine*, No. CV-13-01208-PHX-DGC, at *10 (D. Ariz. Mar. 22, 2016) ("[A]pplication of the law to the facts is the province of the jury and [is] impermissible legal expert testimony.") At any rate, as discussed above, Mr. Moore's opinions are manifestly unsupportable and should be rejected by the Court. In sum, Goodman does not have a viable BFED to its violations of the FDCPA.

### D. Summary Judgment Against Plaintiff re Damages is Not Merited.

Finally, Goodman requests partial summary judgment on the grounds that "Plaintiff has no actual damages." Goodman MSJ 12:9. Goodman is again wrong.

16

A plaintiff who is successful in a claim under the FDCPA is entitled to his actual damages, *Garo v. Global Credit Collection Corp.*, No. CV-09-2506-PHX-GMS, at *7 (D. Ariz. Jan. 26, 2011) (citing 15 U.S.C. § 1692k(a)), which are his "damages sustained as a result of [Defendant's] conduct," *Hammitt v. Ne. Collection Bureau, Inc.*, No. CV-14-00391-PHX-SPL, at *3 (D. Ariz. July 21, 2014) (citing 15 U.S.C. § 1692k(a)(1)). Plaintiff need not "prove causation of actual damages . . . ." *Garo* at *7.

Here, Goodman's improper conduct was in pressing forward with, and refusing to withdraw or disclaim in any way, the garnishment, despite repeated factual and legal notice that said garnishment was unlawful, throughout the nearly eight (8) month period from May 25, 2021, when it filed the Application for the Writ, CSOF ¶ 1, until January 19, 2022, when it finally moved to withdraw it, CSOF ¶ 19. This caused actual damages to Plaintiff in the form of loss of use of his funds during that period, *see* CSOF ¶¶ 24-25, and attorneys' fees paid for his defense in the Pinal County Superior Court action, *see* CSOF ¶ 27. It also caused him emotional distress in the form of "suffering, anguish, fright, nervousness, grief, anxiety, worry, shock, humiliation, and shame" as a result of Goodman's conduct, CSOF ¶ 29; *see also* CSOF ¶ 26 (Plaintiff testified he was diagnosed by Veterans Administration personnel as having mental stress and anguish), all of which are "actual damages" under the FDCPA, *see Perkons v. American Acceptance*, LLC, No. CV-10-8021-PCT-PGR, at *4-5 (D. Ariz. Nov. 29, 2010) (first citing *Baker v. G.C. Services Corp.*, 677 F.2d 775, 780 (9th Cir. 1982) ("The only actual damages that a plaintiff would be likely to incur [under the FDCPA] would be for emotional distress caused by abusive debt collection practices."); and then citing FTC Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed.

17

Reg. 50097, 50109 (Dec. 13, 1988) (noting that actual damages under the FDCPA include "damages for personal humiliation, embarrassment, mental anguish, or emotional distress")).

Moreover, even if Plaintiff had "no actual damages" (and he does), "[he] is still entitled to specified statutory damages." *Garo*, No. CV-09-2506-PHX-GMS, at *7 (citing *Knoll v. Allied Interstate, Inc.*, 502 F. Supp. 2d 943 (D. Minn. 2007)).

Finally, if Plaintiff is successful, he is also entitled to "the costs of th[is] action, together with a reasonable attorney's fee . . . ." *Camacho v. Bridgeport*, 523 F.3d 973, 978 (9th Cir. 2008) (citing 15 U.S.C. § 1692k(a)(3)). An award of attorneys' fees is mandatory. *Id.* (citing *Tolentino v. Friedman*, 46 F.3d 645, 651 (7th Cir. 1995)).

For all the foregoing reasons, partial summary judgment against Plaintiff on the issue of damages is wholly unsupported.

## III. CONCLUSION

For all the reasons set forth above, the Court should deny Goodman's MSJ and decline to grant summary judgment in its favor and against Plaintiff on the latter's FDCPA claims.

**RESPECTFULLY SUBMITTED** this 1st day of April 2024.

**MILLS + WOODS LAW, PLLC**

By  */s/ Sean A. Woods*
    Robert T. Mills
    Sean A. Woods
    5055 North 12th Street, Suite 101
    Phoenix, AZ 85014
    *Attorneys for Plaintiff*

18

# CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2024, I electronically transmitted the foregoing document to the Clerk's Office using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Nicole M. Goodwin
nicole.goodwin@gtlaw.com
mowent@gtlaw.com
Adrianna Griego Gorton
gortona@gtlaw.com
NEF@gtlaw.com
smithca@gtlaw.com
**GREENBERG TRAURIG, LLP**
2375 E Camelback Rd., Ste. 800
Phoenix, AZ 85016
*Attorneys for Defendant JPMorgan Chase Bank, N.A.*

Donald Wilson, Jr.
dwj@bowwlaw.com
kaj@bowwlaw.com
sls@bowwlaw.com
Jathan P. McLaughlin
jpm@bowwlaw.com
ju@bowlaw.com
**BROENING OBERT WOODS & WILSON, P.C.**
2800 N Central Ave., Ste. 1600
Phoenix, AZ 85004
*Attorneys for Defendant Goodman Holmgren Law Group, LLP*

Tomio B. Narita
Tomio.Narita@wbd-us.com
rosana.klingerman@wbd-us.com
**SIMMONDS & NARITA, LLP**
50 California St., Ste. 1500
San Francisco, CA 94111
*Attorneys for Defendant Goodman Holmgren Law Group, LLP*

         /s/ Ben Dangerfield