# EXHIBIT 1

1   Floyd W. Bybee, #012651
    **BYBEE LAW CENTER, PLC**
2   90 S. Kyrene Rd., Ste. 5
    Chandler, AZ 85226-4687
3   Office:  (480) 756-8822
    Fax: (480) 302-4186
4   floyd@bybeelaw.com

5   Attorney for Defendant

6                   **SUPERIOR COURT OF ARIZONA**

7                              **PINAL COUNTY**

8   _____

9   Magic Ranch Estates                 ) CASE NO. S1100CV201501738
    Homeowners Association, an           )
10  Arizona non-profit corporation,     )
                                         )  **MOTION FOR RECONSIDERATION**
11          Plaintiff,                   )  **OF MINUTE ENTRY RULING**
                                         )  **DETERMINING NON-EXEMPT**
12  v.                                   )  **STATUS OF DEFENDANT'S**
                                         )  **SOCIAL SECURITY BENEFITS**
13  Everett Huffman,                     )  **AND SUPPORTING MEMORANDUM**
                                         )  **OF POINTS AND AUTHORITIES**
14                                       )
                                         )
15          Defendant.                   )  (Oral Argument Requested)
                                         )
16  _____)

17                   **MOTION FOR RECONSIDERATION**

18          Pursuant to Ariz. R. Civ. P. Rule 7.1(a), Defendant moves this

19  Honorable Court for reconsideration of its ruling entered through Minute

20  Entry dated July 13, 2021 wherein it found that the Social Security

21  benefits held in Mr. Huffman's Chase bank account were non-exempt,

22  and subject to garnishment. As will be shown below, the applicable

23  statutes and case law make it clear that *all* Social Security Benefits are

24  exempt from "execution, levy, attachment, garnishment, or other legal

25  process." 42 U.S.C. § 407(a).

HUFFMAN-000181

1

2

**MEMORANDUM OF POINTS AND AUTHORITIES**

3

### I.    Proceedings.

4    On June 6, 2021, Mr. Huffman filed a Request of Judgment

5    Debtor for Hearing on Garnishment of Non-Earnings. The requested

6    hearing was held on July 12, 2021, with Mr. Huffman appearing *propria*

7    *persona*, Plaintiff appearing through counsel Ashley Moscarello, and two

8    representatives of the garnishee Chase Bank appearing telephonically.

9    (*See* Minute Entry Order dated July 13, 2021; hereinafter "Minute

10   Entry")

11   During the hearing Mr. Huffman presented a complete copy of his

12   bank account statements beginning when the account was opened

13   through June 2021. (Exhibit A, ¶ 5: Declaration of Everett Huffman)

14   The bank statements were marked as Exhibit 1, and admitted by

15   stipulation of the parties.[1] (Minute Entry)

16   During the hearing the parties further agreed and stipulated that

17   all of the moneys deposited into and currently held in Mr. Huffman's

18   bank account were derived from Mr. Huffman's Social Security

19   Benefits.[2] (Exh. A, ¶ 8) The Bank also acknowledged during the hearing

20

21       [1] Copies of the Bank Statements are attached as Exhibit 1 to

22   Declaration of Mr. Huffman, as defendant does not believe the Court
     kept a copy. (Exh. A, ¶ 7)

23

24       [2] Mr. Huffman acknowledges, as does the bank in its answer, that
     Treasury Department deposited a $1,400 stimulosus check into the

25   account with out any prior notice to him. The bank acknowledged that
     these funds are too exempt. (Exh. A, ¶ 9, 11)

- 2 -

1    that the stimulosus payment were also exempt. (Exh. A, ¶ 9) The bank

2    statements marked as Exhibit 1 bear this truth out.

3         Chase Bank had earlier Answered the garnishment writ stating

4    that it had held back $6,479 from the total balance in the account.

5    (Answer to Writ filed June 6, 2021) This amount included a statutory

6    exemption of $300, Federal Protected Benefits of $4,704, and $1,400 for

7    stimulosus exemption. The bank was therefore holding a balance of

8    $60,597.25. (*Id.*)

9         Plaintiff argued to the Court that only the prior two months bene-

10   fits were exempt, and that it was therefor entitled to garnish the remain-

11   der. (Exh. ¶¶ 12, 13) For authority Plaintiff's counsel cited to 79 Federal

12   Register 32099, which will be addressed below showing it inapplicable to

13   whether the $60,597.25 is exempt. (Exh. ¶¶ 14, 15)

