**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bruce E. Huffman,<br><br>　　　　Plaintiff,<br><br>v.<br><br>JP Morgan Chase Bank, NA, *et al.*,<br><br>　　　　Defendants. | No. CV-22-00903-PHX-JJT<br><br>**ORDER** |

At issue is Defendant Goodman Holmgren Law Group, LLP's ("Goodman") Motion for Summary Judgment (Doc. 75, "Goodman MSJ"), to which Plaintiff Bruce E. Huffman filed a Response (Doc. 85, "Resp. to Goodman"), and Goodman filed a Reply (Doc. 92). Also at issue is Defendant JP Morgan Chase Bank, N.A.'s ("Chase Bank") Motion for Summary Judgment (Doc. 77, "Chase Bank MSJ"), to which Plaintiff filed a Response (Doc. 83), and Chase Bank filed a Reply (Doc. 91). The Court finds these matters appropriate for decision without oral argument. *See* LRCiv 7.2(f).

**I.    BACKGROUND**

On or around December 2018, Plaintiff opened a checking account with Chase Bank. (Doc. 78, "Chase Bank SOF" ¶ 2.) Plaintiff used the account to receive monthly direct deposits of his social security benefits. (Chase Bank SOF ¶ 4.) When Plaintiff opened the account, he "acknowledge[d] receipt of the Bank's Deposit Account Agreement . . . which includes all provisions that apply to [the] deposit account . . . and agree[d] to be bound by the terms and conditions contained therein as amended from time to time."

(Chase Bank SOF ¶ 3.) Plaintiff and Chase Bank's relationship was governed by Chase Bank's Deposit Account Agreement ("DAA"). (Chase Bank SOF ¶ 20.) In relevant part the DAA reads:

> If we receive any legal process relating to you or your account, you authorize us to comply with it. "Legal process" means any document that appears to have the force of law that requires us to hold or pay out funds from your account, including a garnishment, attachment, execution, levy or similar order. We do not have to determine whether the legal process was validly issued or enforceable.

(Chase Bank SOF ¶ 21.)

The DAA also describes Chase Banks's duties: "If we receive any subpoena, court order or request for information or documents from a government entity or arbitration panel relating to your account, we are authorized to comply with it." (Chase Bank SOF ¶ 21.) Moreover, the DAA provides:

> There are many reasons we may decline or prevent transactions to or from your account, but we generally do it to protect you or us, or to comply with legal requirements. We may decline or prevent any or all transactions to or from your account. We may refuse, freeze, reverse or delay any specific withdrawal, payment or transfer of funds to or from your account, or we may remove funds from your account to hold them pending investigation, including in one or more of the following circumstances:
>
> • Your account is involved in any legal or administrative proceeding;
>       * * *
> • We reasonably believe that doing so is necessary to avoid a loss or reduce risk to us.
>       * * *
> We also may limit cash deposits to, or withdrawals from, your account (or all of your accounts collectively) in a single transaction or total withdrawals or deposits during any period

>of time, or who may make deposits, in order to reduce risk and/or enhance our efforts to comply with applicable law.
>
>We will have no liability for any action we take under this section.

(Chase Bank SOF ¶ 22.)

Later, Plaintiff became involved in a state court lawsuit in which Goodman represented a homeowners association against Plaintiff. The homeowners association obtained a judgment against Plaintiff and eventually sought to collect on it by garnishing funds in Plaintiff's aforementioned bank account. Goodman filed an application for writ of garnishment against Chase Bank, and Chase Bank informed Goodman that it would hold over $60,000 as a result of the writ, but it would release about $6,500 in statutorily exempt funds and federally protected benefits. (Doc. 76, "Goodman SOF" ¶¶ 2–3.)

