**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bruce E. Huffman,<br><br>            Plaintiff,<br><br>v.<br><br>JP Morgan Chase Bank, NA, *et al.*,<br><br>            Defendants. | No. CV-22-00903-PHX-JJT<br><br>**ORDER** |

At issue is Defendant JPMorgan Chase Bank, N.A.'s (Chase) Application for Attorneys' Fees and Costs (Doc. 98, Application), to which Plaintiff filed a Response (Doc. 103, Response) and Chase filed a Reply (Doc. 106, Reply). The Court finds this matter appropriate for resolution without oral argument. *See* LRCiv 7.2(f). For the reasons set forth below, the Court grants Chase's Application in part.

Plaintiff asserted five claims against Chase in this lawsuit: (1) a violation of the Social Security Act, (2) a violation of federal banking regulations, (3) conversion, (4) unjust enrichment, and (5) intentional infliction of emotional distress (IIED). (Doc. 1 at 7–11.) The Court dismissed the claims for federal violations and IIED, (*See* Doc. 45), and awarded summary judgment against Plaintiff on the claims for conversion and unjust enrichment, (*See* Doc. 93). The Court's summary judgement order contains a detailed description of the facts of this case, and the Court incorporates that description herein. (*See* Doc. 93.) In conjunction with its successful motion for summary judgment, Chase

requested an award of attorney fees and costs pursuant to A.R.S. §§ 12-341, -341.01. Rather than rule on the fees request in its order awarding summary judgment, the Court invited Chase to file an application demonstrating its entitlement to and reasonableness of its fees. Chase has done so, and the Court now turns to the merits of that Application.

## I.     Attorney Fees

A.R.S. § 12-341.01(A) provides for a discretionary award of attorney fees to the prevailing party in "any contested action arising out of a contract." There is no question that Chase is the prevailing party in this action. The parties' dispute concerns whether this action arose out of contract and, if so, whether the Court should exercise its discretion to issue an award of attorney fees.[1]

### A.     Plaintiff's State Law Claims

In determining whether a claim arose out of a contract within the meaning of § 12-341.01(A), courts "consider whether the claim [] would exist but for a breach of a contract." *Schwab Sales, Inc. v. GN Const. Co.*, 196 Ariz. 33, 37 ¶ 11 (Ct. App. 1998).

> In analyzing this issue, the court should look to the fundamental nature of the action rather than the mere form of the pleadings. The existence of a contract that merely puts the parties within tortious striking range of each other does not convert ensuing torts into contract claims. Rather, a tort claim will "arise

---

[1] Plaintiff attacks the form of Chase's Application, arguing that it is invalid for (1) failing to include a copy of the fee agreement, (2) failing to state that Chase has actually paid all of the listed fees, (3) failing to identify adjustments, and (4) failing to discuss certain topics required by local rule. (Response at 8–9.) The first three points, although true, do not merit denial of Chase's Application as Plaintiff contends. Regarding the first point, the Application did not include a copy of the fee agreement because that agreement is a global agreement "not unique to this matter." (Reply at 9.) Regarding the second point, the affidavit accompanying the Application states that Chase has already paid or will pay in the future all fees listed in the Application. (Doc. 98-1 ¶ 13.) And regarding the third point, the Application does not mention any adjustments because no adjustments were apparently necessary. As Chase notes, "Plaintiff does not raise issues with any specific billing entries." (Reply at 9.) The Court is satisfied that the Application complies with the relevant local rules in material substance. Notably, the governing rule grants that Court authority to deviate from the technical requirements thereof. *See* LRCiv 54.2(d) (providing that the Court may order "otherwise" with respect to an application's supporting documentation). Finally, the fourth point is illegitimate, as the local rules do not require discussion of Plaintiff's identified topics. Rather, the rule requires discussion "as appropriate," LRCiv 54.2(c)(3), and Plaintiff fails to demonstrate that the Application was derelict in discussing any appropriate topic.

> out of a contract" only when the tort could not exist "but for" the breach or avoidance of contract.

*Ramsey Air Meds, L.L.C. v. Cutter Aviation, Inc.*, 198 Ariz. 10, 15 ¶ 27 (Ct. App. 2000).