14        In opposition, Mr. Huffman cited to 42 U.S.C. § 407, but inadver-

15   tently stated it as "42 U.S.C. § 207," as authority that *all* the funds in

16   his account were exempt from garnishment. (Exh. A, ¶16)

17   **II.    All Social Security Benefits Exempt from Garnishment.**

18        The Social Security Act clearly provides under 42 U.S.C. § 407(a)

19   that all Social Security Benefits are exempt from execution:

20        **(a) In general.**   The right of any person to any future pay-
          ment under this title [*42 USCS §§ 401 et seq.*] shall not be
21        transferable or assignable, at law or in equity, and ***none of
          the moneys paid*** or payable or rights existing under this
22        title [*42 USCS §§ 401 et seq.*] ***shall be subject to execution,
          levy, attachment, garnishment, or other legal process***, or
23        to the operation of any bankruptcy or insolvency law.

24   (emphasis added). Though Mr. Huffman erroneously cited to 42 U.S.C. §

25   207, rather than to 42 U.S.C. § 407(a), his argument was correct. The

- 3 -

1    exemption under the Act covers not only future payments, but also

2    those moneys already paid. There is no dispute that the moneys in Mr.

3    Huffman's Chase Bank account were Social Security Benefits already

4    paid.

5         Case law sustains this position. In 1973, the Supreme Court

6    affirmed the exemption in *Philpott v. Essex County Welfare Bd.* holding

7    that:

8         In the present case, as in *Porter*, the funds on deposit were
          readily withdrawable and retained the quality of "moneys"
9         within the purview of [42 U.S.C.] § 407. The Supreme Court
          of New Jersey referred to cases where a State which has
10        provided care and maintenance to an incompetent veteran at
          times is a "creditor" for purposes of 38 U. S. C. § 3101, and
11        at other times is not. ***But § 407 does not refer to any
          "claim of creditors"; it imposes a broad bar against the
12        use of any legal process to reach all social security
          benefits.*** That is broad enough to include all claimants,
13        including a State.

14   (emphasis added). 409 U.S. 413, 416-417, 93 S.Ct. 590, 592, 34

15   L.Ed.2d 608, 611-612 (1973), citing to *Porter v. Aetna Casualty Co.*, 370

16   U.S. 159 (1962).

17        Mr. Huffman's situation here is similar to those of the debtor in

18   *Philpott*. The funds in his Chase bank account were solely from his

19   Social Security benefits. No other funds had ever been deposited in that

20   account, except the stimulosus payment. Chase knew this; Plaintiff so

21   stipulated; and the records bear it out. (*See* Exh. 1)

22        As stated above, Plaintiff's counsel cited to 78 Federal Register

23   32099 to support its position. (*See* Exhibit B: Copy of Federal Register

24   Vol. 78, pg. 32099 - 32110; Exh. A, ¶¶ 14,15) This appears to be the

25   adoption of a Rule regulating what banks are to do concerning benefits

- 4 -

held in accounts when served with a garnishment. (*Id.*) The summary of

the Rule states:

> SUMMARY: Treasury, SSA [Social Security Administration], VA, RRB and OPM (Agencies) are adopting as final an interim rule to amend their regulation governing the garnishment of certain Federal benefit payments that are directly deposited to accounts at financial institutions. The rule establishes procedures that financial institutions must follow when they receive a garnishment order against an account holder who receives certain types of Federal benefit payments by direct deposit. ***The rule requires financial institutions that receive such a garnishment order to determine the sum of such Federal benefit payments deposited to the account during a two month period, and to ensure that the account holder has access to an amount equal to that sum or to the current balance of the account***, whichever is lower.

(emphasis added) (*Id.*)

The rule delves further into the processes the banks are to apply, but suffice it to say that the Rule only governs the banks' handling of garnishments when benefits such as Mr. Huffman's Social Security Benefits are in the account. It did NOT amend the Social Security Act, 42 U.S.C. § 407(a), in determining what is and what is not exempt. Obviously, the overall purpose of the Rule is simply to "ensure that the account holder has access to an amount equal to that sum or to the current balance of the account."

The Rule makes logical sense as those who receive government benefits should not be shut out of their wholly exempt funds leaving them unable to pay their rent or utilities when a creditor purposefully or mistakenly garnishes and freezes an account which holds such funds. It is a practical Rule, giving processes for the banks to follow without requiring the banks to be the "judge" and determine the legal exemption

- 5 -

1   status of all the funds in the account.