Representing himself, Plaintiff requested and received a hearing on the application for the writ. (Goodman SOF ¶¶ 5, 7.) At the hearing, Plaintiff argued that all the funds in his account were social security benefits, and thus all the funds should have been exempt from garnishment. (Doc.76-6, "Hearing Tr." at 8:25–9:20.) In opposition, Goodman argued that the only exempt funds were the approximately $6,500 that Chase Bank released to Plaintiff. (Hearing Tr. at 6:32–8:1.)

A Chase Bank representative testified that Chase Bank released the $6,500 after it applied its policy of using a sixty-two day "lookback period," and it exempted from garnishment only those benefits deposited during the lookback period. (Hearing Tr. at 10:8–11:23, 12:18.) Goodman also pointed to a federal regulation to argue that Chase Bank correctly applied the lookback period. (Hearing Tr. at 13:18–14:1.) Plaintiff responded by citing "42 U.S.C. 207" to argue that social security benefits are not subject to garnishment, regardless of when they reach an account. (Hearing Tr. at 15:24–16:2.) Goodman quickly researched the cited statute and noted to Plaintiff and the court that the statute "discuss[es] the grades of ranks of commissioned officers and things like that." (Hearing Tr. at 16:6–12.) When asked if this was the correct citation, Plaintiff confirmed that it was "what

[he] found when [he] . . . talked to attorneys about that." (Hearing Tr. at 16:13–17.) Goodman then stated that there was no support in that statute for Plaintiff's contention, to which Plaintiff replied, "The statute is pretty clear." (Hearing Tr. at 16:19–21, 17:1.) In conclusion, the court found that Plaintiff "reli[ed] upon a statute that seem[ed] to be, at best, miscited," and granted the application. (Hearing Tr. at 17:21–25.)

After the hearing, Plaintiff retained counsel and filed a motion for reconsideration. (Goodman SOF ¶ 15.) In the motion, Plaintiff informed the court that he misspoke when he cited "42 U.S.C. 207," and he had instead intended to cite 42 U.S.C. § 407. (Doc. 86-1 at 3.) Plaintiff then argued that § 407 clearly exempts all social security benefits from garnishment. (Doc. 86-1.) Goodman responded by identifying several federal regulations that it believed exempted only funds deposited during the lookback period. (Doc. 76-8.) Ultimately, the court agreed with Plaintiff and granted his motion. (Doc. 76-9.) Just over a week later, on January 19, 2022, Goodman moved to quash the writ. (Doc. 76-10.)

On March 2, 2022, Chase Bank sent a letter to Plaintiff informing him that on February 14, 2022, it had received the court's order quashing the writ, and on February 28, 2022, it had released the hold on Plaintiff's account. (Doc. 78-2, Ex. 14.) Plaintiff insisted on withdrawing his money in cash, which a Chase Bank employee explained would have to be ordered and picked up later. (Doc. 78-2, Ex. 13.) On March 26, 2022, Plaintiff finally withdrew all his money from the account. (Doc. 78-1, Ex. 3.)

Plaintiff then brought this suit alleging several causes of action against Goodman and Chase Bank. (Doc. 1, "Compl.") The only claims now remaining against Goodman are a violation of the Social Security Act, 42 U.S.C. § 301, *et seq.* ("SSA"), and violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"). The only claims remaining against Chase Bank are for unjust enrichment and conversion. Goodman and Chase Bank each move for summary judgment on all claims against them.

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when: (1) the movant shows that there is no genuine dispute as to any material fact; and

(2) after viewing the evidence most favorably to the non-moving party, the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288–89 (9th Cir. 1987). Under this standard, "[o]nly disputes over facts that might affect the outcome of the suit under governing [substantive] law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" of material fact arises only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

In considering a motion for summary judgment, the court must regard as true the non-moving party's evidence if it is supported by affidavits or other evidentiary material. *Celotex*, 477 U.S. at 324; *Eisenberg*, 815 F.2d at 1289. The non-moving party may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a question of material fact. *Anderson*, 477 U.S. at 256–57 (holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).

"A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Summary judgment must be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *United States v. Carter*, 906 F.2d 1375, 1376 (9th Cir. 1990) (quoting *Celotex*, 477 U.S. at 322).