> The contract must be the essential basis of the action and not merely a factual predicate. When the duty breached is implied by law or is based on statute, that is, where the defendant would have a duty of care under the circumstances even in the absence of a contract, the claim does not arise out of contract.

*Caruthers v. Underhill*, 230 Ariz. 513, 526 ¶ 57 (Ct. App. 2012) (internal quotation marks and citations omitted).

Every aspect of this case finds its origin in the fact that the parties' shared a contractual creditor-debtor relationship whereunder Plaintiff entrusted Chase with his deposited money. This creditor-debtor relationship was a creation of pure contract. Unlike certain financial relationships imposed by law, such as that of a receiver, *See Schwab Sales*, 196 Ariz. at 37 ¶ 11, the parties' connection with one another in this case was the product of mutual assent embodied in a Deposit Account Agreement (DAA). The DAA granted Chase the right to freeze Plaintiff's account when presented with a garnishment order appearing to have the force of law. Thus, when Chase was presented with an apparently valid garnishment order, it froze Plaintiff's account. This lawsuit concerned whether that action was proper or improper. Thus, the DAA was not only a "but for" causal element of Plaintiff's claims insofar as the sole reason Chase had possession over Plaintiff's money in the first place arose out of contract, but the DAA is also the essential basis of this action in that the indispensable act—the freezing of Plaintiff's account—was undertaken by Chase purportedly in accordance with the express terms of the parties' contract.

When presented with facts analogous to these, Arizona courts routinely hold that claims for conversion and unjust enrichment arise out of contract. *Todeschi v. Arreola*, No. 1 CA-CV 20-0500, 2021 WL 2012481, at *2 ¶ 11 (Ariz. Ct. App. May 20, 2021) (holding that a claim for unjust enrichment arose out of contract because "Juarez's alleged breach of the repayment contract is essential to Appellants' unjust enrichment claim because it is

their only basis for asserting that enrichment/impoverishment is 'unjust'"); *Brown v. Ariz. Natures Wellness*, No. 1 CA-CV 23-0524, 2024 WL 4236404, at *8 ¶ 43 (Ariz. Ct. App. Sept. 19, 2024) (holding that a claim for unjust enrichment arose out of contract because "the unjust enrichment claim arose out of the Brown Loan and would not have existed but for that transaction"); *Atkins v. Calypso Sys. Inc.*, No. CV-14-02706-PHX-NVW, 2017 WL 1019661, at *3–4 (D. Ariz. Mar. 16, 2017), *aff'd*, 707 F. App'x 882 (9th Cir. 2017) (holding that claims for unjust enrichment and conversion arose out of contract because "the apparent theory behind his unjust enrichment claim was that Calypso pocketed a loan it had a contractual obligation to repay" and the "duty [not to convert the proceeds of the loan] would not have existed but for that contract").

Here, as in the cases cited above, Plaintiff's claims for unjust enrichment and conversion arose out of contract. During the adjudication of Chase's motion for summary judgment, Plaintiff argued repeatedly that the basis of his unjust enrichment claim was the fact that he was "denied the benefit of his contractual bargain with Chase" when his funds were not available for withdrawal as contemplated by the DAA. (Doc. 83 at 7–8.) The essential premise of Plaintiff's claim for unjust enrichment was that Chase "retained money which in justice and equity (and pursuant to contract) belonged to Plaintiff." (Doc. 83 at 9 (parenthetical in original).) Indeed, the Court granted summary judgment against Plaintiff precisely because his claim for unjust enrichment was coterminous with the parties' contract. (Doc. 93 at 10–11 ("And because there is no issue of material fact that there was a contract that specifically governed the rights and obligations of each party, Plaintiff's claim of unjust enrichment is precluded.").) Similarly, Plaintiff's claim for conversion rested upon the fact that "Plaintiff opened his account with Chase *for the sole purpose* of receiving by direct deposit and holding his Social Security benefits and *for no other purpose*." (Doc. 83 at 10 (cleaned up) (emphases in original).) In the absence of the parties' contractual arrangement, Chase would not have had access to Plaintiff's property and would not have owed Plaintiff a duty to administer his property in any particular manner. In other words, the parties' contractual agreement forms the essential basis against which

Plaintiff's claims for unjust enrichment and conversion must be understood. Therefore, those claims arose out of contract.