2       What is most clear is that the Rule discussed in 78 Federal Regis-

3   ter 32099 does not make the remainder of the Social Security Benefits –

4   those going back more than 60 days – non-exempt and subject to

5   garnishment, as Plaintiff argues. The Social Security Act, 42 U.S.C. §

6   407(b) makes it clear that:

7       No other provision of law, enacted before, on, or after the
    date of the enactment of this section [enacted April 20,
8   1983], may be construed to limit, supersede, or otherwise
    modify the provisions of this section except to the extent that
9   it does so by express reference to this section.

10       The Rule in 78 Federal Register 32099 was adopted in 2013, well

11   after 1983. Moreover, it does not expressly reference 42 U.S.C. § 407 to

12   modify those protections. The only reference to § 407 is here:

13       Under 42 U.S.C. 407(a) and 42 U.S.C. 1383(d)(1), ***Federal
    Old-Age, Survivors, and Disability Insurance benefits***
14   ***and Supplemental Security Income payments are gener-
    ally exempt from garnishment***. 42 U.S.C. 405(a) provides
15   the Commissioner of Social Security with the authority to
    make rules and regulations concerning Federal Old-Age,
16   Survivors, and Disability Insurance benefits. The Social
    Security Act does not require State law to apply in the event
17   of conflict between State and Federal law.

18   (emphasis added)

19       This line actually supports Defendant's position, not Plaintiff's. But

20   it is only a Rule governing the procedures of immediate release of 60

21   days worth of benefits if the bank receives a garnishment. It does not

22   instruct the bank to hand over the remaining Social Security benefits to

23   the judgment creditor. And it does not declare the remaining benefits in

24   the account non-exempt, as Plaintiff argues.

25       Ultimately, over Mr. Huffman's objections, Plaintiff argued that the

- 6 -

1  remainder of $60,597.25 held pursuant to the writ was not exempt and

2  requested that the Court order release of those funds to Plaintiff. (Exh.

3  A, ¶ 17) And, unfortunately, the Court issued the Minute Entry stating:

4   Plaintiff being entitled to the full requested amount; IT IS
 ORDERED granting the Writ of Garnishment in the sum of
5   $60,597.25.

6    **III. Defendant Entitled to Reconsideration of Court's Ruling.**

7    It is clear from the record that the statute cited by Defendant to

8  support his position that all the Social Security benefits in his account

9  were exempt was mistakenly stated as 42 U.S.C. § 207, rather than the

10  correct citation of 42 U.S.C. § 407(a). Moreover, it also is clear that

11  under that section of the Social Security Act, all benefits paid to Mr.

12  Huffman are exempt from execution, including bank garnishment.

13  Finally, it is abundantly clear that the Federal Register Rule cited to by

14  Plaintiff is inapplicable to the question of whether the remaining benefits

15  held in the bank account are exempt.

16    **IV. Conclusion.**

17    Had there been proper written briefing, and clear and proper

18  citations of authority, the Court would have had an opportunity to

19  review the statutes and the case law before making its ruling. That

20  opportunity should be afforded the Defendant by granting his request

21  for reconsideration of the ruling.

22    Defendant Everett Huffman respectfully requests that the Court

23  grant his motion, and reconsider with full briefing its ruling concerning

24  the remaining $60,597.25 held by the garnishee bank.

25    Defendant further requests that his attorney's fees and costs

- 7 -

1    incurred in this matter be awarded under the underlying contract, and

2    or A.R.S. §§ 12-341 and 12-341.1.

3

4          RESPECTFULLY SUBMITTED:    July 23, 2021    .

5

                          /s/ Floyd W. Bybee
6                          Floyd W. Bybee, #012651
                          **BYBEE LAW CENTER, PLC**
7                          90 S. Kyrene Road Ste. 5
                          Chandler, AZ 85226-4687
8                          Office: (480) 756-8822
                          Fax: (480) 302-4186
9                          floyd@bybeelaw.com

10                         Attorney for Defendant

11

12   Copy of the foregoing mailed
     ***July 23, 2021*** to:

13

     Ashley N. Moscarello
14   GOODMAN LAW GROUP
     3654 N. Power Rd. Ste 132
15   Mesa, Arizona 85215
     Attorney for Plaintiff

16

17   by    /s/ Floyd W. Bybee

18

19

20

21

22

23

24

25

                              - 8 -

# EXHIBIT 2

Floyd W. Bybee, #012651
**BYBEE LAW CENTER, PLC**
90 S. Kyrene Rd., Ste. 5
Chandler, AZ 85226-4687
Office:  (480) 756-8822
Fax: (480) 302-4186
floyd@bybeelaw.com