**III.   ANALYSIS**

    **A.   Goodman's Motion for Summary Judgment**

        **1.   Violation of the Social Security Act**

The Court first addresses Plaintiff's claim that Goodman violated the SSA. Goodman argues that no private right of action exists under the SSA (Goodman MSJ at 8), and Plaintiff does not respond to that argument. Moreover, in a previous Order (Doc. 45),

the Court dismissed the same claim against Chase Bank and Magic Ranch on the same argument Goodman raises here. (Doc. 45 at 8–11, 17–18.) For the reasons stated in detail in the Court's previous Order, the Court will grant summary judgment on this claim.

### 2. Violations of the Fair Debt Collection Practices Act

Plaintiff alleges five distinct violations of the FDCPA: (1) Goodman violated 15 U.S.C. § 1692c by communicating about the collection of a debt with Chase Bank without obtaining prior permission from Plaintiff, (2) Goodman violated 15 U.S.C. § 1692d by engaging in conduct the natural consequences of which were to harass, oppress, or abuse Plaintiff, (3) Goodman violated 15 U.S.C. § 1692e by using false, deceptive, or misleading representations in connection with the collection of a debt, (4) Goodman violated 15 U.S.C. § 1692f by using unfair or unconscionable means to attempt to collect a debt, and (5) Goodman violated 15 U.S.C. § 1692j by designing, compiling, or furnishing a misleading writ of garnishment to Chase Bank. (Compl. ¶ 39.) Goodman argues that it did not violate § 1692c as a matter of law, and it asserts the *bona fide* error defense as to the rest of the allegations.

#### a. 15 U.S.C. § 1692c

Section 1692c generally prohibits a debt collector from communicating with a third party in connection with the collection of a debt without the prior consent of the consumer. 15 U.S.C. § 1692c(b). However, a debt collector may engage in such communication "as reasonably necessary to effectuate a post-judgment judicial remedy." *Id.* Goodman argues that its conduct falls under this exception because it communicated with Chase Bank to garnish funds pursuant to a validly entered judgment against Plaintiff. (Goodman MSJ at 8.) Plaintiff does not meaningfully respond to Goodman's argument, only noting that he alleges violations on several other grounds. (Resp. to Goodman at 9.) The Court agrees with Goodman that the exception applies, and it will grant Goodman's Motion with respect to the alleged violation of § 1692c.

. . .

. . .

### b. The *Bona Fide* Error Defense

As to the other four alleged violations of the FDCPA, Goodman argues that the *bona fide* error defense applies. As set forth in 15 U.S.C. § 1692k(c), a debt collector may not be held liable under the FDCPA "if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." Thus, to prevail on a *bona fide* error defense, a defendant has the burden to prove that (1) it violated the FDCPA unintentionally, (2) the violation resulted from a *bona fide* error, and (3) it maintained procedures reasonably adapted to avoid the specific error at issue. *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 948–49 (9th Cir. 2011).

Regarding the first two elements, Goodman asserts that if it violated the FDCPA, it did so unintentionally and in good faith. (Goodman MSJ at 9.) For support, Goodman points to the state court proceedings, in which it relied on federal regulations to argue that it was entitled to garnish funds deposited outside the lookback period. (Hearing Tr.; Doc. 76-8.) Plaintiff counters that "it defies credulity to suppose that Goodman did not intentionally violate the FDCPA" because it "continued to press ahead with its garnishment of Plaintiff's account despite repeated notice"—via Plaintiff's motion for reconsideration and reply—"that the funds therein were all immune from garnishment by law." (Resp. to Goodman at 11–12.)