The great weight of the caselaw supports this conclusion, and Plaintiff offers no on-point citation to the contrary. Instead, Plaintiff argues that his claims for unjust enrichment and conversion did not arise out of contract because the existence of a contract is not an element of either claim. (Response at 4.) Plaintiff contends that both claims "arise[] out of law," not contract. (Response at 4.) This argument misses the trees for the forest. Plaintiff's position restricts the analysis to an exceedingly high degree of abstract generality and yields a result that is directly contrary to Arizona law. As the cases cited above indicate, the analysis of whether a tort claim arises out of contract requires close scrutiny of the facts underlying the claim. It is not enough to simply note that a tort claim is a tort claim and not a contract claim. If that facile position were correct, *no* claim for unjust enrichment or conversion could *ever* arise out of contract, as neither claim inherently requires the existence of a contract. But that is not the law. *See, e.g.*, *Atkins*, 2017 WL 1019661, at *3–4 (holding that tort claims for fraud, negligent misrepresentation, unjust enrichment, and conversion all arose out of contract because all four claims were factually grounded in the failure to repay a loan as contemplated by contract). It is of course true, as Plaintiff asserts, that tort claims arise out of law. But that proposition is so broad as to be useless. Even contract claims fundamentally arise out of law, as the law will intervene to enforce a contract when one party breaches it. The crux of the analysis is the determination of whether a contract merely places the parties within tortious striking distance of each other or instead forms the essential basis of the tort such that the tort cannot occur but for the breach of contract. *Ramsey Air Meds*, 198 Ariz. at 15 ¶ 27. Where, as here, tort claims acquire their basic substance from a contract, those claims arise out of contract for purposes of § 12-341.01(A). *See Atkins*, 2017 WL 1019661, at *4 (holding that a claim for conversion arises out of contract where the contours of the duty not to convert would not exist but for a contract).

The analysis of Plaintiff's IIED claim is similar, but there is less caselaw addressing this particular tort. In *Nelson v. Phx. Resort Corp.*, 181 Ariz. 188, 201 (Ct. App. 1994), the Arizona Court of Appeals held that a claim for IIED did not arise out of contract because it was "not a claim that relied on the existence of a contract between the parties." The Court does not interpret that statement as constituting a general rule that IIED claims can *never* arise out of contract. The holding in *Nelson* appears to have depended upon the nature of the specific IIED claim brought in that case. The defendant in *Nelson* had fired the plaintiff, and this employment termination involved the plaintiff being "approached by two security persons" who "followed him into the bathroom stall" and prohibited him from "going back to his office to remove any personal belongings." *Id.* at 192. The plaintiff stated that the basis of his IIED claim was the fact that he was fired by "people with guns . . . in front of the news media." *Id.* at 199. Although certain other claims in *Nelson* depended upon the terms of an employment agreement, the plaintiff's IIED claim did not. Instead, the basis of the IIED claim was "the method by which plaintiff was terminated." *Id.* No aspect of the plaintiff's IIED claim depended upon any particular provision of the employment agreement, and the court did not even refer to that agreement in its discussion of the IIED claim. *See id.* Therefore, the employment agreement merely put the parties within tortious striking range of each other; it did not constitute the essential basis of the IIED claim.

The Court concludes that the holding in *Nelson* was the product of that case's facts and that the ordinary analysis for whether a tort claim arises out of contract applies to claims for IIED to the same extent as to claims for unjust enrichment and conversion. Therefore, the central issue is whether Plaintiff's claim for IIED finds its fundamental origin in Chase's alleged breach of the DAA. It unquestionably does. Plaintiff's claim for IIED is premised on the exact same facts as his claims for unjust enrichment and conversion, namely Chase's decision "to exercise complete dominion and control over $60,597.25 belonging to [Plaintiff]." (Doc. 27 at 10.) Even though a tort claim, Plaintiff's assertion of IIED arose out of the deposit contract that forms the essential basis of this entire case. Plaintiff's claim of IIED was viable only insofar as he was able to prove that

Chase had violated the DAA. Therefore, all three of Plaintiff's state law claims against Chase arose out of contract for purposes of § 12-341.01(A).