Attorney for Defendant

## SUPERIOR COURT OF ARIZONA

## PINAL COUNTY

_____ )
Magic Ranch Estates                     )
Homeowners Association, an          )
Arizona non-profit corporation,       )
                                                      )
      Plaintiff,                                )
                                                      )
v.                                                    )
                                                      )
Everett Huffman,                            )
                                                      )
                                                      )
                                                      )
      Defendant.                            )
_____ )

CASE NO. S1100CV201501738

**REPLY TO RESPONSE TO MOTION FOR RECONSIDERATION**

(Oral Argument Requested)

**I.      Defendant's Reply is Timely.**

The Court's Notice / Motion for Reconsideration filed August 2, 2021 provided Defendant five days to file a Reply / Memorandum after the Response is served. It appears from the on-line docket that Plaintiff filed its Response on August 5, 2021, and certified that its mailing to counsel was on the same date. However, Defendant's counsel did not receive the Response until Thursday, August 12, 2021, a week after it was allegedly mailed. But the envelope reflects a postage meter date of August 9, 2021, four days after the alleged mailing, and a Postmark of

1  August 10, 2021, five days after the alleged mailing. (copy of envelope

2  attached hereto)

3      Nevertheless, with five days added for mailing under Rule 6(c),

4  Defendant's filing of his reply on August 16, 2021 is timely, even using

5  Plaintiff's spurious mailing date of August 5, 2021.

6  **II.    Plaintiff Holds Fast to Banking Regulation 31 CFR § 212.**

7      **a.  Plaintiff Confuses "Protected Funds" with "Exempt Funds"**

8      Plaintiff attempts to turn JPMorgan Chase Bank into the fact-

9  finder and judge in this case. Contrary to Plaintiff's argument, the Bank,

10 as garnishee, has NO authority to determine what is and what is not

11 exempt — it is only charged with determining the amount that is "pro-

12 tected" under the bank regulation, 31 CFR § 212.4.

13     Protected and exempt are not one in the same. "Protected funds"

14 are those funds in an account which receive an automatic protection

15 under the banking regulations, and include only those amounts received

16 by the bank within the look-back period of 60 days. "Exempt funds," on

17 the other hand, are any funds which are exempted by law from garnish-

18 ment or attachment, and includes ALL Social Security benefits deposited

19 into the account. *See* 42 U.S.C. § 407(a).

20     Plaintiff erroneously contends that 79 FR at 32009 which is

21 codified at 31 CFR § 212 supports its claim that it is entitled to *all* the

22 Social Security benefits deposited into Mr. Huffman's account, save

23 those deposited within 60 days prior to receipt of the writ of garnish-

24 ment. But the regulation cited does not support this contention. As

25 Plaintiff admits, these [regulations] are "the process[es] that financial

- 2 -

1   institutions must follow.] (Response pg. 2 lns. 25-28 *Id.*) And, a review of
2   the regulation makes this pointedly clear.

3       **b.  Banking Regulation 31 CFR 212.**

4       A review of 31 CFR § 212, and its subsections, shows that this
5   regulation is applicable only to a bank's handling of a garnishment of an
6   account in which protected benefits have been deposited. The purpose
7   of the regulation is set forth at 31 CFR § 212.1 which states it is "to
8   implement statutory provisions that protect Federal benefits from
9   garnishment by establishing *procedures that a financial institution must*
10  *follow when served a garnishment order against an account holder into*
11  *whose account a Federal benefit payment has been directly deposited.*"
12  (emphasis added). Notably, it does not say that the purpose of the
13  regulation is for banks to determine what are and what are not exempt
14  funds. And, 31 CFR § 212.2 clarifies that these protected "Funds"
15  include Social Security benefits, and then specifically points out that
16  these Social Security benefits are protected under 42 U.S.C. 407 and 42
17  U.S.C. 1383(d)(1).

18      There are also various definitions in the regulation which are
19  relevant to the discussion here provided at 31 CRF § 212.3, including:

20          "***Freeze* or *account freeze*** means an action by a financial institu-
21          tion to seize, withhold, or preserve funds, or to otherwise prevent
            an account holder from drawing on or transacting against funds in
            an account, in response to a garnishment order."
22
23          "***Lookback period*** means the two month period that begins on the
            date preceding the date of account review and ends on the corre-
24          sponding date of the month two months earlier, or on the last date
            of the month two months earlier if the corresponding date does not
25          exist."