Contrary to Plaintiff's argument, however, Goodman's opposition to Plaintiff's motion is not evidence that tends to show Goodman intentionally violated the FDCPA. Although Plaintiff is correct that Goodman "continued to press ahead with its garnishment" after Plaintiff cited the controlling statutory authority, by then the state court had found for Goodman. And prior to the motion for reconsideration, Plaintiff had miscited the law. Plaintiff thus takes the untenable position that Goodman must have moved to quash the writ as soon as it received his motion for reconsideration, despite having a favorable ruling in hand. Because Goodman initially prevailed, Goodman's opposition shows only that it

sought to advance its same successful arguments. And notably, although Plaintiff's reply accurately and thoroughly explained why Plaintiff should prevail, it made no indication that Goodman's responsive arguments were frivolous or wholly without merit. (Doc. 86-1.) Nor does the Court find that they were upon review. Accordingly, the evidence Plaintiff cites shows only that Goodman's position was legally incorrect and ultimately unavailing, but it does not contradict Goodman's evidence that the alleged violation was unintentional and resulted from a *bona fide* error. There is thus no genuine dispute of fact as to whether Goodman satisfied the first two elements of the *bona fide* error defense.

To satisfy the third element, Goodman must also identify evidence that it maintained procedures reasonably adapted to avoid the violation at issue. *McCollough*, 637 F.3d at 948. The violations in this case, as described by Plaintiff, all arise out of Goodman misunderstanding or disregarding legal authority that prohibited the conduct it engaged in. (Resp. to Goodman at 16.) To prove that Goodman maintained procedures adapted to avoid this error, Goodman offers the report of an expert who interviewed four attorneys at the firm. (Doc. 76-3, "Report.") The report explains that Goodman has many such policies and procedures in place: attorneys who handle FDCPA matters must pass an exam on the FDCPA; attorneys must stay up to date on state and federal laws impacting debt collections, especially as they relate to homeowners associations; weekly meetings are held to discuss updates in state and federal law; attorneys attend Continuing Legal Education classes relevant to debt collection and homeowners association laws; and every attorney attends an annual conference that includes sessions on debt collection and homeowners associations. (Report at 7–8.) The report then concludes that the *bona fide* error defense applies because Goodman has met all three elements. (Report at 10–12.) Goodman argues that because Plaintiff has no expert of his own and has not produced any evidence that Goodman lacks the appropriate procedures, Goodman must prevail as a matter of law. (Goodman MSJ at 11–12.)

First, Plaintiff maintains that Goodman's expert cannot opine on the applicability of the *bona fide* error defense, and the Court agrees. *See Nationwide Transp. Fin. v. Cass Info.*

*Sys., Inc.*, 523 F.3d 1501, 1508 (9th Cir. 2008) (explaining that an expert cannot give an opinion on an ultimate issue of law). The Court also notes, contrary to Goodman's suggestion, that Plaintiff does not need an expert of his own to prevail. However, in opposing Goodman's Motion for Summary Judgment, Plaintiff must offer *some* factual support to show that there is a genuine dispute. *See* Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 256–57. Plaintiff fails to do so here, and thus he cannot show a dispute as to whether Goodman's policies and procedures existed.

Still, the procedures must be tailored to avoid the specific error at issue, and Plaintiff argues that Goodman fails to show how these procedures were tailored to avoid the mistake of law Goodman made. (Resp. to Goodman at 16.) But Plaintiff does not explain how the procedures listed in the report—all of which pertain to Goodman attorneys remaining current on debt collection and homeowners association law—are not tailored to avoid Goodman's mistake. He simply states, without citation, that "such procedures are as a matter of law inadequate" if they would allow attorneys to disregard controlling authority in their regular field of practice. (Resp. to Goodman at 16.) Plaintiff's argument seems to imply a policy concern that, if these sorts of procedures satisfied the third element, attorneys could ignore or disregard governing law without repercussion. But this concern is safeguarded by the first two elements of a *bona fide* error defense; the party asserting the defense must also show that it violated the FDCPA unintentionally and in good faith. The third element is only concerned with the existence and purpose of the defendant's procedures. Accordingly, Goodman has established that there is no genuine dispute of material fact as to whether it satisfied the third element.