### B. Plaintiff's Two Federal Claims

Plaintiff argues that his two federal claims did not arise out of contract for purposes of §12-341.01(A) because they are statutory causes of action. "The fee statute does not apply to purely statutory causes of action." *Hanley v. Pearson*, 204 Ariz. 147, 151 ¶ 17 (Ct. App. 2003). The Court agrees that Plaintiff's federal claims arose out of purely statutory causes of action and thus did not arise out of contract. Even though the Court ultimately concluded that no private right of action existed within the statute or regulation underlying Plaintiff's claims, those claims still arose out of statute for purposes of § 12-341.01(A). Chase does not meaningfully argue otherwise. Instead, Chase contends that Plaintiff's federal claims were so interwoven with his state law claims that § 12-341.01 nevertheless entitles Chase to an award of fees relating to those claims. (Reply at 6.)

"It is well-established that a successful party on a contract claim may recover not only attorneys' fees expended on the contract claim, but also fees expended in litigating an 'interwoven' tort claim." *Ramsey Air Meds*, 198 Ariz. at 13 ¶ 17. A federal statutory claim may be "interwoven" with a contract claim for purposes of Arizona's fees statute. *Skydive Ariz., Inc. v. Hogue*, 238 Ariz. 357, 370 ¶ 53 (Ct. App. 2015) (holding that Lanham Act claims were interwoven with contract claims). "Claims are interwoven when they are based on the same set of facts and involve common allegations, which require the same factual and legal development." *Id.* at 369 ¶ 52 (Ct. App. 2015). The analysis focuses on whether the non-contract claims "are so factually connected to a contract claim that they require the same work that is already necessary for the defense or prosecution of the contract claim alone." *Bennett v. Baxter Grp., Inc.*, 223 Ariz. 414, 420 ¶ 23 (Ct. App. 2010). A party seeking an award of fees on an interwoven non-contract claim must typically demonstrate that the claim involved "identical or substantially overlapping discovery." *Kaufman v. Warner Bros. Ent. Inc.*, No. CV-16-02248-PHX-JAT, 2019 WL 2084460, at *7 (D. Ariz. May 13, 2019) (quoting *Zeagler v. Buckley*, 223 Ariz. 37, 39 ¶ 9 (Ct. App. 2009)).

Here, Plaintiff's federal claims were not so interwoven with his contract claims that § 12-341.01 can operate on the former by way of the latter. It is true, as Chase asserts, that the claims all share a factual basis. (See Reply at 5–6.) But that does not mean that the claims are "interwoven" for purposes of § 12-341.01. Chase does not allege that the federal claims shared any common discovery or other legal work with the state law claims, much less "identical or substantially overlapping" commonalities. On the contrary, the record makes clear that the federal and state law claims required largely distinct labor. First, both of plaintiff's federal claims were dismissed and thus did not proceed to the summary judgment stage alongside Plaintiff's claims for unjust enrichment and conversion. Accordingly, there cannot have been substantially overlapping discovery. Second, the basis upon which Chase procured dismissal of the federal claims was that neither 42 U.S.C. § 407 nor 31 C.F.R. Part 212 contained a private right of action. (*See* Doc. 45 at 8–12.) That proposition shares virtually nothing in common with Chase's defenses to the claims of unjust enrichment, conversion, and IIED. It is therefore improbable that the federal claims encompassed substantially overlapping legal research or other litigation work product. Given the facial dissimilarity between the litigation of the federal claims and the litigation of the state law claims, and given Chase's failure to demonstrate that the claims involved substantially overlapping labor, the Court concludes that the claims are not interwoven for purposes of § 12-341.01. There is thus no barrier to awarding fees on a claim-by-claim basis. *Cf. Kaufman*, 2019 WL 2084460, at *7.