- 3 -

"***Protected amount*** means the lesser of the sum of all benefit payments posted to an account between the close of business on the beginning date of the lookback period and the open of business on the ending date of the lookback period, or the balance in an account when the account review is performed."

Then, 31 CFR § 212.6 gives additional insight into the purpose of the Regulation, including these subparagraphs:

**(a) Protected amount.** The financial institution shall immediately calculate and establish the protected amount for an account. *The financial institution shall ensure that the account holder has full and customary access to the protected amount, which the financial institution shall not freeze in response to the garnishment order. An account holder shall have no requirement to assert any right of garnishment exemption prior to accessing the protected amount in the account.*

**(c) No challenge of protection.** A *protected amount* calculated and established by a financial institution pursuant to this section *shall be conclusively considered to be exempt from garnishment under law.*

**(d) Funds in excess of the protected amount.** *For any funds in an account in excess of the protected amount, the financial institution shall follow its otherwise customary procedures for handling garnishment orders, including the freezing of funds. . . .*

Also, several provisions in the notice the bank is required to give pursuant to 31 CFR § 212.7 provide further insight into the purpose of the regulation:

A financial institution shall issue the notice required by § 212.6(e) in accordance with the following provisions.

(4) The financial institution's requirement under Federal regulation *to ensure that account balances up to the protected amount specified in § 212.3 are protected and made available to the account holder if a benefit agency deposited a benefit payment into the account in the last two months.*

(9) The account holder's *right to assert against the creditor that initiated the order a **further garnishment exemption for amounts above the protected amount**,* by completing exemption claim forms, contacting the court of jurisdiction,

- 4 -

1   or contacting the creditor, as customarily applicable for a
2   given jurisdiction.

3   (10) The account holder's right to consult an attorney or legal
    aid service in *asserting against the creditor that initiated the*
4   *order **a further garnishment exemption for amounts
    above the protected amount***.

5   And finally, 31 CFR § 212.8 provides that:

6   ***(a) Exempt status.*** Nothing in this part shall be construed to
    limit an individual's right under Federal law **to assert
7   against a creditor a further exemption from garnishment
    for funds in excess of the protected amount**, or to alter
8   the exempt status of funds that may be protected from gar-
    nishment under Federal law.
9

10  So, the protected amount includes those benefits received by the

11  bank during the lookback period. Those protected funds are deemed

12  automatically exempt and are immediately released to the account

13  holder to use. The remaining funds are frozen, but are held subject to

14  further review to determine their exemption status. 31 CFR § 212.6.

15  It is unambiguous that 31 CFR § 212 does not vest the determina-

16  tion of exempt funds in the hands of the garnishee bank, except for

17  those funds deposited in the lookback period. It is also obvious that the

18  Social Security benefits held in the account, but not included in the

19  "protected amount," are not automatically determined to be non-exempt

20  and payable to the judgment creditor. The regulation clearly recognizes

21  the exemption of those funds from garnishment under 42 U.S.C. §

22  407(a).

23  **III.   All Social Security Benefits Exempt under 42 U.S.C. § 407(a).**

24  In its response, Plaintiff has failed even an attempt to reconcile its

25  claim that benefits deposited more than 60 days prior to the garnish-

- 5 -

HUFFMAN-000193

1    ment are not exempt with Congress's clear direction that all Social

2    Security benefits are exempt. As previously stated in the Motion,

> The right of any person to any future payment under this
> subchapter shall not be transferable or assignable, at law or
> in equity, and ***none of the moneys paid or payable or
> rights existing under this subchapter shall be subject to
> execution, levy, attachment, garnishment, or other legal
> process***, or to the operation of any bankruptcy or insolvency
> law.

7    42 U.S.C. § 407(a). This is the law. This is not a banking regulation

8    which a bank must follow upon receipt of a garnishment order. This is

9    the law that makes *all* Social Security benefits *paid or payable* exempt

10   from garnishment, and prohibits judgment creditors, such as Plaintiff

11   here, from garnishing or attaching such exempt funds.