Goodman has cited record evidence supporting each element of the of the *bona fide* error defense, and Plaintiff has failed to show that there is a genuine dispute of material fact as to any element. Goodman has also established that it did not violate 15 U.S.C. § 1692c. Therefore, the Court will grant Goodman's Motion for Summary Judgment (Doc. 75). Because the Court grants Goodman's Motion on these grounds, it need not address Goodman's argument that Plaintiff cannot prove his damages.

### B. Chase Bank's Motion for Summary Judgment

#### 1. Unjust Enrichment

Chase Bank first argues that Plaintiff's claim of unjust enrichment is precluded because the enrichment at issue was governed by a contract between the parties. Under Arizona law, "[u]njust enrichment occurs when one party has and retains money or benefits that in justice and equity belong to another." *Loiselle v. Cosas Mgmt. Group, LLC*, 228 P.3d 943, 946 (Ariz. Ct. App. 2010) (quoting *Trustmark Ins. Co. v. Bank One, Ariz., NA*, 48 P.3d 485, 491 (Ariz. Ct. App. 2002)). To plead an unjust enrichment claim, a party must allege: "(1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and the impoverishment, (4) the absence of justification for the enrichment and the impoverishment, and (5) the absence of a remedy provided at law." *Span v. Maricopa Cnty. Treasurer*, 437 P.3d 881, 886 (Ariz. Ct. App. 2019).

In many cases, "the existence of a contract specifically governing the rights and obligations of each party precludes recovery for unjust enrichment." *USLife Title Co. of Ariz. v. Gutkin*, 732 P.2d 579, 584 (Ariz. Ct. App. 1986). However, "[a] theory of unjust enrichment is unavailable only to a plaintiff if that plaintiff has already *received* the benefit of her contractual bargain." *Adelman v. Christy*, 90 F. Supp.2d 1034, 1045 (D. Ariz. 2000); *see also Gutkin*, 732 P.2d at 585 (noting that plaintiffs who fail to obtain the benefit of their bargain are "free to pursue a claim for unjust enrichment"). Thus, a claim of unjust enrichment may be pled in the alternative, but—consonant with the fifth element of the claim—the doctrine will have "no application" where a valid contract between the parties is ultimately found, *Brooks v. Valley Nat'l Bank*, 548 P.2d 1166, 1171 (Ariz. 1976), because there will then exist a "remedy provided at law," *Span*, 437 P.3d at 886, for breach of contract.

It is uncontroverted that there is a contract governing the actions of Plaintiff and Chase Bank regarding the bank account and money in question. (Chase Bank SOF ¶ 20.) And because there is no issue of material fact that there was a contract that specifically

governed the rights and obligations of each party, Plaintiff's claim of unjust enrichment is precluded.

Plaintiff argues that because the unjust enrichment that occurred here is outside the scope of the express provisions in the contract, he can pursue an unjust enrichment claim to obtain relief for the enrichment that occurred outside the provisions in the contract. An unjust enrichment claim may be brought so long as the unjust enrichment claim does not seek to relieve the plaintiff of the effects of an express provision in the contract. *U.S. Bank Nat'l Ass'n v. Casa Grande Reg'l Med. Ctr.*, No. CV 04–1707–PHXNVW, 2006 WL 1698288, at *6 (D. Ariz. June 16, 2006) (citing *Trustmark*, 48 P.3d at 492–93; *Adelman*, 90 F.Supp.2d 1034; *Johnson v. Amer. Nat'l Ins. Co.*, 613 P.2d 1275, 1279 (Ariz. Ct. App. 1980)). The relief sought here is exactly what is expressly contracted for by both parties. There are provisions in the contract governing what Chase Bank was to do when a writ of garnishment was presented to it regardless of the validity of the writ. (Chase Bank SOF ¶¶ 21–22.) At the heart of this case, Plaintiff is alleging that the money he placed in the bank account was an unjust enrichment to Chase Bank; however, the funds that allegedly enriched Chase Bank were the exact thing expressly contracted for by the parties when Plaintiff signed the DAA. Chase Bank was to hold the money for Plaintiff subject to the provisions in the DAA. (Chase Bank SOF ¶ 20.) Plaintiff claims that Chase Bank did not live up to the agreement when it did not give him the money upon his request. (Chase Bank SOF ¶¶ 5–15.) Accordingly, Plaintiff could have pursued the appropriate remedy at law through a breach of contract claim, but he chose not to. Because of these reasons, the Court will grant summary judgment in favor of Chase Bank regarding the unjust enrichment claim.