### C. Propriety of a Discretionary Award of Attorney Fees

Mere eligibility for an award of fees under § 12-341.01(A) does not establish entitlement to those fees. *Wagenseller v. Scottsdale Mem'l Hosp.*, 147 Ariz. 370, 394 (1985), *superseded by statute on other grounds as recognized in Caudle v. Bristow Optical Co.*, 224 F.3d 1014, 1024 (9th Cir. 2000). Instead, courts possess "broad discretion" in determining both whether and to what extent to issue an award of fees. *Associated Indem. Corp. v. Warner*, 143 Ariz. 567, 570 (1985). A court may award all, some, or none of a party's fees. *See Hall v. Read Dev., Inc.*, 229 Ariz. 277, 279 ¶ 8 (Ct. App. 2012). In deciding

whether an award of fees is appropriate, courts should consider six non-exclusive factors enumerated by the Arizona Supreme Court. *Id.* "[T]he weight given to any one factor is within the court's discretion." *Moedt v. Gen. Motors Corp.*, 204 Ariz. 100, 105 ¶ 19 (Ct. App. 2002). The six factors, commonly referred to as the *Warner* factors, are:

> (1) whether the unsuccessful party's claim or defense was meritorious;
>
> (2) whether the litigation could have been avoided or settled and the successful party's efforts were completely superfluous in achieving the result;
>
> (3) whether assessing fees against the unsuccessful party would cause an extreme hardship;
>
> (4) whether the successful party prevailed with respect to all of the relief sought;
>
> (5) whether the legal question presented was novel and whether such claim or defense have previously been adjudicated in this jurisdiction; and
>
> (6) whether the award would discourage other parties with tenable claims or defenses from litigating or defending legitimate contract issues for fear of incurring liability for substantial amounts of attorney's fees.

*Wagenseller*, 147 Ariz. at 394.

The first *Warner* factor concerns the merits of the claims. "The legislature intended that the risk of paying the opposing party's attorneys' fees would encourage more careful analysis prior to filing suit." *Chaurasia v. Gen. Motors Corp.*, 212 Ariz. 18, 29 ¶ 43 (Ct. App. 2006). In attempting to show that his claims were meritorious, Plaintiff merely repeats the same assertions that the Court already determined lacked merit. (Response at 5 (arguing that "Defendant thus converted Plaintiff's funds for its own use" and "was also unjustly enriched by having the use of Plaintiff's funds" and that "Defendant's conversion of Plaintiff's funds was intentional, extreme, and outrageous").) The Court rejected each of those assertions, and no aspect of the analysis involved a close call. Therefore, the first *Warner* factor moderately favors an award of fees with respect to all three of Plaintiff's state law claims. However, only the claim for unjust enrichment was truly meritless. As

Chase notes, (Reply at 7), Plaintiff's claim for unjust enrichment failed at summary judgment for precisely the same reason that Chase argued it should have failed at dismissal, namely that the DAA precluded recovery on a theory of unjust enrichment. Thus, the intervening discovery stage constituted a waste of time and resources that Plaintiff foisted upon Chase for no just reason, at least with respect to his claim for unjust enrichment. The same cannot be said of Plaintiff's claims for IIED and conversion. The IIED claim was dismissed, and although it was not meritorious, its fatal flaw was one of degree, not of kind. The conversion claim survived until summary judgment, but the basis of the Court's disposition was not the same as was contemplated at the dismissal stage. (*Compare* Doc. 45 at 15–16, *with* Doc. 93 at 11–12.) Thus, the first *Warner* factor weighs strongly in favor of an award of fees regarding the claim for unjust enrichment and weighs moderately in favor of an award of fees regarding the claims for IIED and conversion.

The second *Warner* factor concerns whether the litigation could have been avoided or settled. "This factor looks primarily to whether a non-litigation solution was not pursued that could have solved the problem and whether litigation was not necessary." *11333, Inc. v. Certain Underwriters at Lloyd's, London*, No. CV-14-02001-PHX-NVW, 2018 WL 1570236, at *6 (D. Ariz. Mar. 30, 2018). The analysis typically focuses upon whether the prevailing party declined a settlement offer that would have been as favorable or more favorable than the result ultimately obtained. *See id.* But where the outcome of a lawsuit does not mirror a settlement offer, this factor does not militate against an award of fees. *See id.* In this case, there was not a non-litigation solution that Chase could have pursued. Accordingly, this factor does not weigh against awarding fees.