12         The Supreme Court has never withdrawn its holding that Social

13   Security benefits are exempt. *See Philpott v. Essex County Welfare Bd.*

14   (cited in the Motion). Additionally, other courts have followed *Philpott*

15   and similarly reaffirmed that all benefits held in bank accounts are

16   exempt from execution. For example, the Michigan Court of Appeals

17   held:

> ***The protection afforded to money received as Social
> Security benefits extends before and after the benefits
> are received.*** *Philpott v Essex Co Welfare Bd*, 409 U.S. 413,
> 415-417; 93 S Ct 590; 34 L Ed 2d 608 (1973) [other citations
> omitted] The fact that the payments have been made does
> not make them lose their character as Social Security bene-
> fits or make them subject to legal process. To the contrary,
> the protections of 42 USC § 407(a) apply, by their terms, to
> "**moneys *paid*** or payable" (emphasis added); the fact that
> benefits have been paid and may be on deposit in a recipi-
> ent's bank account does not shed them of that protection
> until they are in some way converted into some other kind of
> asset. *Philpott*, 409 U.S. at 415-417. Thus, even after a recip-
> ient receives SSDI benefits and deposits them into a bank
> account, the SSDI benefits are still protected by 42 USC

- 6 -

1  407(a). *Whitwood*, 265 Mich App at 654. When a state court
2  order attaches to Social Security benefits in contravention of
3  42 USC 407(a), the attachment amounts to a conflict with
   federal law, and such a conflict is one "that the State cannot
   win." *Bennett v Arkansas*, 485 U.S. 395, 397; 108 S Ct 1204;
4  99 L Ed 2d 455 (1988).

5  *State v. Lampart*, 306 Mich. App. 226, 234-35, 856 N.W.2d 192, 197
6  (2014).

7      In this case, it is undisputed by Plaintiff and the Chase Bank

8  representatives that all the remaining funds in Mr. Huffman's account

9  were Social Security benefits. They are therefore fully protected as

10  exempt and not subject to attachment or garnishment by Plaintiff. 42

11  U.S.C. § 407(a).

12      Plaintiff has provided no controlling or contrary authority which

13  supports its claim that the remaining benefits in Mr. Huffman's Chase

14  bank account are not exempt funds, and are therefore subject to gar-

15  nishment. Its misplaced reliance on the banking regulation 31 CFR §

16  212 holds no water in this argument.

17  **IV.   Conclusion.**

18      It only makes sense that the bank regulations promulgated at 31

19  CFR § 212 are to ensure that beneficiaries of protected government

20  benefits do not die from the heat or freeze from the cold, or are made

21  homeless because their benefits are frozen by a judgment creditor's

22  garnishment. That is why the bank is obligated to do an immediate

23  review and release those funds deposited in the lookback period.

24  Otherwise, vulnerable beneficiaries would be unable to pay the utilities

25  or rent, even though they have funds in the bank.

- 7 -

1    Conversely, the regulations at 31 CFR § 212 were *not* written to

2  allow garnishment of federally exempted Social Security benefits that do

3  not fall within the lookback period. Plaintiff is blatantly wrong in its

4  argument to the contrary.

5    Therefore, for the reasons set forth herein, and previously set forth

6  in Defendant's Motion, Defendant hereby requests that the Court

7  reconsider its July 13, 2021 Order, and enter an order declaring that all

8  the funds held in Mr. Huffman's Chase Bank account at the time of the

9  service of the writ of garnishment are exempt, that they are not attach-

10  able by Plaintiff's writ of garnishment, and the garnishment be quashed.

11    Defendant again requests that his attorney's fees and costs

12  necessarily incurred in preparing the motion to reconsider and reply be

13  awarded under the underlying contract, and or A.R.S. §§ 12-341 and

14  12-341.1.

15

16    RESPECTFULLY SUBMITTED:    August 16, 2021    .

17

18        /s/ Floyd W. Bybee
        Floyd W. Bybee, #012651
19        **BYBEE LAW CENTER, PLC**
        90 S. Kyrene Road Ste. 5
20        Chandler, AZ 85226-4687
        Office: (480) 756-8822
        Fax: (480) 302-4186
21        floyd@bybeelaw.com

22        Attorney for Defendant

23

24

25

- 8 -

1  Copy of the foregoing mailed
   ***August 16, 2021*** to:
2
3  Ashley N. Moscarello
   GOODMAN LAW GROUP
   3654 N. Power Rd. Ste 132
4  Mesa, Arizona 85215
   Attorney for Plaintiff
5
   and mailed and faxed to:
6
7  JP Morgan Chase Bank, N.A.
   Court Orders and Levies
   P.O. Box 183164
8  Columbus, OH 43218-7022
   (866) 699-0618
9  Garnishee

10

11 by _____/s/ Floyd W. Bybee_____

12

13

14

15

16

17

18

19

20

21

22

23

24

25

- 9 -

HUFFMAN-000197

# EXHIBIT 3

## DECLARATION OF DEFENDANT
## EVERETT HUFFMAN

I, Everett Huffman, duly sworn upon his oath and under penalty of perjury, deposes and says:

1.  I make the following statements based upon my personal knowledge.

2.  I am the named Defendant in this matter.

3.  On June 4, 2021, I filed a Request of Judgment Debtor for Hearing on Garnishment of Non-Earnings with the Clerk of the Court.