### 2.     Conversion

Chase Bank also argues that Plaintiff's conversion claim fails because Plaintiff failed to show that the relationship between Chase Bank and Plaintiff was anything more than a "mere creditor-debtor" relationship. (Chase Bank MSJ at 8.) In Arizona, "conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes

with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Miller v. Hehlen*, 104 P.3d 193, 203 (Ariz. Ct. App. 2005) (citing Restatement (Second) of Torts § 222A(1) (1965)). "If those elements are shown, a court must then consider the seriousness of the interference and whether the offending party must pay full value." *Id.* (citing Restatement (Second) of Torts § 222A(2)).

Generally, the relationship between a depositor and a bank is one of a debtor–creditor relationship. *York v. JPMorgan Chase Bank, Nat'l Ass'n*, No. CV-18-04039-PHX-SPL, 2019 WL 3802535, at *5 (D. Ariz. Aug. 13, 2019) (citing *In re Cent. Bank of Wilcox*, 205 P. 915, 917 (Ariz. 1922); *Sports Imaging of Ariz., L.L.C. v. 1993 CKC Tr.*, No. 1 CA–CV 05–0205, 2008 WL 4448063, at *15 (Ariz. Ct. App. Sept. 30, 2008)). In a debtor–creditor relationship, the debtor (bank) generally has the right to possess deposited money and the creditor (depositor) cannot claim conversion. *Id.* However, money deposited into a bank account can be the subject of a conversion claim if it can be "described, identified, or segregated, and an obligation to treat it in a specific manner is established." *Sports Imaging of Ariz.*, 2008 WL 4448063, at *14.

In this case, there is a genuine issue of material fact as to whether the money Plaintiff deposited with Chase Bank was described, identified, or segregated. However, there is no issue of fact as to whether there was an obligation to treat that money in a specific manner. Plaintiff fails to point to any evidence in the record that Chase Bank had an established obligation to treat that money in a specific manner. Plaintiff fails to point to any provisions in the DAA or elsewhere that show Chase Bank was obligated to treat this money any differently than a general deposit agreement. Because this agreement established a debtor–creditor relationship, and because Plaintiff failed to show evidence that Chase Bank had an obligation to treat the money in a specific manner, the Court will grant summary judgment in favor of Chase Bank regarding the conversion claim.

### 3. Attorneys' Fees

Chase Bank also requests an award of attorneys' fees and costs under A.R.S. §§ 12-341 and 12-341.01. (Chase Bank MSJ at 11.) The Court agrees that Chase Bank may

be eligible for fees and costs under these statutes. Chase Bank shall have twenty-one days from the date of this Order to file its application demonstrating its entitlement to and reasonableness of its fees under Local Rule of Civil Procedure 54.2

**IT IS THEREFORE ORDERED** granting Defendant Goodman Holmgren Law Group, LLP's Motion for Summary Judgment (Doc. 75).

**IT IS FURTHER ORDERED** granting Defendant JP Morgan Chase Bank, N.A.'s Motion for Summary Judgment (Doc. 77).

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment in favor of Defendants and to close this case.

**IT IS FURTHER ORDERED** that JP Morgan Chase Bank, N.A. has twenty-one days from the date of this Order to file its fee application in compliance with LRCiv 54.2.

Dated this 12th day of August, 2024.

Honorable John J. Tuchi
United States District Judge