The third *Warner* factor concerns whether a fees award would place an intolerable financial burden on the losing party. Because the facts pertaining to the losing party's financial status "lies peculiarly within the knowledge of the party asserting financial hardship," that party "has the burden of coming forward with *prima facie* evidence of financial hardship." *Woerth v. City of Flagstaff*, 167 Ariz. 412, 420 (Ct. App. 1990). "Unsworn and unproven assertions of counsel in memoranda are not facts admissible in

evidence." *Id.* "To raise the issue of undue hardship, therefore, [a party is] required to present specific facts by affidavit or testimony." *Id.* Here, Plaintiff fails to adduce any evidence regarding his financial position beyond unsworn and unproven assertions of counsel in a memorandum, and the record does not independently indicate that Plaintiff is financially vulnerable. Therefore, this factor does not weigh against an award of fees.

The fourth *Warner* factor concerns whether the party requesting fees prevailed with respect to all aspects of the lawsuit. Plaintiff concedes that Chase prevailed *in toto*. (Response at 6.) This factor therefore weighs in favor of an award of fees.

The fifth *Warner* factor concerns the novelty of the legal issues involved in the claims subject to an award of fees. None of the claims against Chase involved any novel legal issues, and Plaintiff does not seriously contend otherwise. Plaintiff argues that Chase's Application does not cite any cases in which "a similar claim or defense had previously been adjudicated." (Response at 7.) True as that assertion may be, it completely overlooks the fact that Chase's briefing on the merits cited to numerous cases demonstrating that claims involving similar legal issues had previously been adjudicated in this jurisdiction. This factor therefore weighs in favor of an award of fees.

The sixth and final *Warner* factor examines whether an award of fees would have a chilling effect on similarly situated persons who possess tenable claims. "The factor to be considered, however, is whether a [potential plaintiff] will be deterred from bringing a tenable claim, not from gambling on a legal theory in defiance of language and devoid of evidence." *11333, Inc.*, 2018 WL 1570236, at *5. An award of fees in this case will not dissuade similarly situated depositors from seeking relief via tenable legal claims, as the claims brought by Plaintiff were not tenable. As the Court noted in its grant of summary judgment, "Plaintiff could have pursued the appropriate remedy at law through a breach of contract claim, but he chose not to." (Doc. 93 at 11.) To the extent that future litigants are dissuaded from bringing the precise claims asserted herein on similar facts, such dissuasion would be consistent with the legislature's intent in passing § 12-341.01. *See Chaurasia*, 212 Ariz. at 29 ¶ 43. Plaintiff has offered no explanation as to how an award of fees in this

case would discourage other complainants from bringing tenable claims for relief, such as an action for breach of the DAA. This factor therefore does not weigh against an award of fees.

Each of the six *Warner* factors either favors an award of fees or is neutral. None weighs against an award of fees. Therefore, the Court will issue an award of fees. However, the Court declines to award Chase its full request of $51,189.09. First, only three of the five claims against Chase are eligible for an award of fees. Second, as noted above, the first *Warner* factor does not apply evenly to all three of those claims. Finally, although Plaintiff has utterly failed to present evidence of his financial status, the Court nevertheless notes that Plaintiff is an individual and Chase is one of the nation's largest banks. Therefore, the Court concludes in its discretion that Chase is entitled to a partial award of fees reflecting reductions for the two federal claims, for the divergent meritlessness of the state law claims, and for the financial imbalance between the two parties. After reviewing the schedule of fees charged by Chase's counsel, (Doc. 98-1, Ex. 1), the Court elects to award Chase $10,000 in attorney fees.

## II.    Costs

The parties agree that Chase's initial costs request was inflated and that Chase is in fact entitled to $1,383.40 in costs. (*See* Response at 10.) The Court therefore awards Chase $1,383.40 in costs. *See* A.R.S. § 12-341; LRCiv 54.1.

**IT IS THEREFORE ORDERED** granting in part Chase's Application for Attorneys' Fees and Costs and awarding Chase $10,000 in attorney fees and $1,383.40 in costs.

Dated this 18th day of November, 2024.

Honorable John J. Tuchi
United States District Judge