4.  On July 12, 2021, I personally attended the hearing in this Court on my Request.

5.  During the hearing, I submitted all my original bank statements concerning my account with Chase Bank, which was marked as Exhibit 1.

6.  Exhibit 1 was admitted by stipulation of the parties, including the Garnishee Bank.

7.  I have attached to my Declaration as Exhibit 1, copies of the same bank statements admitted as Exhibit 1 at the garnishment hearing.

8.  During the hearing the parties agreed and stipulated that all the moneys deposited into my Chase Bank account, and currently held in the account, were derived solely from my Social Security Benefits, which is true save the stimulosus check deposited without my prior knowledge.

9.  During the hearing the bank stated that the stimulosus payment

was also exempt.

10.  I opened this account with Chase Bank for the sole purpose of receiving by direct deposit and holding my Social Security benefits.

11.  No moneys from any other source were ever deposited into this Chase account, save a stimulosus check of $1,400 which the Department of Treasury deposited without prior notice to me.

12.  During the hearing I heard Plaintiff's counsel arguing that only the prior two months of benefits were exempt.

13.  During the hearing I heard Plaintiff's counsel arguing that Plaintiff was entitled to the remainder of Social Security benefit moneys in the account in the amount of $60,597.25.

14.  To support its position, during the hearing I heard Plaintiff's counsel cite to 78 Federal Register 32099.

15.  To support its position, during the hearing I heard Plaintiff's counsel argue that 78 Federal Register 32099 exempted only the last 60 days of benefits from garnishment.

16.  In opposition to Plaintiff's position, I cited to 42 U.S.C. § 407, but mistakenly stated the statute as "42 U.S.C. § 207," as authority that all the funds deposited and held in my Chase account were exempt from execution as there was only Social Security benefits ever deposited in the account.

17.  Over my objections, I observed Plaintiff's counsel argue that the

HUFFMAN-000075

remainder of the Social Security benefits held in my bank account were not exempt, and requested that the Court order the release of those funds to Plaintiff, which the Court did.

Dated:  _July 23, 2021_ .


Everett Huffman
Defendant

# EXHIBIT 4

**From:**     Rania Goad <searchlightaz@gmail.com>

**To:**        "Ashley N. Moscarello" <ashley@goodlaw.legal>

**Date:**     07/07/2021 2:42 PM

**Subject:**  Re: FW: 00467-Magic Ranch Estates Huffman

Hi Ashely,

I wish I could help you but unfortunately, I did not see any dates of any account changes.  I always provide everything that I find.  Usually, I can only see dates of opened or closed accounts when the account change was made within 30-60 days (depending on the bank) so the changes in this account must have happened before that time frame.

Anything I am not absolutely certain of I just add to an email rather than on the formal report.  Notations made on accounts by the banks are sometimes very vague, and they also sometimes use a kind of shorthand for certain account issues.  For example, one of the cases I worked on last month showed an account notation to expect a partial wire transfer of funds from a law office that only deals with estate matters.  While that may seem cut and dry, I found a weird little notation on the account that there was additional paperwork included with the transfer of funds, and with that paperwork was a copy of a judgment.  A judgment would not have been included if this was for an inheritance payout.  Based on that information, I was able to learn that the main partner in the estate law firm was helping his friend out with judgment collection on the side, and that is where the money was coming from, even though at first glance it appeared that the money came from an inheritance.

That was one of those times I just gave my thoughts or theories in an email or phone call, rather than in the actual report since it concerned things that I don't know for certain.  In that situation I was correct, in the next case, I may not have enough information to make a solid determination like that.

Mr. Hoffman isn't that old to have accumulated that much in social security, even if he just left it alone and never touched it.  So yeah, that is ridiculous that all of that is protected funds.

One thing that I wanted to also mention to you is that the state of Arizona just passed a law that collectors can now go after equity in a home or property.  I don't know much about it other than being told just that, and it supposedly happened about a month or two ago.  You might want to check that out and see if funds can be obtained that way as well.

Good luck, and if you have any questions please don't hesitate to ask.

Have a wonderful day!

Rania Goad
Searchlight Investigations, LLC
Phoenix, Arizona Regional Office:  623-376-9807
Kingman, Arizona Regional Office:  928-757-5435
Tucson, Arizona Regional Office:  520-333-2713
Fax:  877-877-4890

On Wed, Jul 7, 2021 at 9:56 AM Ashley Moscarello <ashley@goodlaw.legal> wrote:
> Hi Rania,

I hope you had a nice 4th of July weekend!

I had a question for you on this one – we have a hearing on the garnishment requested by the Debtor next Monday, and I wanted to see if you had any more information about the bank account we are garnishing. You mentioned below that the account hadn't been open for too long when the large lump sum hit the account – do you have anywhere in your notes when the account was open and/or when the deposit was made? I'm attaching your report here as well for your reference. The Debtor is claiming that the funds in the account are exempt Social Security, but I doubt the full amount is exempt (the Bank withheld about $4k as "federal protected" benefits).

I appreciate any additional insight you may have.

Thanks!

Ashley N. Moscarello

Attorney

A close up of a sign Description automatically generated

(844) 346-6352, Ext. 404 | www.goodlaw.legal

Click HERE to search statutes.

The information in this email is intended solely for the individual or entity named herein.

THIS FIRM ACTS AS A DEBT COLLECTOR AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

**From:** Rania Goad <searchlightaz@gmail.com>
**Sent:** Wednesday, May 12, 2021 2:08 PM
**To:** Laura Engelsman <laura@goodlaw.legal>
**Subject:** Re: FW: 00467-Magic Ranch Estates Huffman

Hi Laura!

I actually had this finished for you on Friday but was waiting to send it because there was something going on with the account I located for Mr. Huffman.  I did not put this next part in the report because I can't verify any of what I am about to tell you.

It appears that Mr. Huffman received some kind of lump some payment from what I believe might have been an inheritance at some point last year.  When he first opened the bank account with Chase that is listed on the report, he had been having issues with NSF check writing.  The account hadn't been open for that long once the lump some of money hit and since the deposit, it looks like Huffman has been trying to explore investment vehicles for his money but so far has done nothing with it.  There are notes attached to his account that suggested another lump sum was expected to arrive Monday the 10th.  Between that deposit and an additional five thousand dollars of the balance his account has now, there was to be a CD funded.  It appears the paperwork for it was set up and everything but the deposit never happened an there was no CD funded either.  At least not as of today.

So far, the investments Mr. Huffman has been exploring are all options through Chase Bank, so even if he does open an CD or something of that nature it should all be within the same bank.

Please let me know if you have any questions.

Have a great day!

Rania Goad
Searchlight Investigations, LLC
Phoenix, Arizona Regional Office:  623-376-9807
Kingman, Arizona Regional Office:  928-757-5435
Tucson, Arizona Regional Office:  520-333-2713
Fax:  877-877-4890

Image removed by sender.   Virus-free. www.avast.com

On Wed, May 12, 2021 at 1:02 PM Laura Engelsman <laura@goodlaw.legal> wrote:

Hi Rania,

Can you give me an eta on this one? Thank you!!


Sincerely,

Laura Engelsman

Supervising Paralegal


Click HERE to search statutes.


A close up of a sign Description automatically generated




(844) 346-6352, Ext. 405 | www.goodlaw.legal


The information in this email is intended solely for the individual or entity named herein.


THIS FIRM ACTS AS A DEBT COLLECTOR AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

---

**From:** Rania Goad <searchlightaz@gmail.com>
**Sent:** Tuesday, April 20, 2021 2:37 PM
**To:** Laura Engelsman <laura@goodlaw.legal>
**Subject:** Re: 00467-Magic Ranch Estates Huffman


Will do!


Have a great day!

Rania Goad
Searchlight Investigations, LLC
Phoenix, Arizona Regional Office:  623-376-9807
Kingman, Arizona Regional Office:  928-757-5435
Tucson, Arizona Regional Office:  520-333-2713
Fax:  877-877-4890

On Tue, Apr 20, 2021 at 9:06 AM Laura Engelsman <laura@goodlaw.legal> wrote:

Hi Rania,

We need to research this guy again. I attached a new TLO as well as your prior report. Please locate assets and banking. FYI he has also gone by the last name of Hoffman.

Sincerely,

Laura Engelsman

Supervising Paralegal

Click HERE to search statutes.

A close up of a sign Description automatically generated

(844) 346-6352, Ext. 405 | www.goodlaw.legal

The information in this email is intended solely for the individual or entity named herein.

THIS FIRM ACTS AS A DEBT COLLECTOR AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.